## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARCIA FREDERICK, individually, and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | PLAINTIFF DEMANDS |
| v. | ) | TRIAL BY JURY |
| | ) | |
| UNITED STATES OLYMPIC COMMITTEE, USA GYMNASTICS (formerly known as the United States Gymnastics Federation), RICHARD CARLSON, MURIEL GROSSFELD, GEORGE WARD, | ) ) ) ) ) ) | CLASS ACTION COMPLAINT BROUGHT UNDER THE PROTECTING YOUNG VICTIMS FROM SEXUAL ABUSE AND SAFE SPORT AUTHORIZATION ACT |
| | ) | |
| *Defendants*. | ) | |

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

Comes now, Plaintiff MARCIA FREDERICK, on behalf of herself and all others similarly situated, by and through her attorneys, Andrus Wagstaff, PC and Andrus Anderson LLP, and for her causes of action against Defendants, alleges as follows:

### <u>INTRODUCTION</u>

This is an action in which Plaintiff, Marcia Frederick, a former Olympic gymnast, on behalf of herself and all others similarly situated, seeks relief and damages, statutory and otherwise, against Defendant United States of America Gymnastics (formerly known as United States Gymnastics Federation, hereinafter referred to as "USAG" or "USA Gymnastics") and Defendant United States Olympic Committee, ("USOC") (collectively referred to as "Class Defendants") for violations of the Protecting Young Victims from Sexual Abuse and Safe Sport

Authorization Act of 2017, (the "Safe Sport Act") by systemically failing to respond to and report suspected child abuse of amateur athletes to law enforcement.

Plaintiff Frederick also brings this claim individually, seeking injunctive relief and compensation for personal injuries and damages suffered when she was repeatedly molested, sexually abused and assaulted while training and competing as a minor elite gymnast for the United States across the nation by Defendant Richard Carlson, ("Perpetrator Carlson"), an agent or employee of Defendant USAG, Defendant USOC, Defendant Muriel Grossfeld, ("Defendant Grossfeld"), and Defendant George Ward, ("Defendant Ward").

The abuse and assault occurred as a result of the negligence and failures of all Defendants and each and every Defendant is jointly liable. Despite having the power, authority and responsibility to act, Defendants failed Plaintiff Frederick and numerous others by showing deliberate indifference to assault and abuse of minors, fostering an environment of abusive activity towards gymnasts, failing to institute corrective measures to protect gymnasts from assault and abuse, failing to investigate, train, oversee, monitor and supervise employees and agents, including but not limited to Perpetrator Carlson, failing to respond to the complaints of sexual abuse, and/or actively defending and covering up abuse, all at the expense of Plaintiff Frederick and other class members.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over Defendants based on diversity of citizenship and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

2.     This Court also has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 34 U.S.C. § 20341, *et seq* and (c)(9), and 18 U.S.C. § 2255, *et seq*.

3.      The amount in controversy exceeds $75,000, exclusive of costs and interest and the Class claims exceed $5 million.

4.      This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise out of the same common nucleus of facts and are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

5.      This Court has personal jurisdiction over Defendants as Defendants conducted substantial, continuous, and systematic business activities within this Commonwealth.

6.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident of the Commonwealth of Massachusetts and a substantial part of the events or omissions giving rise to claim occurred in the Commonwealth of Massachusetts.

7.      Further, the Defendants have purposefully availed themselves of the benefits and the protections of the laws within the Commonwealth of Massachusetts. Defendants have had sufficient contact such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

8.      Plaintiff seeks relief that is within the jurisdictional limits of the Court.

## **PARTIES**

9.      Plaintiff Ms. Frederick is a former elite gymnast who is a resident and citizen of the Commonwealth of Massachusetts.

10.      Perpetrator Richard Carlson is a former elite level gymnastics coach, who upon information and belief, resides and is a citizen of New York.

11.      Upon information and belief, Defendant Muriel Grossfeld, at all times mentioned herein, was and is a resident and citizen of Connecticut

12.     Upon information and belief, Defendant George Ward, at all times mentioned herein, was and is a resident and citizen of Connecticut.

13.     Defendant USOC, at all times mentioned herein, was and is a federally-chartered nonprofit corporation, having its principal place of business in the State of Colorado and is headquartered in Colorado Springs, Colorado.

14.     Defendant USAG, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Indiana.

## SUBSTANTIVE ALLEGATIONS

## USOC AND USAG'S OBLIGATION TO PROTECT YOUNG ATHLETES

15.     The USOC is a federally-chartered nonprofit corporation, which was reorganized by the Ted Stevens Amateur Sports Act, 36 U.S.C. §§220501, *et seq*. ("Ted Stevens Act"), originally enacted in 1978.   As described on its website, "[t]he USOC has two primary responsibilities in its oversight of Olympic and Paralympic sport in the United States.  The first is to generate resources in support of its mission, which is to help American athletes achieve sustained competitive excellence. The second is to ensure organizational resources are wisely and effectively used to that end."  Furthermore, Defendant USOC claims that "USOC is committed to creating a safe and positive environment for athletes' physical, emotional and social development and to ensuring that it promotes an environment free of misconduct."

16.     The USOC is the governing body for all American Olympic teams.  Under the Ted Stevens Act, Defendant USOC has a mandatory obligation to ensure that before granting National Governing Bodies ("NGB"), including USAG, a sanction to host national or international events, "proper safety precautions have been taken to protect the personal welfare of the athletes."  36 U.S.C. §§220525(b)(4)(F).  The USOC has the power to decertify USAG and all associated clubs,

4

gyms, and teams.  Among other things, decertification would strip USAG of its ability to crown national champions and select Olympic teams.

17.     USAG is the National Governing Body for gymnastics in the United States, as designated and permitted by Defendant USOC under the Ted Stevens Act, and selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States.  USAG has more than 174,000 athletes and professional members, more than 148,000 athletes registered in competitive programs, as well as more than 25,000 professional, instructor and club members.  Approximately 4,000 competitions and events throughout the United States are sanctioned annually by USAG.

18.     The USAG directly certifies and trains coaches for a fee, in part through USA Gymnastics University, an online training platform through which USAG provides courses, course material, and video training.

19.     The USAG collects a fee from gymnasts to be a USAG member and to compete in USAG-sanctioned competitions.

20.     The USAG sanctions gyms where gymnasts practice and compete.  For a fee and proposed compliance with just five USAG policies, a gym can become certified to train under the USAG banner.

21.     The USAG sponsors competitions in which members and gyms pay a fee to compete.  These competitions take place throughout the country, and gymnasts of a variety of ages and skill levels compete.  USAG was the primary entity owning, operating and controlling the activities and behavior of its certified, trained, and sanctioned professionals, members, and agents, including, but not limited to Defendant Grossfeld, Defendant Ward, and the Grossfeld's American

Gold Gym ("GAG" or "GAG Gym") owned and operated by Defendants Grossfeld and Ward and the certified head coach who committed the abuse described herein, Perpetrator Carlson.

