IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARCIA FREDERICK, individually, and            )
on behalf of all others similarly situated,    )
                                               )
                    Plaintiffs,                )
                                               )
            v.                                 )      C.A. No. 1:18-cv-11299-IT
                                               )      Leave to File Excess Pages
UNITED STATES OLYMPIC COMMITTEE, USA           )      Granted on Oct. 16, 2018
GYMNASTICS (formerly known as the United States )
Gymnastics Federation), RICHARD CARLSON,       )
MURIEL GROSSFELD, GEORGE WARD,                 )
                                               )
                    Defendants.                )
_____)

## **MEMORANDUM IN SUPPORT OF DEFENDANT USA GYMNASTICS, INC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   Statement of Alleged Facts ........................................................................................ 2

II.  Argument.................................................................................................................... 6

a.   Legal Standard ......................................................................................................... 6

b.   Plaintiff Has Failed to State a Claim Under the Safe Sport Act (Count I) ........................ 7

i.   Congress Did Not Create a Private Right of Action for Violations of the Safe Sport Act's
Reporting Requirements........................................................................................... 7

1.   The Relevant Canons of Construction .................................................................. 8
2.   Relevant Provisions of the Safe Sport Act ............................................................ 9

a.   Section 101.................................................................................................. 9
b.   Section 102................................................................................................ 10

3.   Rule Application ............................................................................................ 11

ii.  The Safe Sport Act Does Not Require Reporting of Suspected Child Abuse that an NGB
Learned of Before the Law's Enactment................................................................. 12

c.   Plaintiff's Chapter 93A Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements (Count
V)
.. .........................................................................................................................15

d.   Plaintiff's State Common Law Negligence Allegations Against USAG Do Not State a
Plausible Claim for Relief (Counts II-IV) ..................................................................... 18

e.   Plaintiff's State Law Claims Are Time-Barred and Must Therefore Be Dismissed
(Counts II-V)......................................................................................................... 20

i.   Plaintiff's Common Law Negligence Claims Are Time-Barred ..................................... 20
ii.  Equitable Tolling ................................................................................................ 22

1.   The Discovery Rule Does Not Apply .................................................................. 22
2.   The Doctrine of Fraudulent Concealment Does Not Apply........................................ 23

iii.  Plaintiff's Chapter 93A Claim Is Time Barred ......................................................... 24

CONCLUSION................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Abdallah v. Bain Capital*, 880 F. Supp. 2d 190 (D. Mass. 2013) ................................................ 23

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................................. 8, 11

*Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64 (1st Cir. 2017) ........................ 8, 11

*Arevalo v. Ashcroft*, 344 F.3d 1 (1st Cir. 2003) ............................................................................ 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... passim

*Banks-Bennett v. O'Brien,* 2007 WL 4556672 (M.D. Pa. Dec. 20, 2007) ................................... 12

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003) ..................................................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 1, 6, 7

*Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739 (Mass. 1990) .............................................................. 22

*Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149 (D.D.C. 2017) ........................ 20

*Broderick v. ONC Financial Servs. Grp.*, 919 F. Supp. 2d 178 (D. Mass. 2013) ....................... 24

*Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21 (1st Cir. 1993) ............................................ 24

*Cannon v. Univ. of Chicago*, 441 U.S. 667 (1979) ......................................................................... 8

*Carr v. United States*, 560 U.S. 438 (2010) ................................................................................. 14

*Choeum v. I.N.S.*, 129 F.3d 29 (1st Cir. 1997) .............................................................................. 14

*Cruz v. New York*, 2017 WL 6021838 (N.D.N.Y. Oct. 27, 2017) ................................................ 12

*Davis v. City of New Haven*, 2014 WL 1315660 (D. Conn. Mar. 30, 2014) ............................... 12

*Doe v. Creighton*, 786 N.E.2d 1211 (Mass. 2003) ................................................................. 21, 23

*Doe v. Cultural Care, Inc*., 2011 WL 4738558 (D. Mass. Oct. 7, 2011). ................................... 20

*Doe v. Harbor Schools, Inc.*, 826 N.E.2d 228 (Mass. App. Ct. 2005) ........................................ 22

*Doe v. Order of St. Benedict*, 836 F. Supp. 2d 872 (D. Minn. 2011) ......................................... 17

*Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 215 F.3d 182 (1st Cir. 2000) ............................... 15

*Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013) ............................................. 7, 19

*Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1 (D. Mass. 2004) ............................................................ 12

*Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011) ................................................................... 17

*Harbi v. Mass. Inst. of Tech.*, 2017 WL 3841483 (D. Mass. Sept. 1, 2017) ............................... 19

*Hayduk v. Lanna*, 775 F.2d 441 (1st Cir. 1985) .......................................................................... 16

*Kavanagh v. Trustees of Boston Univ.*, 795 N.E.2d 1170 (Mass. 2003) ..................................... 19

*Kozikowski v. Toll Bros.*, 354 F.3d 16 (1st Cir. 2003) ................................................................. 24

*Kravetz v. U.S. Trust Co.*, 941 F. Supp. 1295 (D. Mass. 1996) ................................................... 22

*Leavitt v. Brockton Hosp.*, 907 N.E.2d 213 (Mass. 2009) ........................................................... 19

*Mulder v. Kohl's Dep't Stores*, 865 F.3d 17 (1st Cir. 2017) ........................................................ 16

*Northwest Airlines v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77 (1981) ............ 12

*Pettengill v. Curtis*, 584 F. Supp. 2d 348 (D. Mass. 2008) .......................................................... 22

*Phinney v. Morgan*, 654 N.E.2d 77 (Mass. App. Ct. 1995) .................................................... 22, 23

*Rodi v. S. New England Sch. of Law*, 389 F.3d 5 (1st Cir. 2004) ........................................... 16, 17

*Roe No. 1 v. Boy Scouts of America Corp.*, 147 Conn. App. 662 (2014) ..................................... 20

*Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25 (1st Cir. 2010) ........................... 7, 20

*Shafnacker v. Raymond James & Assocs.*, 683 N.E.2d 662 (Mass. 1997). ................................. 22

*Shaulis v. Nordstrom, Inc.*, 865 F.3d 1 (1st Cir. 2017) ................................................................ 15

*Springfield Library and Museum Ass'n v. Knoedler Archivum, Inc.,* 341 F. Supp.2d 32 (D. Mass. 2004) ............................................................................................................................................ 23

*Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423 (D. Mass. 2013) ..................................................... 23

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ................................................. 8, 11, 12

*United States v. Wilson*, 503 U.S. 329 (1992) ............................................................................ 14

*Wajda v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29 (D. Mass. 2000).......................... 15, 16

*Wayne Inv., Inc. v. Gulf Oil Corp*, 739 F.2d 11 (1st Cir. 1984)................................................. 17