## USOC AND USAG'S FAILURE TO PROTECT YOUNG ATHLETES AND THE PASSAGE OF THE SAFE SPORT ACT

22.     For decades, the USAG and the USOC have touted themselves as creating a positive and safe environment, including during the time Ms. Frederick was a gymnast.  In fact, USAG touts that "prior to almost all other National Governing Bodies, USA gymnastics has provided awareness, prevention and reporting information regarding sexual misconduct to professional members, member clubs, athlete members and their families."

23.     Moreover, the bylaws of USAG, or similar bylaws previously enacted, were made in conformance with, and under the mandate of, Defendant USOC, and were intended to protect minor gymnasts, including Ms. Frederick, from sexual abuse, a known and foreseeable risk posed to minor athletes in amateur sports.

24.     The USOC similarly touts that it's policies prevent "…USOC employees, coaches, contracted staff, volunteers, board members, committee and task force members, and other individuals working with athletes or other sport participants while at an OTC, whether or not they are employees of the USOC" and "…[a]thletes training and/or residing at a USOC Olympic Training Center" from engaging in sexually-abusive misconduct, including "child sexual abuse" and "sexual misconduct."  USOC Safe Sport Policies, Section II(c).  USOC also has policies identify "grooming" behaviors, which it defines as, "…the most common strategy used by offenders to seduce their victims."

25.     Despite their obligations under the Ted Stevens Act and their bylaws, rules, policies and procedures purporting to protect young athletes, Defendants USOC and USAG never ensured,

audited, or checked to confirm that these policies were properly implemented, enforced, or effective at detecting, preventing, and remedying abuse perpetrated by certified coaches and at sanctioned facilities. Had Defendant USOC and USAG upheld their duties under federal law, the repeated sexual abuse suffered by Ms. Frederick and so many others could have been avoided.

26.     Indeed, the USAG and the USOC affirmatively allowed a culture of gymnast assault and abuse by its certified coaches to persist by taking overt acts to conceal the abuse and assault in the interest of protecting themselves and their criminal coaches, while simultaneously inflicting emotional and physical harm on countless young athletes who trusted that USOC and USAG would ensure their safety.

27.     The USAG and the USOC failed to protect their gymnasts, including Ms. Frederick, from perpetrators of abuse and assault.

28.     Defendant USOC expressly admitted its wrongdoing. In January 2018, former USOC Chief Executive Officer Scott Blackmun issued an apology to victims, stating that USOC is "sorry you weren't afforded a safe opportunity to pursue your sport dreams. The Olympic family is among those that have failed you."

29.     On January 31, 2018, amid public outcry and a threat by USOC to wholly decertify the organization, all 21 members of the board of directors for USAG resigned.

30.     The USAG and the USOC's conduct has been so egregious and with utter disregard for young gymnasts, including Ms. Frederick, that Congress responded by enacting the Safe Sport Act in February 14, 2018, which was promulgated "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete."

31.     As of February 14, 2018, the Safe Sport Act mandates that USAG and the USOC, along with their agent coaches and members, report any assault or abuse to authorities within 24

hours.  The Safe Sport Act makes non-reporting assault or abuse a federal crime and imposes a significant fine, as well as other damages.  Additionally, under the Safe Sport Act, an independent body, the U.S. Center for Safe Sport ("Center for Safe Sport"), was created to adjudicate the sexual abuse cases in the Olympic Movement and other amateur athlete settings.

32.     There are 47 National Governing Bodies ("NGB") of various amateur sports.  Of those NGB, eight (8) turned over a total of approximately twenty-five (25) cases to the Center for Safe Sport after its opening in March, 2017.  Only four (4) of the NGBs that had pending investigations declined to transfer them to the Center for Safe Sport, including USAG and Ms. Frederick's case.

33.     The Center for Safe Sport has already received approximately 540 total reports across 38 different sports.  Thus far, those cases have led to 73 lifetime bans and continued investigations.  Unfortunately, Defendants USAG and USOC have failed and continue to fail to report countless other reports of assault and abuse to law enforcement as required, including Ms. Frederick's case.

34.     The Safe Sport Act was enacted in direct response to the widespread reports of sexual abuse and assault at USAG and USOC sanctioned gyms, clubs and events, at the hands of USAG trained and certified coaches.  For decades, USAG and USOC have failed to protect young member athletes, including Ms. Frederick, from perpetrators of abuse and assault. And generations of young men and women have been forced to bury their abuse and leave the sport.

35.     In June 2018, the USAG was required to testify at Congressional hearings.  During those hearings, Steve Penny, Past President of USAG, pled the Fifth Amendment, refusing to answer any questions.  During that same hearing, Rhonda Faehn, former Director of the Women's

program for USAG, testified that Penny told her not tell anyone about accusations of sexual assault and molestation of gymnasts.

36.     Although USOC has acknowledged its responsibility for allowing years of abuse, upon information and belief, to date, the USOC has not decertified the USAG.  The USAG still retains the power to appoint and control coaches, clubs, and athletes, despite USAG's negligent conduct and ongoing violations of the Safe Sport Act.

37.     At all times relevant to Ms. Frederick's repeated sexual abuse at the hands of Perpetrator Carlson, Defendants USOC and USAG, and others, were responsible for Ms. Frederick's safety, supervision and well-being.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

39.     Plaintiff alleges violations of the Safe Sport Act on behalf of herself individually, and on behalf of the following class of other athletes similarly situated (herein after the "Class"):

> All current or former USAG-affiliated and/or USOC affiliated amateur athletes for whom the USAG, the USOC, and/or their agents and/or employees ("Class Defendants") received information that the amateur athlete may have suffered an incident of child abuse, including sexual, emotional and/or physical abuse, and either (a) failed to report incidents occurring after February 14, 2018 to law enforcement authorities within 24 hours of learning of the incident, and/or (b) failed to report incidents occurring before February 14, 2018 to law enforcement authorities, within 24 hours of the Congress enacting the Safe Sport Act.

40.     Plaintiff and the members of the Class: (a) were amateur athletes as defined under the Safe Sport Act[1] at the time of the suspected abuse; (b) were amateur athletes for which Class

---

[1] "'Amateur Athlete' means an athlete who meets the eligibility standards established by the national governing body or paraolympic sports organization for the sport in which the athlete competes." 18 U.S.C. § 220501.

Defendants, as a covered individual[2], learned facts that gave reason to suspect he/she suffered an incident of child abuse when the Class member was a minor and (c) were amateur athletes for which Class Defendants failed to make a report of the suspected abuse to a law enforcement agency within 24 hours, and/or by February 15, 2018 for incidents reported prior to enactment of the Safe Sport Act. Plaintiff and Class members suffered a personal injury as a result of the failure to report the suspected abuse to a law enforcement agency.[3] Plaintiff and Class members can be readily ascertained from Class Defendants' own records.