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .................................................................................. 12

## <u>Statutes</u>

1 U.S.C. § 1 ................................................................................................................................. 14

18 U.S.C. § 1589 ........................................................................................................................ 10

18 U.S.C. § 1591 ........................................................................................................................ 10

18 U.S.C. § 2255 ................................................................................................................ 7, 10, 11

18 U.S.C. § 2258 ............................................................................................................... 10, 11, 13

18 U.S.C. §§ 2242-2243 .............................................................................................................. 10

34 U.S.C. § 20341 ............................................................................................................... passim

Mass. Gen. Laws c. 260 ............................................................................................ 20, 21, 23, 24

Mass. Gen. Laws c. 93A .................................................................................................... passim

## <u>Other Authorities</u>

164 Cong. Rec. S589-90 (daily ed. Jan. 30, 2018) ..................................................................... 10

*Preventing Abuse in Olympic and Amateur Athletics: Ensuring a Safe and Secure Environment for Our Athletes: Hearing Before the Subcomm. on Consumer Protection, Product Safety, Insurance, and Data Security of the S. Comm. on Commerce, Science, & Transportation*, 115th Cong. (2018) ............................................................................................................................ 17

## <u>Rules</u>

Fed. R. Civ. P. 12(b) ...................................................................................................... 1, 19, 24

Fed. R. Civ. P. 8 ........................................................................................................................ 18

Fed. R. Civ. P. 9(b) ............................................................................................................ passim

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), Defendant USA Gymnastics, Inc. ("USAG") moves to dismiss the claims asserted against it in the First Amended Class Action Complaint ("Amended Complaint") of Plaintiff Marcia Frederick ("Plaintiff" or "Ms. Frederick").  Specifically, the Amended Complaint asserts a claim against USAG for alleged violations of a federal statute that does not provide a private right of action for such violations and does not require USAG to do that which Plaintiff claims.  Plaintiff also has failed to plead with the requisite particularity facts supporting her fraud-based claim against USAG under Mass. Gen. Laws c. 93A ("Chapter 93A").  In addition, Plaintiff's state common law claims against USAG fail to satisfy the pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Finally, all of Plaintiff's state law claims against USAG, based on events that she alleges occurred in the late 1970s and early 1980s, are barred by applicable statutes of limitations.

USAG is committed to protecting minor athletes from sexual abuse, and is sympathetic with Ms. Frederick's concerns.  However, as the Amended Complaint makes clear, Ms. Frederick did not bring the coach's conduct to USAG's attention until 2015, more than 30 years after the alleged abuse,[1] and the Amended Complaint contains no allegations sufficient to support a finding that, at any relevant time, USAG knew or reasonably should have known that Ms. Frederick was at risk of harm.  For the reasons set forth in this Memorandum, as a matter of law, the Court should dismiss Plaintiff's claims against USAG.

---

[1] Upon receiving Ms. Frederick's complaint in 2015, USAG launched an investigation and conducted hearings on her behalf.  As a result, USAG banned Defendant Carlson for life from participating in USAG-certified programs.

## I.        Statement of Alleged Facts

In her Amended Complaint, Plaintiff Marcia Frederick alleges the following facts.[2]

Ms. Frederick is a former member of the U.S. Women's Gymnastics Team who trained and competed as a minor elite-level gymnast.  Am. Compl. ¶ 78.  Before the 1980 Olympic Games, she trained at Grossfeld's American Gold Gym ("GAG gym").  *Id.* ¶ 79.  GAG gym was operated by former U.S. Olympic gymnast Muriel Grossfeld and her common-law husband George Ward, both named defendants in this action.  *Id.* ¶¶ 80-82.

GAG gym was located in Milford, Connecticut.  *Id.* ¶ 98.  Its purpose was to prepare elite-level gymnasts for World Gymnastics Competitions, such as the World Championships and Olympic Games.  *Id.* ¶ 83.  According to the Amended Complaint, GAG gym paid fees to and was sanctioned by the USAG and United States Olympic Committee ("USOC").  *Id.* ¶ 84.  The USOC is a federally-chartered non-profit corporation which serves as the governing body for all American Olympic teams.  *Id.* ¶¶ 15-16.  As designated by USOC, USAG is the National Governing Body ("NGB") for gymnastics in the United States.  *Id.* ¶ 17.  USAG selects and trains the U.S. gymnastics teams for the Olympics and World Championships.  *Id.*  As pleaded in the Amended Complaint, USAG has more than 174,000 athletes and professional members, and more than 25,000 professional, instructor, and club members and sanctions approximately 4,000 events each year.  *Id.*

To become a USAG member, gymnasts, trainers, and other personnel pay a fee to USAG and agree to comply with USAG policies.  *Id.* ¶¶ 18, 22-23.  At relevant times, GAG gym was USAG-certified, and Defendants Grossfeld, Ward, and Carlson, and Ms. Frederick, were all

---

[2] For purposes of this motion, but without admission, USAG accepts as true all well-pleaded factual allegations in the Amended Complaint.

USAG members.  *Id.* ¶ 23.

The Amended Complaint alleges that GAG gym and its coaches retained complete control over the lives of its minor athletes.  *Id.* ¶ 85.  GAG gym regulated its athletes' training schedules, education, daily meals, and sleep schedules.  *Id.*  GAG gym also provided housing, schooling, and training for its gymnasts.  *Id.* ¶ 86.  During the relevant time period, GAG gym housed approximately 11 girls aged 12-16 at a cost of several thousand dollars per year.  *Id.*

From 1975-1978, Ms. Frederick trained with GAG gym coach Don Peters, whose employment was terminated in 1978 by Grossfeld and who was later banned by USAG for allegations of sexual misconduct with minor gymnasts.  *Id.* ¶ 87-88.  Grossfeld thereafter assigned Defendant Carlson to be the new head coach of GAG gym.  *Id.* ¶ 89.  During this time, Ms. Frederick "was under Perpetrator Carlson and Defendant Grossfeld's direct supervision, control and care."  *Id.* ¶ 92.  Ms. Frederick also alleges that "[a]dditionally, as the employers and supervisors of Perpetrator Carlson, with knowledge that he was in contact with and providing care to children, Defendants USAG and USOC were also in a special, confidential and fiduciary relationship with Ms. Frederick."  *Id.*

During much of the time Ms. Frederick trained at GAG gym, she lived in a GAG gym dorm room.  *Id.* ¶ 93.  Specifically, she lived in a second-floor, single-occupancy room, while many other gymnasts lived with roommates.  *Id.* ¶ 94.  Defendant Carlson was responsible for all of GAG gym's gymnasts, including Ms. Frederick, while at the gym, on excursions and competitions outside of the gym, and within the GAG gym housing facility.  *Id.* ¶ 95.  Carlson was a "dorm parent" who lived on the first floor of the GAG gym housing facility.  *Id.* ¶ 93.  He was responsible for providing training and individual care to gymnasts, in accordance with USAG and USOC policies.  *Id.* ¶ 96.