41.     The proposed Class meets the requirements for certification pursuant to Federal Rule of Civil Procedure 23(a), as well as subsections (b)(3) and (c)(4), as described below.

### Numerosity

42.     On information and belief, the Class consists of hundreds of amateur athletes, too numerous to make joinder practicable.

### Common Questions of Law and Fact

43.     Numerous questions of law and fact common to the Plaintiff and the Class exist, including, without limitation: (a) whether Class Defendants unlawfully failed to report suspected abuse of Class Plaintiffs to law enforcement agencies; (b) whether Class Defendants failure to report violated the Safe Sport Act; (c) whether, in addition to actual damages, Class members are entitled to liquidated damages in the amount of $150,000 each, as well as the cost of the action, including reasonable attorney's fees and other litigation costs, and (d) whether the Class members are entitled to punitive damages and other preliminary and equitable relief.

---

[2] "[T]he term 'covered individual' means an adult who is authorized, by a national governing body, a member of a national governing body, or an amateur sports organization that participates in the interstate or international amateur athletic competition, to interact with a minor or amateur athlete at an amateur sports organization facility or at any event sanctioned by a national governing body, a member of a national governing body, or such an amateur sports organization." 34 U.S.C. § 20341(c)(9).

[3] *See* 18 U.S.C. § 2255.

44.     The answers to these common questions will be the same for Plaintiff Frederick and all Class members and will establish liability under the Safe Sport Act.

**Typicality**

45.     Plaintiff Frederick's Safe Sport Act claims are typical of the claims of the Class. The relief sought by the Plaintiff Frederick for violation of the Safe Sport Act complained of herein is also typical of the relief sought on behalf of the Class.

46.     Like all members of the Class, Plaintiff Frederick was an amateur athlete for which Class Defendants learned of facts that gave rise to suspect that she had suffered an incident of child abuse during the liability period but failed to report those abuses to law enforcement within 24 hours after the passage of the Safe Sport Act.

**Adequacy of Representation**

47.     Plaintiff Frederick's interests are co-extensive with those of the Class.  Plaintiff Frederick seeks remedies as provided for under the Safe Sport Act.  Plaintiff is willing and able to represent the Class fairly and vigorously.

48.     Plaintiff Frederick has retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate a class action of this size and complexity.  The combined interests, experience, and resources of Plaintiff's counsel to litigate competently the individual and class claims at issue in this case satisfy the adequacy of representation requirement.

**Requirements of Rule 23(b)(2)**

49.     Class Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

50.     Class Defendants have failed to report suspected child abuse to law enforcement agencies described herein.

51.     Class Defendants have acted, or failed to act, on grounds generally applicable to the Plaintiff Frederick and the Class by adopting and implementing systemic policies, practices, and procedures resulting in a failure to report suspected child abuse.  Failing to respond to and report suspected child abuse of amateur athletes to law enforcement are Class Defendants' standard operating procedures rather than sporadic occurrences.

52.     Class Defendants' systemic refusal to act on and report facts they learn that give reason to suspect of incidents of child abuse, have made appropriate the requested final injunctive and declaratory relief with respect to the Class as a whole.

**Requirements of Rule 23(b)(3)**

53.     The common issues of fact and law affecting the claims of Plaintiff Frederick and the Class members predominate over any issues affecting only individual claims.  Core issues in the case that are amenable to classwide treatment include whether Class Defendants violated the Safe Sport Act by: (a) learning facts that give reason to suspect Plaintiff and other similarly situated Class members suffered an incident of abuse as a minor; and (b) unlawfully failing to report suspected abuse to law enforcement agencies when required to do so under the Safe Sport Act.

54.     Prosecution of these claims on a class-wide basis is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiff Frederick and the Class.

55.     Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications

and conflicting obligations.  Additionally, pursuing individual litigation would be prohibitively expensive.

56.     Certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for and the Class, as well as for the Defendants.

**Requirements of Rule 23(c)(4)**

57.     Plaintiff also meets the requirements of Rule 23(c)(4), because particular issues that are core to every Class members' claim present common issues capable of class-wide resolution, which would advance the interests of the parties in an efficient manner.  These issues include, inter alia, whether Class Defendants were required to report Class member incidents upon passage of the Safe Sport Act and whether it failed to do so.

**PLAINTIFF FREDERICK'S ALLEGATIONS IN SUPPORT OF HER**

**INDIVIDUAL SAFE SPORT VIOLATION**

58.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

59.     Plaintiff Frederick filed a claim with the USAG related to the sexual abuse she suffered as an amateur athlete at the hands of her USAG certified Coach, Richard Carlson, while a minor, in or around 2015.

60.     After Ms. Frederick made her complaint to the USAG, the USAG and USOC learned facts that gave reason to suspect that she had suffered an incident of child abuse.

61.     As of the passing of the Safe Sport Act on February 14, 2018, the USAG and USOC were obligated to report the suspected child abuse that Ms. Frederick suffered to law enforcement within 24 hours, specifically by February 15, 2018.

62.     The USAG and USOC failed to report the suspected child abuse of Ms. Frederick to law enforcement on February 15, 2018 and even as of the date of this filing, in direct violation of the Safe Sport Act.

63.     Ms. Frederick suffered personal injury as a result of the failure to report the suspected abuse to a law enforcement agency.

64.     The USAG and USOC are liable to Ms. Frederick for actual damages, liquidated damages in the amount of $150,000, the cost of the action, including reasonable attorney's fees and other litigation costs, punitive damages and other preliminary and equitable relief.

## FAILURES OF DEFENDANTS RESULTING IN INJURY AND DAMAGES TO PLAINTIFF MARCIA FREDERICK

65.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

66.     In addition to her Safe Sports Act claims, Ms. Frederick has common law claims for injuries occurring before the Act was passed that are timely pursuant to MGL c. 206, s. 4C1/2.

67.     Ms. Frederick was an elite level gymnast and was the first American female gymnast to win a Gold medal at the World Gymnastics Championships.  She qualified for the 1980 U.S. Women's Olympic Gymnastics Team.

68.     Prior to qualifying for the 1980 Olympic Gymnastics Team, Ms. Frederick, at the age of thirteen (13) joined GAG, a USAG and USOC sanctioned facility, on or around 1975 to further her training in Gymnastics.

69.     GAG was formed by Defendants Grossfeld and Ward in 1968.

70.     Defendant Grossfeld is a retired United States gymnast and member of the U.S. Gymnastics Olympic team.

71.     Defendant Ward was the common-law husband of Defendant Grossman.  Upon information and belief, he handled the finances for GAG, and had significant investments in the gym.

72.     GAG's purpose was to train elite level gymnasts in order to prepare them for World Gymnastic Competitions such as the World Championships and the Olympics.