In late 1978, when Ms. Frederick was 15 years old, Carlson began the process of "grooming" her. *Id.* ¶ 97. From 1978-1980, Carlson repeatedly physically and sexually abused Ms. Frederick on GAG properties, when they traveled for competitions, and before and after competitive gymnastics meets. *Id.* ¶ 98. Ms. Frederick believed that she had to submit to Carlson's sexual demands in order to continue training for the 1980 Olympics. *Id.* ¶ 100. This belief was "[b]ased upon what was told to Ms. Frederick by the adults tasked to supervise her," and, she alleges, "the culture that USAG and USOC cultivated, and allowed to be cultivated, both in and out of the gym." *Id.*

In 1980, Ms. Frederick qualified for the U.S. Olympic gymnastics team. *Id.* ¶ 101. On or about March 21, 1980, after learning of the U.S. boycott of the 1980 Olympic Games, Ms. Frederick traveled directly to GAG and told Grossfeld and Ward about Carlson's abuse. *Id.* ¶¶ 102-103. Ms. Frederick told Grossfeld where the abuse had occurred and described the abuse with specificity. *Id.* ¶ 102. Neither Ward nor Grossfeld took any action to remedy the situation. *Id.* ¶ 103. This inaction, coupled with Carlson's continued remarks that the sexual acts they engaged in were a part of her training, led Ms. Frederick to believe that the abuse was normal. *Id.* ¶ 104. Ms. Frederick does not allege that she reported the abuse to either USAG or USOC at this time.

In 1982, Ms. Frederick won first place in the American Classic gymnastics competition, but that competition was her last with Carlson. *Id.* ¶ 105. Ms. Frederick chose to forego the 1984 Olympic Games "because she was afraid to and physically could not continue training with Perpetrator Carlson and at the GAG gym." *Id.* She alleges that "[t]his psychological trauma and association of her abuse with gymnastics cut [her] gymnastics career short, as participating in gymnastics reminded her of the repeated sexual abuse that she suffered at the hands of

Perpetrator Carlson, which she eventually suppressed as a survival mechanism." *Id.* ¶ 131.

More than 30 years later, in 2015, Ms. Frederick viewed an online photograph of Carlson at a gymnastics competition, and she alleges that memories of the abuse that she had suppressed came flooding back to her. *Id.* ¶ 140.  She further alleges that, over the next few months, she realized that she had been injured by the abuse that she had suffered at the hands of Defendant Carlson. *Id.*  In 2015, Ms. Frederick filed a formal complaint with USAG related to the sexual abuse. *Id.* ¶¶ 70, 155.  When she did so, "USAG and USOC learned facts that gave reason to suspect that [Frederick] had suffered an incident of child abuse." *Id.* ¶ 71.  Ms. Frederick does not allege that USAG had learned such facts before she filed the 2015 complaint.

Ms. Frederick also makes the following conclusory allegations.  She alleges that while she was training and competing as a minor elite-level gymnast, all defendants, including USAG, "took care, custody, and control of her and stood in loco parentis," had a duty to protect her from danger, and had a duty to properly train, hire, and monitor Carlson. *Id.* ¶ 106.  She alleges that Defendants, including USAG, were responsible for Ms. Frederick's supervision, but did not provide adequate measures to protect her from the risk of sexual abuse. *Id.* ¶ 107.

Also in conclusory fashion, Ms. Frederick alleges that at all relevant times "Carlson was an employee, representative, and/or agent of Defendants acting under their control and supervision," *id.* ¶ 108, and that "[t]hrough planned artifice," Defendants "attempted to prevent inquiry or escape investigation regarding the tortious acts of [ ] Carlson by hindering the acquirement of information and expressly misleading Ms. Frederick," *id.* ¶ 113.  Defendants allegedly did this to preserve their own public image and reputation. *Id.* ¶ 115.  The Amended Complaint further alleges that, by designating Carlson as the certified head coach of GAG, all Defendants, including USAG, represented to the community that Carlson was safe and

trustworthy, even though Defendants "knew of, or should have known of" Carlson's propensity and disposition to engage in sexual misconduct with minors. *Id.* ¶¶ 115, 118. Alleging no further detail or support, Ms. Frederick also claims that Defendants "implemented various measures designed to make molestation conduct harder to detect and ensure minors [who] came into contact with molesters . . . would be subject to abuse." *Id.* ¶ 126.

Based on the above-described allegations, the Amended Complaint sets forth the following causes of action: (1) violation of the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017, Pub. L. No.115-126, 132 Stat. 318 ("Safe Sport Act"); (2) negligence; (3) negligent supervision; (4) negligent infliction of emotional distress; and (5) violation of Mass. Gen. Laws Chapter 93A, § 9.[3]

## II.   Argument

### a.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Offering labels and conclusions will not suffice: a complaint must allege more than bare assertions "devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

---

[3] The Amended Complaint contains numerous, vague allegations concerning USAG's current and past practices affecting unidentified putative class members. At this early stage of the litigation, the Court should consider only Ms. Frederick's individual claims. *See McCants v. Nat'l Collegiate Athletic Assoc.*, 201 F. Supp. 3d 732, 740 (M.D.N.C. 2016) ("In considering the NCAA's motion to dismiss Plaintiffs' putative class action Complaint, the Court can only consider allegations related to the named plaintiffs— McCants and Ramsay—and not generalized allegations concerning unnamed plaintiffs or putative class members.").

Courts in this district conduct a two-step inquiry when evaluating the sufficiency of a complaint.  First, the Court must "distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (citation omitted).  Next, "the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (citation omitted).  "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In the following sections, we first address Plaintiff's federal and state statutory claims, then her common law claims, and finally the statutes of limitations barring all of the state law claims.

**b.   Plaintiff Has Failed to State a Claim Under the Safe Sport Act (Count I)**

**i.   Congress Did Not Create a Private Right of Action for Violations of the Safe Sport Act's Reporting Requirements**

In Count I of the Amended Complaint, Plaintiff brings a claim against USAG for alleged violations of the mandatory reporting requirements set forth in § 101(a) of the Safe Sport Act, codified at 34 U.S.C. § 20341.[4]  Plaintiff seeks relief for such alleged reporting violations under 18 U.S.C. § 2255, which provides an express private cause of action for certain enumerated

---

[4] Count I is the only count Plaintiff attempts to assert both individually and on behalf of a putative class. However, as mentioned above, at this threshold stage of the case, the Court must limit its review to the viability of Plaintiff's individual claim.

offenses listed in that statute.  As explained below, because failure to comply with the reporting requirements of 34 U.S.C. § 20341 is not one of the offenses listed in § 2255, that statute's civil remedy provisions do not create a private cause of action for violations of § 20341.