73.     GAG paid fees to and was sanctioned by the USAG and USOC.

74.     In order to accomplish their lofty goals of making the Olympic gymnastics team, GAG and its employees, particularly its coaches, were given complete control of the young gymnasts' lives, including, but not limited to, training schedules, education, daily meals and even sleep schedules.

75.     Because of the rigorous training schedules required to become an elite gymnast, many gyms including both training and a dormitory that housed the young athletes.  The GAG facility was one such gym that provided housing, schooling and training for the minor athletes. During the pertinent years of this complaint, the GAG facility housed approximately 11 girls aged 12-16 at a cost of several thousands of dollars per year.

76.     From 1975 to 1978, Ms. Frederick trained with GAG Coach, Don Peters, infamous former gymnastics coach later banned by USAG for allegations of sexual misconduct with minor gymnasts.

77.     In 1978, Don Peters' employment was terminated by Defendant Grossfeld after an incident at the 1978 World Championship in Strasbourg, France.

78.     In or around late 1978, Defendant Grossfeld assigned Perpetrator Carlson, another USAG certified and trained coach, to be the new head coach of the GAG Gym and Ms. Frederick.

79.     Defendants Grossfeld, Ward, and Perpetrator Carlson had direct and complete custody and control of the Ms. Frederick and were members and participants sanctioned and trained by Defendants USAG and USOC.

80.     Ms. Frederick was a participant and dues paying member of USAG and USOC.

81.     As a member and participant of USAG while Perpetrator Carlson was a USAG certified head coach, Ms. Frederick was under Perpetrator Carlson and Defendant Grossfeld's direct supervision, control and care, which created a special, confidential, and fiduciary relationship between Ms. Frederick, her parents, and them.  Because of such relationship, Perpetrator Carlson and Defendant Grossfeld owed Plaintiff a special duty of care.  Additionally, as the employers and supervisors of Perpetrator Carlson, with knowledge that he was in contact with and providing care to children, Defendants USAG and USOC were also in a special, confidential, and fiduciary relationship with Ms. Frederick, owing her a duty of care.

82.     Perpetrator Carlson was hired by Defendant Grossfeld to coach at the GAG Gym and was Ms. Frederick's head coach and during much of the time she lived in the GAG dorms. Perpetrator Carlson was a "dorm parent" who lived on the first floor of the housing facility.

83.     Throughout her time at the GAG Gym, Ms. Frederick lived in a single-occupancy dorm room on the second floor, while many other gymnasts lived with roommates.

84.     Perpetrator Carlson was charged with overseeing the minor gymnasts including Ms. Frederick within the housing facility, while at the gym and while on excursions and USAG and USOC competitions outside of the gym.

85.     Perpetrator Carlson was the team head coach of the GAG Gym, and a certified coach of USAG.  While a head coach and dorm parent at the GAG Gym, Perpetrator Carlson's employment duties included coordinating the training and providing individual care and providing

for the physical needs and well-being of participants and members of USAG (and in accord with Defendants' USAG and USOC policies, procedures, and mandates), and care including but not limited to treatment to participants and members of USAG, which included Ms. Frederick.

86.     Perpetrator Carlson commenced the process of grooming Ms. Frederick in late 1978, when she was 15 years old.

87.     Plaintiff is informed and believes the Perpetrator Carlson's physical and sexual abuse of Plaintiff commenced after the grooming of Ms. Frederick began, and occurred numerous times while Ms. Frederick was on the GAG Gym properties, while traveling for competitions and before and after competitive gymnastics meets from in or around 1978 through 1980.  Specifically, the Plaintiff was sexually abused by Perpetrator Carlson in Connecticut at the GAG Dormitories, located in Millford, Connecticut and at numerous locations around the country.  During this period, Ms. Frederick was a participant, member, and ward under the Perpetrator's Carlson and Defendants' direct supervision and control.

88.     Perpetrator Carlson used his position of authority, trust and confidence in an abusive manner to sexually assault, batter, molest, and harass Ms. Frederick over the course of his tenure as her coach.

89.     Based upon what was told to Ms. Frederick by the adults tasked to supervise her and the culture that USAG and USOC cultivated, and allowed to be cultivated, both in and out of the gym, Ms. Frederick believed she had to submit to Perpetrator Carlson's sexual demands in order to continue training for the 1980 Olympics.

90.     In 1980, Ms. Frederick qualified for the U.S. Olympic team and attended the U.S. Gymnastics Olympic Training Camp in Colorado.

91.     On or about March 21, 1980, after hearing of the U.S. boycott of the 1980 Olympics, Ms. Frederick traveled directly to GAG and told Defendant Grossfeld about the abuse and molestation she was suffering at the hands of Perpetrator Carlson.  Ms. Frederick told Defendant Grossfeld where the abuse had occurred, describing with specificity what Defendant Carlson had forced her to do.   Defendant Grossfeld appeared visibly angry, but did not say anything on the subject.

92.     In approximately 1980, Ms. Frederick also disclosed the abuse to Defendant Ward who, like Defendant Grossfeld, took no actions to remedy the situation.

93.     Defendants Grossfeld and Ward resumed normal activities as if the report had not been made.  This inaction, coupled with Perpetrator Carlson's continual remarks that the sexual acts were part of her training and were necessary to her gymnastics career and reaching her goals, caused Ms. Frederick to believe that the abuse was "normal."  As a young gymnast, Ms. Frederick was lead to believe that enduring this pain was required because she had "to be close with her coach" in order to be the best gymnast and become an Olympian.

94.     In 1982, Ms. Frederick participated in the American Classic gymnastics competition, winning first place.  This was her last competition with Defendant Carlson.  She chose to forego the following 1984 Olympics because she was afraid to and physically could not continue training with Perpetrator Carlson and at the GAG Gym.

95.     At all times that Ms. Frederick was training and competing nationwide all Defendants, took care, custody and control of her and stood in loco parentis and had a duty to protect Ms. Frederick from danger, such as the abuse and molestation by Carlson, and to properly train, hire, monitor, oversee, investigate, remove and report Carlson; remedial action which they never took to protect Ms. Frederick.

96.     At all times relevant to Ms. Frederick's repeated sexual abuse at the hands of Perpetrator Carlson, Defendants were responsible for Ms. Frederick's supervision.  Despite being the body responsible for Ms. Frederick's safety and well-being, Defendants provided no adequate or effective measures to ensure her protection from the risk of sexual abuse.  At all times relevant to Ms. Frederick's sexual abuse at the hands of Perpetrator Carlson, Defendants were responsible for Ms. Frederick's supervision.  Despite their responsibility for Ms. Frederick's safety and well-being, Defendants provided no adequate or effective measures to ensure her protection from the risk of sexual abuse and now, they have compounded their misconduct by denying Ms. Frederick access to the forum that can fully and finally adjudicate the harm she endured for years.