### 1.   The Relevant Canons of Construction

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 567 (1979) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 667, 688 (1979)).  Instead, a "private right[] of action . . . must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Such a right may "not [be] created by mere implication, but must be 'unambiguously conferred.'" *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 70 (1st Cir. 2017) (citation omitted).

"The question of the existence of a statutory cause of action is . . . one of statutory construction." *Touche Ross & Co.*, 442 U.S. at 567.  The Court's task "is limited solely to determining whether Congress intended to create the private right of action asserted . . . ." *Id.*

On this issue, "[s]tatutory intent is dispositive." *Allco Renewable Energy Ltd.*, 875 F.3d at 70.  "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  "[A]s with any case involving the interpretation of a statute, [this Court's] analysis must begin with the language of the statute itself." *Touche Ross & Co.*, 442 U.S. at 567.

As demonstrated below, one other canon of statutory construction is relevant to Plaintiff's claim.  Under the familiar principle of *expressio unius est exclusio alterius*, the express inclusion of one item implies the exclusion of other items not listed.  *See Barnhart v.*

*Peabody Coal Co.*, 537 U.S. 149, 168 (2003).  The canon has force where, as here, "the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence."  *Id.* (citation omitted).

### 2.   Relevant Provisions of the Safe Sport Act

The Safe Sport Act was signed into law on February 14, 2018.  The Act contains two titles.  At issue in this case are the provisions of Title I of the Act, entitled "Protecting Young Victims From Sexual Abuse."[5]  Title I contains two sections, § 101 and § 102.

### a.   Section 101

The first section under Title I of the Safe Sport Act, § 101, itself contains two subsections—§ 101(a) and § 101(b).  Subsection 101(a) amended the provisions of the Victims of Child Abuse Act of 1990, which had set forth reporting requirements for certain "covered professionals," *see* 34 U.S.C. § 20341(a)-(b).  Subsection 101(a) amended those provisions by adding a second class of "covered individuals" to which the statute's reporting requirements apply.  As defined in § 101(a) of the Safe Sport Act, such "covered individuals" include "an adult who is authorized, by a national governing body . . . to interact with a minor or amateur athlete at an amateur sports organization facility or at any event sanctioned by a national governing body . . . ."  Safe Sport Act, § 101(a)(3) (amending 34 U.S.C. § 20341).

Section 101(a) of the Safe Sport Act set forth the following reporting requirements for "covered individuals":

A covered individual who learns of facts that give reason to suspect that a

---

[5] Title II of the Act amended the Ted Stevens Olympic and Amateur Sports Act of 1978 by, among other things, designating the U.S. Center for SafeSport to serve as the independent national safe sport organization and providing it with jurisdiction over national governing bodies and amateur sports organizations to investigate and resolve reports of sexual misconduct.  Safe Sport Act § 202 (codified at 36 U.S.C. § 220541).  Those provisions are not at issue on this motion.

> child has suffered an incident of child abuse, including sexual abuse, shall
> as soon as possible make a report of the suspected abuse to the agency
> designated by the Attorney General under subsection (d).

*Id.*, § 101(a)(1) (amending 34 U.S.C. § 20341).  Subsection 101(a) defines "as soon as possible"

to mean "within a 24-hour period."  *Id.*, § 101(a)(3).

The other subsection in § 101—§ 101(b)—amended 18 U.S.C. § 2258's criminal penalty

provisions for failure to report sexual abuse by extending those penalties to "covered

individuals" who fail to make timely reports as required under the Safe Sport Act.  *Id.* § 101(b);

*see* 18 U.S.C. § 2258.  Those penalty provisions provide that violators "shall be fined under

[Title 18] or imprisoned not more than 1 year or both."  *Id.* § 2258.

### b.  Section 102

The second section under Title I of the Act, § 102, addresses civil remedies.  That section

"strengthen[ed] the law that allows victims of sex abuse to file suits <u>against those who abused</u>

<u>them.</u>"  164 Cong. Rec. S589-90 (daily ed. Jan. 30, 2018) (statement of Sen. Feinstein)

(emphasis supplied).  Section 102 did so by amending 18 U.S.C. § 2255.  That statute established

a private right of action for victims of criminal offenses proscribed by 14 enumerated sections of

Title 18.  The enumerated sections criminalize various forms of child abuse, which include,

among others, obtaining child labor (18 U.S.C. § 1589), engaging in child sex trafficking (18

U.S.C. § 1591), and committing sexually abusive acts (18 U.S.C. §§ 2242-2243).[6]  Section 102

of the Safe Sport Act added a liquidated damages remedy and extended the statute of limitations

"so that victims <u>can sue their abusers</u> 10 years after they become aware of their abuse."  164

Cong. Rec. S589-90 (daily ed. Jan. 30, 2018) (statement of Sen. Feinstein) (emphasis supplied);

---

[6] *See* 18 U.S.C. § 2255 ("Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title . . . may sue . . . .").

*see* Safe Sport Act § 102 (codified at 18 U.S.C. § 2255(a)-(b)).  Neither before nor after the amendment have 34 U.S.C. § 20341's reporting requirements, on which Plaintiff's federal claim is based, been included in the list of offenses to which § 2255's private right of action applies.

### 3.  Rule Application

Applying the canons of construction set forth above, it is clear from the face of the statute that Congress did not intend to provide a private cause of action for violations of the Act's reporting requirements.  As discussed above, § 2255's civil remedy provisions expressly provide a private cause of action for violations of certain listed statutes.  Nevertheless, Congress did not include 34 U.S.C. § 20341 in that list, despite specifically amending other provisions of § 2255 in the Safe Sport Act.  Congress's decision to include statutes criminalizing certain sex crimes in its list of statutes to which private remedies apply, while excluding the statute that mandates reporting of such crimes, cuts heavily against reading an implied right of action for reporting violations into the Safe Sport Act.

So too does Congress's express provision in the statute for a different enforcement mechanism.  "[C]ertain factors cut against finding an implied private cause of action in a given statute, such as the existence of other express enforcement provisions."  *Allco Renewable Energy Ltd.*, 875 F.3d at 70.  "[T]he 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'"  *Id.* (quoting *Sandoval*, 532 U.S. at 290).  In the Safe Sport Act, Congress expressly applied the criminal penalty provisions of 18 U.S.C. § 2258 to violations of 34 U.S.C. § 20341's mandatory reporting requirement for "covered individuals."  Safe Sport Act § 101(b).  It is hard to imagine a better indication of Congressional intent than Congress's decision not to list § 20341 in § 2255's civil remedy provisions, but to expressly amend § 2258's criminal penalty provisions to apply § 2258's penalties to "covered individuals" who fail to report child abuse.  *See Touche Ross & Co.*, 442 U.S. at 571-72 (finding

11

no private cause of action in § 17(a) of the Securities Exchange Act where that section was "flanked by provisions . . . that explicitly grant private causes of action").