97.     At all times pertinent hereto, including the years 1978 to 1981, Perpetrator Carlson was an employee, representative, and/or agent of Defendants acting under their control and supervision.

98.     At all times pertinent hereto, Perpetrator Carlson was employed by and/or an agent of Defendants serving in various positions, including but not limited to coach, head coach, traveling coach and dorm parent.

99.     While employed by Defendants, Perpetrator Carlson sexually assaulted, abused and molested Ms. Frederick by engaging in nonconsensual sexual assault, battery, molestation, and harassment, including but not limited to groping and forced sexual contact.

100.    Despite Ms. Frederick's complaints to Defendant Grossfeld and Defendant Ward, her concerns and reports of abuse went unaddressed.

101.    Defendants had a duty to report allegations of Perpetrator Carlson's inappropriate sexual conduct directed at Ms. Frederick to law enforcement.  All Defendants knew, or should

have known, of the abuse alleged herein, and did not report or sanction the abuser, their employee or agent.

102.    Defendants, and their employees, agents, and/or representatives, through planned artifice, attempted to prevent inquiry or escape investigation regarding the tortious acts of Perpetrator Carlson by hindering the acquirement of information and expressly misleading Ms. Frederick as described more fully in this Complaint.

103.    At all times material hereto, Perpetrator Carlson was under the direct supervision, management, agency and control of Defendants.

104.    By designating Perpetrator Carlson as a certified head coach team of GAG under the mandated and control of Defendants, all Defendants represented to the community and participants and members of USAG that Perpetrator Carlson was safe, trustworthy, and of high moral and ethical repute, such that parents of participants and members need not worry about having Perpetrator Carlson interact with, and provide care to their minor children.  Defendants did so in order to preserve their own public image and reputation, so they could retain past participants and members and recruit new participants and members, thus allowing donations and other financial support to continue flowing into their coffers for financial gain.

105.    Plaintiff is informed and believes, and on that basis, alleges that Defendants knew or should have known that sexually abusive staff, such as Perpetrator Carlson, were violating USOC and USAG policies, without enforcement or abatement, and were continually allowed to be in contact with minor children, such as Ms. Frederick.

106.    It was not until in or around 2000, that Defendant USOC created the Safe Sport program and issued a handbook detailing specific procedures for preventing sexual abuse of minors, and access to minors by sexual abusers.  Despite instituting this handbook and program,

Defendant USOC maintained its course and culture of ignoring abuse, ignoring its internal policies and procedures, and placing minors in the way of danger.

107.    Plaintiff is informed and believes and on that basis, alleges Defendants knew of, or should have known of, Perpetrator Carlson's propensity and disposition to engage in sexual misconduct with minors.

108.    Defendant failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Perpetrator Carlson. Defendants ignored the sexual misconduct Perpetrator Carlson had engaged in, and concealed that information from Ms. Frederick's family and law enforcement.

109.    Because of the relationship between Plaintiff and Defendants, Defendants had an obligation and duty under the law not to hide material facts and information about Perpetrator Carlson's deviant sexual behavior and propensities.  Additionally, Defendants had an affirmative duty to inform, warn, monitor, oversee and institute appropriate protective measures to safeguard minors who were reasonably likely to come in contact with Perpetrator Carlson, including Ms. Frederick at the time.  Defendants refused to notify, give adequate warning, monitor, oversee and implement appropriate safeguards, thereby creating the peril that ultimately damaged Ms. Frederick.

110.    Plaintiff is informed and believes, and on that basis alleges, that prior to Ms. Frederick's sexual abuse by Perpetrator Carlson, Defendants engaged in a pattern and practice of employing sexual abusers and molesters.  Defendants concealed these facts from participants and members, their parents, the gymnastics community, the public at large, other National Governing Bodies, the United States government, various local governments, and law enforcement agencies.

111.     As is set forth herein, Defendants and each of them have failed to uphold numerous

mandatory duties required of them by state and federal law, as well as their own internal written

policies and procedures, including:

    a.      Duty to use reasonable care to protect participants and members from known or foreseeable dangers;

    b.      Duty to inform Ms. Frederick and her parents of the known risks to the health and well-being of their daughter while in USAG and/or USOC sponsored, authorized, and supervised programs, events and trainings;

    c.      Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, section 1983 and the 14th amendment of the United States Constitution;

    d.      Duty to protect participants and members and staff, and provide adequate supervision;

    e.      Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsible and respectfully towards participants and members;

    f.      Duty to properly train staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;

    g.      Duty to review the criminal history of applicants and current employees;

    h.      Duty to monitor and oversee their staff, employees and agents, including Carlson;

    i.      Duty to provide diligent supervision to minors;

    j.      Duty to act promptly and diligently and not ignore or minimize problems; and

    g.      Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse;

112.     Defendants and each of them had and have a duty to protect participants and

members, including Ms. Frederick.  Defendants were required to, and failed, to provide adequate

training, supervision, monitoring and failed to be properly vigilant in seeing that training,

supervision and monitoring was sufficient at USAG and USOC to ensure the safety of Ms.

Frederick and others.

113.     Despite having a duty to do so, Defendants failed to adequately train and supervise

all staff to create a positive and safe environment, specifically including training to perceive, report

and stop inappropriate sexual conduct by other members of the staff, specifically including

Perpetrator Carlson.

114.     Defendants failed to enforce their own rules and regulations designed to protect the health and safety of the participants and members.  Further, they failed to adopt and implement safety measures, policies and procedures designed to protect minor children such as Ms. Frederick from the sexually exploitive and abusive acts of their agents and employees such as Perpetrator Carlson.

115.     Plaintiff is informed and believes and on that basis alleges that as part of Defendants' conspiratorial and fraudulent attempt to hide Perpetrator Carlson's propensity to molest from public scrutiny and criminal investigation, Defendants implemented various measures designed to make molestation conduct harder to detect and ensure minors came into contact with molesters, such as Ms. Frederick, would be subject to abuse, including:

a.     Permitting Perpetrator Carlson to remain in a position of authority and trust after Defendants knew or should have known that he was a molester.