Indeed, courts have held that there is not a private right of action for violations of the mandatory reporting requirements of the Victims of Child Abuse Act of 1990, also codified at 18 U.S.C. § 20341.  *See Cruz v. New York*, No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *13 n.12 (N.D.N.Y. Oct. 27, 2017); *Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Conn. Mar. 30, 2014); *Banks-Bennett v. O'Brien*, No. 1:CV-07-1875, 2007 WL 4556672, at *3 (M.D. Pa. Dec. 20, 2007).  Nothing in the 2018 amendments changes this result for violations of the reporting requirements of the Safe Sport Act.

Finally, the legislative history of the Safe Sport Act is silent on the issue.  Although such silence is not determinative, it is meaningful because there is simply no "manifestation of an intent on the part of Congress to create a [private right of action]."  *Northwest Airlines v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77, 94 (1981); *see Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 16 (D. Mass. 2004) (characterizing *Touche Ross* as "require[ing] some affirmative evidence of congressional intent to create a private right of action, and not just a lack of congressional intent to deny a cause of action" (citation omitted)) (Saris, J.).  Thus, because "the statute does not itself so provide, a private cause of action will not be created through judicial mandate."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).

### ii.  The Safe Sport Act Does Not Require Reporting of Suspected Child Abuse that an NGB Learned of Before the Law's Enactment

Plaintiff alleges that USAG violated the reporting provisions of the Safe Sport Act by "fail[ing] to make a report of the suspected abuse to a law enforcement agency within 24 hours,

and/or by February 15, 2018[7] for incidents reported prior to enactment of the Safe Sport Act."

Am. Compl. ¶ 51.  She alleges that, in or around 2015, she filed a claim with USAG related to

the sexual abuse she suffered at the hands of Richard Carlson, *id.* ¶ 70, which caused USAG to

learn facts that gave it reason to suspect that Plaintiff suffered an incident of child abuse, *id.* ¶ 71.

According to Plaintiff, the Safe Sport Act mandates that USAG report this suspected incident of

child abuse to law enforcement within 24 hours of the Act's enactment, *id.* ¶¶ 72, 154-159, and

that USAG failed to do so in direct violation of the statute, *id.* ¶¶ 73, 159.

　　Plaintiff's expansive reading of the Safe Sport Act's reporting requirement is not

consistent with the language of the statute.  As explained above, 34 U.S.C. § 20341(a)(2)

provides that

> A covered individual <u>who learns of facts</u> that give reason to suspect that a child
> has suffered an incident of child abuse, including sexual abuse, shall <u>as soon as
> possible</u> make a report of the suspected abuse to the agency designated by the
> Attorney General under subsection (d).

 (emphases supplied).  As also explained above, § 20341(c) defines "as soon as possible"

as meaning "within a 24-hour period."  *Id.* § 20341(c)(12).

　　Under Plaintiff's interpretation of the statute, any person or entity subject to

§ 20341(a)(2)'s mandate was, within 24 hours of the Act's passage, required to report any

incidents of suspected child abuse of which the person or entity had <u>ever</u> become aware,

lest the person or entity be subject to § 2258's criminal penalty provisions of a fine and/or

imprisonment of not more than one year.  Such an absurdly broad requirement, which is

not written into the statute, would create an obligation which, as a practical matter, would

be impossible for covered individuals to comply with.  It would therefore raise

---

[7] As mentioned above, the Safe Sport Act was signed into law on February 14, 2018.

constitutional concerns in light of the potential criminal penalties that may apply.  *See Arevalo v. Ashcroft*, 344 F.3d 1, 8 (1st Cir. 2003) ("It is trite, but true, that courts are bound to interpret statutes whenever possible in ways that avoid absurd results."); *Choeum v. I.N.S.*, 129 F.3d 29, 39 (1st Cir. 1997) (invoking "maxim of statutory construction that tells us to interpret statutes so as to avoid constitutional concerns").

Not only does Plaintiff's expansive reading of the statute not find support in the statutory language or plain common sense, but it also conflicts with a fair reading of the statutory language.  Congress did not use a past-tense verb to define when the reporting requirement is triggered – it did not use language such as "who learned," "who has learned," or "who has previously learned."  Rather, Congress defined the scope of the requirement in the present tense, using the language "who learns."

"Congress' use of a verb tense is significant in construing statutes."  *United States v. Wilson*, 503 U.S. 329, 333 (1992).  In the Dictionary Act, Congress itself has directed that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present." 1 U.S.C. § 1.  *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("By implication, then, the Dictionary Act instructs that the present tense generally does not include the past. Accordingly, a statute that regulates a person who 'travels' is not readily understood to encompass a person whose only travel occurred before the statute took effect.").

For these reasons, Congress did not intend for the statute to require covered individuals to report all suspected past acts of abuse within 24 hours of the statute becoming law, but instead intended that they immediately report to law enforcement suspected sexual abuse of which they become aware after the law's enactment.  For this

reason as well, Plaintiff has failed to state a claim under the Safe Sport Act.

### c. Plaintiff's Chapter 93A Claim Fails to Satisfy Rule 9(b)'s Pleading Requirements (Count V)

Plaintiff's other statutory claim is set forth in Count V of the Amended Complaint.  She

asserts a cause of action under Section 9 of Chapter 93A.  Plaintiff bases her Chapter 93A claim

on allegations of fraudulent concealment and misrepresentation.  These allegations against

USAG include (1) "concealing sexual harassment, abuse and/or molestation claims by

participants, coaches, and members," Am. Compl. ¶ 194, and (2) "engag[ing] in a common

scheme, arrangement or plan to actively conceal allegations against sexual abusers," *id.* ¶ 195,

"in order to maintain the false sense of safety for participants and their families, including Ms.