b.     Allowing Perpetrator Carlson to be in an environment, at USAG and USOC authorized camps and events, including assigning him unfettered access and control over minor participants and members that included individual and private coaching sessions, access to minor's private sleeping quarters without a chaperone, and allowing Perpetrator Carlson to physically and sexually interact with Ms. Frederick;

c.     Failing for decades to disclose Perpetrator Carlson's sexual abuse, harassment and molestation and his propensity to commit such acts towards participants and members in USAG's and USOC's program, the public at large and law enforcement;

d.     Allowing Perpetrator Carlson's unsupervised and un-controlled access to minors, including Ms. Frederick;

e.     Holding out Perpetrator Carlson to Ms. Frederick, other participants and members of USAG and USOC, and the public at large as a trustworthy and honest person of high ethical and moral repute who was capable and worthy of being granted unsupervised access to the children of USAG;

f.     Failing to investigate or otherwise confirm or deny such facts about Perpetrator Carlson;

g.     Failing for decades to inform, or concealing from Plaintiff and law enforcement officials the fact that Ms. Frederick has been abused, harassed and molested, after Defendants knew or should have known that Perpetrator Carlson may have sexually abused Ms. Frederick, thereby enabling Ms. Frederick to continue to be endangered and sexually abused, harassed, molested, and/or creating the circumstance where Ms. Frederick and others were subject to harm;

    h.     Holding out Perpetrator Carlson to Ms. Frederick and to the community as being in good standing and trustworthy;

    i.      Cloaking Perpetrator Carlson's sexual misconduct with the facade of normalcy, thereby disguising the nature of his sexual abuse and contact with Ms. Frederick;

    j.     Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Perpetrator Carlson such as avoiding placement of Perpetrator Carlson in functions or environments in which his solitary contact Ms. Frederick was inherent;

    k.     Failing to put in place a system or procedure to supervise or monitor coaches, athletic trainers, and agents to insure they do not molest or abuse minors in Defendants' care; and

    m.   Failing to implement any reasonable, meaningful, or adequate supervision policies, practices or procedures at the GAG, which would have prevented Perpetrator Carlson solitary access to minors, including the Plaintiff.

116.    By his position within the Defendants' institutions, Perpetrator Carlson attained a position of influence over Ms. Frederick, her parents, and others.  Defendants' conduct created a situation of peril that was not, and could not be appreciated by Ms. Frederick.  By virtue of Defendants' conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose Perpetrator Carlson's conduct from the community, the public at large and law enforcement, Defendants allowed Perpetrator Carlson to remain in a position of influence where his unsupervised or negligently supervised conduct with Ms. Frederick and minor participants and members made molestation and abuse possible.

117.    During the period Ms. Frederick was being sexually abused and harassed by Perpetrator Carlson, Defendants had the authority and ability to prevent such abuse by removing Perpetrator Carlson from his position as head coach at GAG, USAG and in his status with the USOC.  They failed to do so, allowing the abuse to occur and to continue unabated.

118.    Plaintiff is informed and believes and on that basis, alleges that this failure was a part of Defendants' conspiratorial plan and arrangement to conceal Perpetrator Carlson's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and abuse, to preserve a false appearance

of propriety, and to avoid investigation and action by public authority including law enforcement. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants, while fostering an environment where such abuse could continue to occur.

119.    As a direct result of the sexual harassment and abuse that Ms. Frederick suffered by Perpetrator Carlson and Defendants' failures, Ms. Frederick lost her chance to succeed as Olympic gymnast.  She has been traumatized by the sexual abuse, and upset of knowing that Defendants could have prevented or stopped such abuse had Defendants conveyed the appropriate information.  This inability to interact creates conflict with Ms. Frederick's values of trust and confidence in others, and has caused Ms. Frederick substantial emotional distress, anxiety, nervousness and fear.  Ms. Frederick gets physically ill when reminded of the molestation and has difficulty with men in vulnerable situations and trusting men generally.

120.    As a direct result of this conduct, Ms. Frederick suffered immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, anxiety, and nervousness.  This psychological trauma and association of her abuse with gymnastics cut Ms. Frederick's gymnastics career short, as participating in gymnastics reminded her of the repeated sexual abuse that she suffered at the hands of Perpetrator Carlson, which she eventually suppressed as a survival mechanism.  Having been one of the most famous gymnasts in U.S. (and World) history, Ms. Frederick lost millions of dollars in economic damages, as a result of her sexual abuse at the hands of Perpetrator Carlson, and continues to suffer from such loss.

121.    Moreover, Ms. Frederick continues to worry, distress, and experience concern, anxiety, and depression, over whether Perpetrator Carlson still has access to minors and could continue to sexually abuse and harass them, as no criminal action has taken place.

122.    As a direct and proximate result of Defendants' tortious acts, omissions, wrongful conduct and breaches of their duties, Ms. Frederick's employment and professional development has been adversely affected.  She has lost wages, endorsements, and many financial opportunities in an amount to be determined at trial.  Ms. Frederick has suffered substantial economic injury, all to Ms. Frederick's general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

123.    As a further direct and proximate result of Defendants' wrongful actions, as herein alleged, Ms. Frederick has been hurt in her health, strength and activity.  Ms. Frederick has sustained permanent and continuing injury to her nervous system and person, which has caused and continues to cause great mental, physical and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

124.    In subjecting Ms. Frederick to the wrongful conduct herein described, Defendants acted in gross negligence and disregard of Ms. Frederick's rights, so as to constitute wrongful conduct and/or oppression.

125.    Ms. Frederick is informed and believes, and on that basis alleges, that specifically, the Defendants acted in concert, and under their authority as child care providers, with reckless disregard for the concern of the minor participants in its charge, including Ms. Frederick, in order to further financially benefit their respective business' growth.  Defendants created an environment that harbored molesters, put the vulnerable minor participants, including Ms. Frederick, at-risk of

harm, ignored clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a façade of normalcy, in order to maintain its funding and provide further financial growth of USAG and USOC, on the international level.   The safety of the minor participants who were entrusted to USAG and represented as being protected through USOC procedures, was compromised due to Defendants' desire to maintain the status quo of the USAG and USOC organizations, and avoid any public scrutiny for their misconduct.

126.    Ms. Frederick is informed, and on that basis alleges, that these acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Ms. Frederick is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants.

### EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

127.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

128.    Class members' claims and Plaintiff Frederick's individual claims for violations of the Safe Sport Act are timely under 18 U.S.C. § 2255(b).

129.    Plaintiff Frederick's common law claims are timely under MGL c. 260, s. 4C1/2, as Ms. Frederick discovered that an emotional or psychological injury or condition was caused by the sexual assault she suffered as a result of the Defendants wrongful conduct in 2015 when she saw an online photograph of Perpetrator Carlson at a gymnastic competition involving young girls. At that time, the memories that she suppressed for many years came flooding back and Plaintiff Frederick finally realized over the next months that she was injured by her molestation.

130.    In addition, Defendants' failure to report, document, or investigate the complaints against Perpetrator Carlson, and concealment of the sexually illicit conduct of Perpetrator Carlson,

constitute fraudulent concealment that equitably tolls any proffered statute of limitation that may otherwise bar the recovery sought by Ms. Frederick herein.

131.    Defendants are estopped from relying on any statute of limitations defense because they continued to refute and deny reports and allegations of sexual harassment and assault perpetrated by Perpetrator Carlson and intentionally concealed sexually illicit conduct, suppressed the complaints of Ms. Frederick, and failed to disclose known dangerous behaviors and serious increased risks to the Ms. Frederick.