Frederick, and to perpetuate the program financially," *id.* ¶ 196.  Plaintiff also alleges that

USAG, "through planned artifice, attempted to prevent inquiry or escape investigation regarding

the tortious acts of Perpetrator Carlson by hindering the acquirement of information and

expressly misleading Ms. Frederick." *Id.* ¶ 113.[8]

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce."  M.G.L. c. 93A, § 2.  A Chapter 93A claim

based on alleged fraudulent concealment, misrepresentation, or deceit sounds in fraud.  *See Ed*

*Peters Jewelry Co. v. C & J Jewelry Co.*, 215 F.3d 182, 191 (1st Cir. 2000) ("The hallmarks of

fraud are misrepresentation or deceit.").  A claim under Chapter 93A that sounds in fraud is

subject to the heightened pleading requirements of Fed. R. Civ. P.  9(b).  *Shaulis v. Nordstrom,*

*Inc.*, 865 F.3d 1, 13 n.6 (1st Cir. 2017); *Wajda v. R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d 29,

---

[8] Plaintiff also appears to base her Chapter 93A claim on a negligence and/or negligent supervision theory.  *See* Am. Compl. ¶ 194.  Allegations that sound in negligence, however, are not enough to give rise to a Chapter 93A violation.  *Darviris v. Petros*, 812 N.E.2d 1188, 1192 (Mass. 2004) ("[A] violation of G.L. c. 93A requires, at the very least, more than a finding of mere negligence.").

37 (D. Mass. 2000) ("[P]leadings of conspiracy to defraud or conceal [under Chapter 93A] must conform to the more stringent particularity requirements of Rule 9(b)."). Rule 9(b) provides that in alleging fraud, "a party must state with particularity the circumstances constituting fraud."

Under Rule 9(b), "[p]leadings which portray a conspiracy to defraud or conceal may not be painted in broad strokes; they must state the factual foundations of that claim with particularity." *R.J. Reynolds Tobacco Co.*, 103 F. Supp. 2d at 32-33. "[T]his holds true 'even when the fraud relates to matters peculiarly within the knowledge of the opposing party.'" *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985). "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Id.* Rather, Rule 9(b) "requires plaintiffs to specifically plead 'the time, place, and content of an alleged false representation.'" *Mulder v. Kohl's Dep't Stores*, 865 F.3d 17, 22 (1st Cir. 2017) (finding that "[plaintiff's] claim that she was 'induced' to travel to Kohl's by its 'advertising in general' and its 'reputation' of 'amazing prices' is too vague to satisfy Rule 9(b).) Accordingly, to satisfy Rule 9(b), Plaintiff must describe in her Amended Complaint specific facts supporting her allegations of fraud and fraudulent concealment.

Plaintiff's fraud-based Chapter 93A claim against USAG fails to satisfy Rule 9(b)'s heightened pleading standard. Her Chapter 93A allegations consist of unsupported, conclusory statements bereft of any detail. For example, the Amended Complaint asserts that USAG took "overt acts to conceal the abuse," Am. Compl. ¶ 36, but does not describe what these "overt acts" were or when they occurred. Plaintiff also does not describe any facts supporting her allegation of a conspiracy to conceal allegations with USOC, nor does she describe "the who, what, where, and when of [any] allegedly false or fraudulent representation." *Rodi v. S. New England Sch. of*

*Law*, 389 F.3d 5, 15 (1st Cir. 2004); *see Wayne Inv., Inc. v. Gulf Oil Corp*, 739 F.2d 11, 14 (1st Cir. 1984) (upholding dismissal of 93A claims because the appellant "offered nothing more substantial than conclusory allegations of fraud").

Throughout the Amended Complaint, Plaintiff paints the alleged fraudulent conduct in broad strokes, and fails even to plead that USAG had been made aware of Defendant Carlson's alleged behavior before Ms. Frederick's 2015 complaint to USAG.  Plaintiff's conclusory allegations do not satisfy Rule 9(b)'s pleading requirements. *See Doe v. Order of St. Benedict*, 836 F. Supp. 2d 872, 877 (D. Minn. 2011) (fraudulent concealment allegations failed to satisfy Rule 9(b) where the complaint failed to state with particularity facts relating to the defendant's concealment of the particular abuser's actions).  For these reasons, the Court should dismiss Plaintiff's Chapter 93A claim against USAG.[9]

---

[9] The only allegation in the Amended Complaint that could conceivably relate to a fraudulent concealment claim is that during a congressional hearing in 2018, "Rhonda Faehn, former Director of the Women's program for USAG, testified that [former USAG CEO] [Steve] Penny told her not to tell anyone about accusations of sexual assault and molestation of gymnasts." Am. Compl. ¶ 45.  No facts are alleged, however, connecting this testimony, which concerned the acts of Dr. Larry Nassar in the 1990s and 2000s at Michigan State University, to any alleged concealment of Mr. Carlson's abuse of Ms. Frederick in the 1970s and 1980s at Defendant Grossfeld's gym in Connecticut.  The allegation also takes Ms. Faehn's testimony out of context.  Ms. Faehn testified that USAG immediately hired a private investigator upon learning of potential claims against Larry Nassar in June 2015, and reported the matter to the FBI in July 2015.  *See Preventing Abuse in Olympic and Amateur Athletics: Ensuring a Safe and Secure Environment for Our Athletes: Hearing Before the Subcomm. on Consumer Protection, Product Safety, Insurance, and Data Security of the S. Comm. on Commerce, Science, & Transportation,* 115th Cong. (2018) (statement of Rhonda Faehn, former Senior VP, Unites States of America Gymnastics), https://www.commerce.senate.gov/public/_cache/files/52ccab27-7c72-4ee4-83c0-a8b2e720239b/83273E89F7C4468554C2420D2FB2623D.r.-faehn-testimony-06.01.2018.pdf.  *See Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (on motion to dismiss, court must consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice").

### d.  Plaintiff's State Common Law Negligence Allegations Against USAG Do Not State a Plausible Claim for Relief (Counts II-IV)

Plaintiff's common law negligence allegations as to USAG are insufficient to state a claim under Fed. R. Civ. P. 8.  As explained in Section II.a above, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Although a complaint need not contain detailed factual allegations, a plaintiff must plead more than general assertions "devoid of 'further factual enhancement.'"  *Id.*  Rather, the allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*

Plaintiff pleads in conclusory terms that USAG controlled Defendant Carlson and had an employment relationship with him while he worked at the GAG gym, and that USAG took care, custody, and control over Plaintiff while she trained at the GAG gym.  Plaintiff admits, however, that the GAG gym and Carlson were merely USAG members, Am. Compl. ¶ 90, along with the tens of thousands of other USAG-member gyms and coaches across the United States, *see id.* ¶ 17.  Plaintiff's conclusory allegations that USAG employed or controlled Carlson while he coached and lived at the GAG gym, and that USAG possessed custody and/or control over Ms. Frederick during her training at the GAG gym, contradict many of Plaintiff's other allegations and are insufficient under Rule 8 to state a negligence-based or negligent supervision claim.[10]