132.    Defendants represented that Perpetrator Carlson was a competent coach and entrusted him with overseeing the safety and wellbeing of minor athletes, including Ms. Frederick, instead of upholding their duty to Ms. Frederick to protect her from harassment and abuse.

133.    At all relevant times, Defendants were under a continuing duty under federal law and parallel state laws to protect members and participants, including Ms. Frederick from harassment and abuse while under their care, and to disclose the true character, quality, and nature of their employees and/or agents.

134.    As a result of Defendants' concealment of the true character, quality and nature of Perpetrator Carlson and his conduct, they are estopped from relying on any statute of limitations defense.

135.    Defendants furthered their fraudulent concealment through acts and omissions, including misrepresenting known dangers of sexual harassment and abuse and a continued and systematic failure to disclose and/or cover up such information from/to the members and participants, their parents, and the public.

136.    Defendants' acts and omissions, before, during, and/or after the act causing Ms. Frederick' injury prevented her from discovering the injury or cause thereof until recently when suppressed memories were unrevealed.

137.    Defendants' conduct, because it was purposely committed, was known or should have been known by them to be dangerous, heedless, reckless, and without regard to the consequences or the rights and safety of Ms. Frederick.

138.    The failure of USOC and USAG to take any meaningful action against Perpetrator Carlson and report his actions to law enforcement mirrors a larger pattern of willful ignorance and inaction by USOC and USAG.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE SAFE SPORT ACT, 18 U.S.C. § 2255, *et. seq.*
### (By Plaintiff on Behalf of Herself and the Class Against the Class Defendants)

139.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

140.    The Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (herein known as the "Safe Sport Act") was written into law on or about February 14, 2018.

141.    The Safe Sport Act amended the Ted Stevens Olympic and Amateur Sports Act to include among the purposes of the U.S. Olympic Committee to promote a safe environment in sports that is free from abuse, including emotional, physical and sexual abuse of any amateur athlete.

142.    The Safe Sport Act expands those who must do mandatory reporting of child abuse to include "an adult who is authorized, by a national governing body, a member of a national

governing body, or an amateur sports organization that participates in interstate or international amateur athletic competition, interact with a minor or amateur athlete at an amateur sports organization facility or at any event sanctioned by a NGB, a member of a NGB, or such amateur sports organization."

143.   The report of child abuse must be done "as soon as possible" which within the statute means within a twenty-four (24) hour period.

144.   Defendants USAG and USOC became aware of reports that Plaintiff and Class members had been the victims of sexual abuse prior to or since the Safe Sport Act came into effect. For example, Defendants USAG and USOC learned facts that gave rise to a suspicion of Perpetrator Carlson's sexual abuse of Ms. Frederick on September 12, 2015, when she filed her formal complaint with USAG.

145.   Neither USAG nor USOC complied with the mandatory reporting required by the Safe Sport Act and did not report the abuse to local law authorities.

146.   The Safe Sport Act was enacted to protect amateur athletes from serial predatory abusers who prey upon young and naïve athletes.  As the legislative intent is protect those athletes in the future who may become victims to the serially abuser, it is apparent the Safe Sport Act retroactively applies to all previously reported abuses and not simply those that occur after February 14, 2018.

147.   USAG and USOC have not reported Ms. Frederick's abuse to authorities.

148.   Ms. Frederick is informed and believes, and on that basis alleges, that Defendants have failed to follow the mandate of timely reporting all of the claims to law enforcement within 24 hours of learning facts that gave rise to the suspicion of abuse prior to the enactment of the Safe Sport Act on February 14, 2018.

149.    As a result of the above-described conduct, Ms. Frederick and those similarly situated have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## SECOND CAUSE OF ACTION
### NEGLIGENCE
### (By Plaintiff Frederick, Individually, Against All Defendants)

150.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

151.    Defendants owed a duty of care to hire, train, monitor, investigate and oversee its USAG/USOC certified and sanctioned coaches, including Perpetrator Carlson.  Defendants' duties were increased because Perpetrator Carlson served as the "dorm parent" on behalf of the Defendants and was in a position of authority and power over Ms. Frederick.

152.    Ms. Frederick's care, welfare and physical custody was entrusted to Defendants. Defendants voluntarily accepted the entrusted care of Ms. Frederick. As such, Defendants owed Ms. Frederick, a minor child, a special duty of care that adults dealing with children owe to protect them from harm.

153.    Defendants had a duty to protect and warn arising from the special, trusting, confidential, and fiduciary relationship between Defendants and Ms. Frederick.

154.    Prior to during the "grooming period" and after the first incident of the Perpetrator Carlson's sexual harassment, molestation and abuse of Ms. Frederick, through the present, Defendants Grossfeld, Ward, USOC and USAG, knew and/or should have known that the Perpetrator Carlson was capable of sexually abusing and harassing Ms. Frederick or other victims.

155.    Defendants Grossfeld, Ward, USOC and USAG breached their duty to take reasonable protective measures to protect Plaintiff from the risk of childhood sexual harassment, molestation and abuse by the Perpetrator Carlson, by failing to supervise and stop employees and agents, including the Perpetrator Carlson, from committing wrongful sexual acts with minors, including Ms. Frederick.

156.    Defendants Grossfeld, Ward, USOC and USAG breached their duties of care to the minor Plaintiff by allowing the Perpetrator Carlson to come into contact with Ms. Frederick and other participants and dues-paying members, without supervision; by failing to adequately hire, train, supervise and retain the Perpetrator Carlson whom they permitted and enabled to have access to Plaintiff; by concealing from Plaintiff, her family, and law enforcement that the Perpetrator Carlson was sexually harassing, molesting and abusing her; and by holding the Perpetrator Carlson out to Plaintiff and her family as being of high moral and ethical repute, in good standing and trustworthy.

157.    Defendants Grossfeld, Ward, USOC and USAG breached their duties to Plaintiff by failing to investigate facts of sexual abuse by the Perpetrator Carlson, which they knew or should have known about. Defendants failed to reveal such facts of abuse to Plaintiff, her parents, the community and law enforcement agencies, and failed to reveal that they do not investigate and monitor their USAG/USOC certified coaches and dorm parents. Defendants also failed by placing

the Perpetrator Carlson into a position of trust and authority, holding him out to Plaintiff, her parents, and the public as being in good standing and trustworthy.

158.    Defendants Grossfeld, Ward, USOC and USAG breached their duty to Plaintiff by failing to adequately train, monitor and supervise the Perpetrator Carlson and failing to prevent the Perpetrator Carlson from committing wrongful sexual acts with minors including Ms. Frederick. Defendants Grossfeld, Ward, USOC and USAG knew or should have known of the Perpetrator's Carlson grooming process and incapacity to serve as a USAG/USOC certified head coach, providing for the physical care and coaching of minor females, including Ms. Frederick.

159.    As a result of the above-described conduct, Ms. Frederick has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace,  humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for therapy and counseling.