---

[10] The Amended Complaint is replete with inconsistent allegations.  For example, Plaintiff alleges that "all Defendants, took care, custody, and control of [Ms. Frederick] and stood in loco parentis," Am. Compl. ¶ 106 (emphasis supplied), and that "Perpetrator Carlson was under the direct supervision, management, agency and control of Defendants," *id.* ¶ 114.  But she also alleges that the GAG gym was formed and run by Defendants Grossfeld and Ward, not USAG, *id.* ¶¶ 80, 82, and that Grossfeld, not USAG, hired Carlson as head coach of her gym, *id.* ¶ 89.  Similarly, she alleges that "GAG and its employees, particularly its coaches, were given complete control of the young gymnasts' lives," *id.* ¶ 85, and that "Defendants Grossfeld, Ward, and Perpetrator Carlson had direct and complete custody and control of [ ] Ms. Frederick," *id.* ¶ 90.  These allegations that the individual defendants exercised

In addition, the Amended Complaint contains many other wholly speculative, conclusory allegations as to USAG, such as that (1) "through planned artifice, [USAG] attempted to prevent inquiry or escape investigation regarding the tortious acts of Perpetrator Carlson by hindering the acquirement of information and expressly misleading Ms. Frederick," *id.* ¶ 113; (2) USAG "knew of, or should have known of, Perpetrator Carlson's propensity and disposition to engage in sexual misconduct with minors," *id.* ¶ 118, and (3) USAG "ignored the sexual misconduct Perpetrator Carlson had engaged in, and concealed that information from Ms. Frederick's family and law enforcement,"  *id.* ¶ 119.  These allegations are not supported by <u>any</u> factual detail in the Amended Complaint, and must be ignored in testing the sufficiency of the claims.  *See Garcia-Catalan*, 734 F.3d at 103.

The Amended Complaint also contains no factual allegations to support a finding that USAG owed Ms. Frederick a legal duty to protect her from Carlson.  "Whether a duty of care exists is a question of law and an appropriate subject of a motion to dismiss pursuant to rule 12(b)(6)."  *Leavitt v. Brockton Hosp.*, 907 N.E.2d 213, 215-216 (Mass. 2009) (internal citation omitted).  Even assuming for purposes of this motion that an NGB such as USAG owes a duty to USAG member-athletes to use reasonable care to prevent harm or injury caused by the acts of third parties, such a duty "extends only to acts by third parties that are 'reasonably foreseeable.'" *Harbi v. Mass. Inst. of Tech.*, No. 16-CV-12394-FDS, 2017 WL 3841483, *8 (D. Mass. Sept. 1, 2017); *see Kavanagh v. Trustees of Boston Univ.*, 795 N.E.2d 1170, 1177-78 (Mass. 2003) ("Kavanagh's negligence claim also fails on the ground that any duty to protect him from the harm of another's criminal acts extends only to those acts that are reasonably foreseeable."); *see*

---

complete control over Ms. Frederick cannot be reconciled with the allegation that USAG exercised control over her.

*also Roe No. 1 v. Boy Scouts of America Corp.*, 147 Conn. App. 662, 638 (2014) (defendant had no duty to protect plaintiff from sexual assault because the harm was not foreseeable); *Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 175 (D.D.C. 2017) (plaintiff did not plead facts sufficient to establish existence of a duty).  Here, Plaintiff has not sufficiently pleaded that Carlson's abuse was reasonably foreseeable to USAG where she does not plead (1) that she or anyone else reported Carlson to USAG before any of the abuse occurred, or (2) that Carlson had a history of abuse of which USAG was or should have been aware.[11]

In short, as to her negligence-based claims against USAG, Plaintiff has failed to plead anything more than conclusory assertions devoid of any further factual enhancement, *see Iqbal*, 556 U.S. at 678, and thus she has failed to "state a plausible, not a merely conceivable, case for relief."  *Sepúlveda–Villarini*, 628 F.3d at 29.

### e.  Plaintiff's State Law Claims Are Time-Barred and Must Therefore Be Dismissed (Counts II-V)

Plaintiff's state law claims are barred by the applicable statute of limitations.  Based on the allegations pleaded in the Amended Complaint, equitable tolling should not be applied to any of the claims.  Counts II through V should, therefore, be dismissed.

### i.  Plaintiff's Common Law Negligence Claims Are Time-Barred

Plaintiff's common law claims as they pertain to USAG are premised on USAG's alleged negligent supervision of Defendant Carlson.  *See* Am. Compl. ¶¶ 162, 166-169, 172-177, 182, 184, 187, 194.  The applicable statute of limitations for negligent supervision claims based on sexual abuse—Massachusetts General Law c. 260, § 4C ½—provides that

---

[11] In addition, Plaintiff does not adequately plead that USAG's action or inaction was the cause in fact and the proximate cause of Plaintiff's injuries.  Plaintiff does not describe in the Amended Complaint what action USAG took or failed to take that caused Plaintiff's abuse.  *See Doe v. Cultural Care, Inc.*, No. 10-11426-DJC, 2011 WL 4738558, *6-7 (D. Mass. Oct. 7, 2011).

An action of tort alleging that the defendant negligently supervised a person who sexually abused a minor or that the defendant's conduct caused or contributed to the sexual abuse of a minor by another person shall be commenced within the later to expire of: (i) 35 years of the acts alleged to have caused an injury or condition to such minor; or (ii) 7 years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by such act; provided, however, that the time limit for commencement of such an action under this section shall be tolled for a child until the child reaches 18 years of age.

M.G.L. c. 260, § 4C ½.

Plaintiff cites to this statute to assert that her claims are timely. However, accepting all well-pleaded factual allegations as true, a close reading of the Amended Complaint shows that Plaintiff's claims have long since expired. The Amended Complaint demonstrates that Plaintiff was aware of the abuse she suffered, and was traumatized by it, in the late 1970s and early 1980s. Here, Plaintiff's claim accrued at the latest in 1982 when she decided to leave the sport of gymnastics because of Carlson's abuse. *See* Am. Compl. ¶ 105. As pleaded, Plaintiff's "psychological trauma" caused by Carlson's abuse, *id.* ¶ 131, forced her to leave the sport in 1982 "because she was afraid to and physically could not continue training with Perpetrator Carlson and at the GAG Gym." *Id.* ¶ 105. When Plaintiff left the sport at the height of her career and decided to forego a chance to compete at the 1984 Olympic Games, Plaintiff reasonably should have discovered that she had been injured. *See Doe v. Creighton*, 786 N.E.2d 1211, 1215 (Mass. 2003) (determining that the plaintiff was aware of the injury where the "overtly abusive relationship produced an immediate and obvious injury as the plaintiff neared the age of maturity"). Even utilizing the later applicable limitations period of 35 years, Plaintiff's claim expired in 2017.[12]

---

[12] M.G.L. c. 260, § 4C ½ includes a built-in tolling period for minors permitting the statute to run once the minor child reaches the age of 18. Plaintiff turned 18 in 1981. *See* Am. Compl. ¶ 97.