**THIRD CAUSE OF ACTION**
**NEGLIGENT SUPERVISION/RETENTION**
**(By Plaintiff Frederick Individually, Against Defendants Grossfeld, Ward,**
**USOC, and USAG)**

160.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

161.    By virtue of Ms. Frederick's special relationship with Defendant Grossfeld, Ward, USOC and USAG, and Defendants Grossfeld, Ward, USOC and USAG's relation to the Perpetrator Carlson, they owed Plaintiff a duty to provide reasonable supervision and oversight of USAG/USOC certified and sanctioned coach CARLSON, to use reasonable care in investigating

the Perpetrator Carlson's background, and to provide adequate oversight of Perpetrator Carlson's dangerous propensities and unfitness.  As organizations and individuals responsible for, and as representatives of Defendants Grossfeld, Ward, USOC and USAG, where many of the participants and dues-paying members thereof are vulnerable minors, like Plaintiff Frederick, entrusted to these Defendants Grossfeld, Ward, USOC and USAG, these Defendants Grossfeld, Ward, USOC and USAG's agents expressly and implicitly represented that certified coaches and staff, including the Perpetrator Carlson, were not a sexual threat to children and others who would fall under Perpetrator Carlson's influence, control, direction, and care.

162.    Defendants Grossfeld, Ward, USOC and USAG, by and through their respective agents, servants and employees, knew or should have known if they properly investigated, supervised and monitored Carlson, of the Perpetrator Carlson's exploitive and inappropriate propensities and that Perpetrator Carlson was an unfit agent.

163.    Despite such knowledge, Defendants Grossfeld, Ward, USOC and USAG negligently failed to supervise and monitor Perpetrator Carlson in his position of trust and authority as a USAG/USOC certified head coach, authority figure over children, and dorm parent, where he was able to commit wrongful acts of sexual misconduct against Ms. Frederick.

164.    Defendants Grossfeld, Ward, USOC and USAG failed to provide reasonable supervision and monitoring of the Perpetrator Carlson, failed to use reasonable care in investigating Perpetrator Carlson, and failed to ascertain his dangerous propensities and unfitness.

165.    Defendants Grossfeld, Ward, USOC and USAG further failed to take reasonable steps to ensure the safety of minors, including Ms. Frederick from sexual harassment, molestation, and abuse.

166.    At no time during the periods of time alleged did Defendants Grossfeld, Ward, USOC and USAG have in place a reasonable system or procedure to train, investigate, supervise and monitor the certified head coach or staff, including the Perpetrator Carlson, to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors and others in Defendants Grossfeld, Ward, USOC and USAG's care.

167.    Defendants Grossfeld, Ward, USOC and USAG were aware or should have been aware of how vulnerable children were to sexual harassment, molestation and abuse by teachers, coaches and other persons of authority within Defendants Grossfeld, Ward, USOC and USAG's entities.

168.    Defendants Grossfeld, Ward, USOC and USAG were put on notice, knew and/or should have known that the Perpetrator Carlson was engaging in unlawful sexual conduct with Ms. Frederick, and had committed other misconduct for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in sexual activities with Plaintiff, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through Defendants Grossfeld, Ward, USOC and USAG.

169.    Defendants Grossfeld, Ward, USOC and USAG were placed on actual or constructive notice that the Perpetrator Carlson had molested participants and dues paying member, Plaintiff Frederick, during his employment with Defendants Grossfeld, Ward, USOC and USAG.

170.    Defendants Grossfeld, Ward, USOC and USAG should have been informed of molestations of Ms. Frederick committed by the Perpetrator Carlson, and of conduct by the

Perpetrator Carlson that would put a reasonable person on notice of such propensity to molest and abuse children.

171.  Even though Defendants Grossfeld, Ward, USOC and USAG knew or should have known of these sexual activities by the Perpetrator Carlson, Defendants Grossfeld, Ward, USOC and USAG did not reasonably investigate, supervise or monitor the Perpetrator Carlson to ensure the safety of the minor participants and dues paying members, including Plaintiff Frederick.

172.  Defendants Grossfeld, Ward, USOC and USAG's conduct was a breach of their duties to Ms. Frederick.

173.  Defendants Grossfeld, Ward, USOC and USAG, and each of them, breached their duty to Plaintiff by, inter alia, by failing to adequately monitor and supervise the Perpetrator Carlson and stop the Perpetrator Carlson from committing wrongful sexual acts with Plaintiff Frederick.

174.  As a result of the above-described conduct, Ms. Frederick has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses therapy and counseling.

## FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (By Plaintiff Frederick, Individually, Against All Defendants)

175.  Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

176.     Defendants' misconduct conduct as described herein constituted negligence and caused significant emotional distress and physical injury to Ms. Frederick.

177.     Defendants could reasonably foresee that Perpetrator Carlson's actions would have caused the emotional distress.

178.     Defendants acted with negligence, recklessness, and disregard, knowing that Ms. Frederick would likely endure emotional distress because of what she was subjected to while under the care and control of Defendants.

179.     Defendants' conduct directly caused Ms. Frederick suffering that no person should have to endure.

180.     Any reasonable person in under the same circumstances that Plaintiff Frederick was placed by the Defendants' misconduct would have also suffered emotional distress.

181.     As a result of the above-described conduct, Ms. Frederick has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for therapy and counseling.

## PRAYER FOR RELIEF

On behalf of herself and all others similarly situated, Plaintiff prays this Court enter judgment against each of the Defendants and grant:

      A.    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

      B.    Economic losses on all claims allowed by law;

      C.    Special damages in an amount to be determined at trial;

      D.    Punitive damages on all claims allowed by law against individual Defendants in an amount to be determined at trial;

      E.    Injunctive relief as allowed by law;

      F.    Attorney's fees and costs associated with this action

      G.    Pre- and post-judgment interest at the lawful rate; and,

      H.    Any further relief that this Court deems just and proper, and any other appropriate relief at law and equity.

**Plaintiff hereby demands a trial by jury on all claims so triable.**

Respectfully submitted this 20th day of June, 2018.

**RESPECTFULLY SUBMITTED,**

**PLAINTIFF,**

/s/ Kimberly A. Dougherty
Kimberly A. Dougherty (BBO. No. 658014)
Vance Andrus (to be admitted *pro hac vice*)
Aimee Wagstaff (to be admitted *pro hac vice*)
ANDRUS WAGSTAFF, PC
19 Belmont Street
South Easton, MA 02375
(t) 508-230-2700
(f) 888-875-2889
kim.dougherty@andruswagstaff.com

AND

Lori E. Andrus (to be admitted *pro hac vice*)
Jennie Lee Anderson (to be admitted *pro hac vice*)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, California 94104
(t) 415-986-1400
(f) 415-986-1474
lori@andrusanderson.com
jennie@andrusanderson.com