### ii.   Equitable Tolling

In Massachusetts, a statute of limitations may be tolled under one of two doctrines:  (1) the discovery rule, or (2) the doctrine of fraudulent concealment.  *Kravetz v. U.S. Trust Co.*, 941 F. Supp. 1295, 1302 (D. Mass. 1996).  Plaintiff attempts to invoke both doctrines, which courts should apply sparingly.  *See Shafnacker v. Raymond James & Assocs.*, 683 N.E.2d 662, 665 (Mass. 1997).  Neither doctrine applies in this case.

### 1.   The Discovery Rule Does Not Apply

Plaintiff's own allegations preclude the use of the discovery rule to toll the statute of limitations.  The discovery rule, which applies to Massachusetts negligence claims in sexual abuse cases, tolls the limitations period until the plaintiff has an awareness of her injuries and that the defendant caused them.  *See Pettengill v. Curtis*, 584 F. Supp. 2d 348, 362 (D. Mass. 2008).  The rule applies when the plaintiff is unaware and could not have reasonably been made aware that the defendant's conduct caused the plaintiff's harm.  *Phinney v. Morgan*, 654 N.E.2d 77, 79 (Mass. App. Ct. 1995).

To be clear, the rule does not toll the statute of limitations until the time when the plaintiff discovers every element of her cause of action or the full extent or nature of her injury. Rather, under the discovery rule, the statute of limitations begins to run when the plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was."  *Doe v. Harbor Schools, Inc.*, 826 N.E.2d 228, 234 (Mass. App. Ct. 2005), *aff'd in part, rev'd in part,* 843 N.E.2d 1058 (Mass. 2006) (quoting *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 742 (Mass. 1990)).

Here, it is clear that Plaintiff had sufficient notice that she was harmed in 1982 when, on account of the "psychological trauma and association of her abuse with gymnastics" she "cut

[her] gymnastics career short." *See* Am. Compl. ¶ 131.  In 1982 when Plaintiff left the sport of gymnastics, Plaintiff possessed knowledge and/or sufficient notice that she had been harmed, and so the limitations period began to run.  The discovery rule therefore does not save Plaintiff's claims.  *See Creighton*, 786 N.E.2d at 1215; *Phinney*, 654 N.E.2d at 81 (determining that the plaintiffs were aware of the harm having complained of the abuse to their mother).

### 2.   The Doctrine of Fraudulent Concealment Does Not Apply

Plaintiff's attempt to toll the statute of limitations under the doctrine of fraudulent concealment also fails.  In Massachusetts, fraudulent concealment will toll the statute of limitations if the alleged wrongdoer concealed the existence of a cause of action through an affirmative act done with the intent to deceive or if the alleged wrongdoer breached a fiduciary duty of full disclosure.  *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 442 (D. Mass. 2013); M.G.L. c. 260, § 12.  Fraudulent concealment is subject to Rule 9(b)'s heightened pleading standard for fraud, which requires that the plaintiff plead the time, place, and content of the fraudulent concealment.  *Abdallah v. Bain Capital*, 880 F. Supp. 2d 190, 196 (D. Mass. 2013).

Plaintiff alleges that defendants intentionally concealed Carlson's sexually illicit conduct, *see, e.g.*, Am. Compl. ¶ 142, and engaged in a "systematic failure to disclose and/or cover up information" from/to USAG members and participants, their parents, and the public, *see* Am. Compl. ¶ 146.  Such conclusory and generalized allegations do not satisfy Rule 9(b)'s pleading standard.  *See Order of St. Benedict,* 836 F. Supp. 2d at 877.[13]

In addition, the doctrine of fraudulent concealment will not toll the statute of limitations for a cause of action if the plaintiff had knowledge of the facts giving rise to her cause of action.  *Springfield Library and Museum Ass'n v. Knoedler Archivum, Inc.*, 341 F. Supp.2d 32, 39

---

[13] USAG incorporates into this subsection the arguments it makes above in Section II.c.

(D. Mass. 2004).  As pleaded, Plaintiff was aware of the facts giving rise to her cause of action by 1982.  Plaintiff's common law causes of action should therefore be dismissed.

### iii.   Plaintiff's Chapter 93A Claim Is Time Barred

Like Plaintiff's common law negligence claims, Plaintiff's Chapter 93A claim is time barred.  Actions asserting a Chapter 93A violation must be commenced within four years after the cause of action accrues.  M.G.L. c. 260, § 5A; *see Kozikowski v. Toll Bros.*, 354 F.3d 16, 22 (1st Cir. 2003).  A claim under Chapter 93A accrues "at the time injury results from the assuredly unfair or deceptive acts."  *Broderick v. ONC Financial Servs. Grp.*, 919 F. Supp. 2d 178, 181 (D. Mass. 2013) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir. 1993)).  As explained above, as pleaded, Plaintiff's injury resulted at the latest in 1982 after she alleges that she endured pain and psychological trauma from Carlson's abuse, Am. Compl. ¶¶ 104, 131, which forced her to leave the sport and the GAG Gym, *id.* ¶¶ 105, 131.

In addition, for the reasons explained above in Sections II.e.ii(1)-(2), neither the discovery rule nor the doctrine of fraudulent concealment serve to equitably toll Plaintiff's Chapter 93A claim. Thus, Plaintiff's Chapter 93A claim is time barred.

### <u>CONCLUSION</u>

For all of the foregoing reasons, pursuant to Rules 12(b)(6) and 9(b), the Court should dismiss Plaintiff's Amended Complaint as to USAG in its entirety and with prejudice.

Respectfully submitted:

USA GYMNASTICS, INC.

By its attorneys,

/s/ Donald R. Frederico                                     /s/ D. Andrew Portinga
Donald R. Frederico, BBO No. 178220          D. Andrew Portinga (admitted *pro hac vice*)
Michael J. Derderian, BBO No. 682757          MILLER JOHNSON
PIERCE ATWOOD LLP                                      45 Ottawa Ave., SW, Suite 1100
100 Summer Street, 22nd Floor                       Grand Rapids, MI  49503
Boston, MA 02110                                            (616) 831-1772
(617) 488-8100                                                 portingaa@millerjohnson.com
dfrederico@pierceatwood.com
mderderian@pierceatwood.com

Cheryl Allen-Ricciardi, BBO No. 699093
PIERCE ATWOOD LLP
One Financial Plaza, 26th Floor
Providence, RI 02903
(401) 588-5113
callenricciardi@pierceatwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2018, I electronically filed the above

Memorandum in Support of Defendant USA Gymnastics, Inc.'s Motion to Dismiss by

using the CM/ECF system which will send notification of such filing(s) to all registered

participants.

/s/ Donald R. Frederico
Donald R. Frederico

25