# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCIA FREDERICK, individually, and on behalf of all others similarly situated, | Case No. 1:18-cv-11299 |
| *Plaintiffs*, | |
| v. | |
| UNITED STATES OLYMPIC COMMITTEE, USA GYMNASTICS (formerly known as the United States Gymnastics Federation), RICHARD, CARLSON, MURIEL GROSSFELD, GEORGE WARD, | **LEAVE TO FILE EXCESS PAGES GRANTED ON OCTOBER 16, 2018** |
| *Defendants*. | |

## DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Michael M. Maya (BBO #672847)
Andrew Soukup
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

Mitchell Aaron Kamin
Carolyn June Kubota
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067-4643

*Counsel for United States Olympic Committee*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    USOC's Role Under the Ted Stevens Amateur Sports Act. .................................. 2

    B.    Richard Carlson's Abuse of Plaintiff. .................................................. 5

PROCEDURAL STANDARD ................................................................................ 6

ARGUMENT ....................................................................................................... 6

I.    The Complaint Engages in Impermissible Group Pleading. ............................... 6

II.    The Safe Sport Act Claim Should Be Dismissed. ........................................... 8

    A.    There Is No Private Cause Of Action To Enforce The Safe Sport Act. ............... 8

    B.    The Safe Sport Act Does Not Apply Retroactively. .............................. 10

III.    The Negligence Claims Against USOC Should be Dismissed. ......................... 11

    A.    USOC Does Not Owe A Duty To Prevent Criminal Acts of Third Parties. ......... 11

        1.    USOC's Relationship With Plaintiff or Carlson Is Not Sufficient To Impose A Duty. .................................................. 12

        2.    Carlson's Criminal Conduct Was Not Foreseeable to USOC. ................. 15

    B.    Plaintiff Has Not Alleged The Causation Element Of Her Negligence Claims. ................................................................................. 17

    C.    The Negligent Supervision and Retention Claim Does Not Apply To USOC, Which Did Not Employ Carlson. .......................................... 17

    D.    The Negligent Infliction of Emotional Distress Claim Fails Because Plaintiff Has No Viable Negligence Theory. ...................................... 18

    E.    Alternatively, The Negligence Claims Are Time-Barred. .................... 18

IV.    The Chapter 93A Claim Against USOC Should be Dismissed. ...................... 21

    A.    USOC Did Not Violate Chapter 93A. .............................................. 21

    B.    The Complaint Fails To Allege The Causation Element Of A Chapter 93A Claim. ...................................................................................... 24

      C.      Alternatively, The Chapter 93A Claim Is Time-Barred. ...................................... 25

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afarian v. Mass. Elec. Co.*,
   866 N.E.2d 901 (Mass. 2007) ...............................................15

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..............................................................8

*Amari v. Brown & Williamson Tobacco Corp.*,
   2000 WL 33976544 (D. Mass. Mar. 28, 2000)......................23

*Arevalo v. Ashcroft*,
   344 F.3d 1 (1st Cir. 2003)....................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................6, 15, 18

*Ayash v. Dana-Farber Cancer Institute*,
   822 N.E.2d 667 (Mass. 2005) ..............................................25

*Bagheri v. Galligan*,
   160 F. App'x 4 (1st Cir. 2005)...............................................7

*BBJ, Inc. v. MillerCoors, LLC*,
   2015 WL 247977 (D. Mass. Jan. 20, 2015) ............................6

*Behagen v. Amateur Basketball Ass'n of U.S.*,
   884 F.2d 524 (10th Cir. 1989) ...............................................3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................15

*Boy 1 v. Boy Scouts of America*,
   832 F. Supp. 2d 1282 (W.D. Wash. 2011)..............................15

*Darviris v. Petros*,
   812 N.E.2d 1188 (Mass. 2004) .............................................23

*Doe 1 v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) ................................................15

*Doe v. Corp. of President of Church of Jesus Christ of Latter Day Saints*,
   2012 WL 1080445 (Mass. App. 2012) .............................13, 16

*Doe v. Cultural Care, Inc.*,
   2011 WL 4738558 (D. Mass. Oct. 7, 2011)...............................................................17, 24, 25

*Doe v. Emerson College*,
   153 F. Supp. 3d 506 (D. Mass. 2015) ........................................................................12, 13, 16

*Doe v. Trustees of Boston College*,
   892 F.3d 67 (1st Cir. 2018) ...................................................................................................18

*Epstein v. C.R. Bard, Inc.*,
   460 F.3d 183 (1st Cir. 2006) .................................................................................................21

*Flores v. Cty. of L.A.*,
   758 F.3d 1154 (9th Cir. 2014) ..............................................................................................24

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) .....................................................................................9

*Frazier v. Fairhaven Sch. Comm.*,
   276 F.3d 52 (1st Cir. 2002) .....................................................................................................9

*Graham v. Rawley*,
   2016 WL 7477756 (D.N.J. Dec. 29, 2016)..............................................................................9

*Irwin v. Town of Ware*,
   467 N.E.2d 1292 (Mass. 1984) .......................................................................................12, 15

*Jalbert v. Grautski*,
   554 F. Supp. 2d 57 (D. Mass. 2008) .....................................................................................17

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016)..............................................................................................23, 24

*JES Props., Inc. v. USA Equestrian, Inc.*,
   458 F.3d 1224 (11th Cir. 2006) ...............................................................................................3

*Jupin v. Kask*,
   849 N.E.2d 829 (Mass. 2006) ...............................................................................................12

*Kahalas v. Schiller*,
   164 F. Supp. 3d 241 (D. Mass. 2016) ...................................................................................21

*Kavanagh v. Trustees of Boston Univ.*,
   795 N.E.2d 1170 (Mass. 2003) .......................................................................................15, 16

*King v. Keller*,
   211 F. App'x 764 (10th Cir. 2007) .........................................................................................8

*Koe v. Mercer*,
    876 N.E.2d 831 (Mass. 2007) ................................................................20

*Kozikowski v. Toll Bros., Inc.*,
    354 F.3d 16 (1st Cir. 2003) ...................................................................20

*L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*,
    121 F. Supp. 2d 147 (D. Mass. 2000) ....................................................22

*Landgraf v. USI Film Prod.*,
    511 U.S. 244 (1994) ...............................................................................10

*Leavitt v. Brockton Hosp., Inc.*,
    907 N.E.2d 213 (Mass. 2009) ..........................................................11, 17

*Lev v. Beverly Enterprises-Massachusetts, Inc.*,
    929 N.E.2d 303 (Mass. 2010) ................................................................16

*Luoni v. Berube*,
    729 N.E. 2d 1108 (Mass. 2000) .............................................................14

*McCloskey v. Mueller*,
    446 F.3d 262 (1st Cir. 2006) .................................................................13

*Medina v. Hochberg*,
    987 N.E.2d 1206 (Mass. 2013) ..............................................................12

*Mingde Hong v. Northland Ins. Co.*,
    313 F. Supp. 3d 364 (D. Mass. 2018) .....................................................25

*Nguyen v. Massachusetts Inst. of Tech.*,
    96 N.E.3d 128 (Mass. 2018) ..................................................................12

*Passatempo v. McMenimen*,
    960 N.E.2d 275 (Mass. 2012) ................................................................25

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................19

*Petrell v. Shaw*,
    902 N.E. 2d 401 (Mass. 2009) ...............................................................18

*Poznik v. Massachusetts Med. Prof'l Ins. Ass'n*,
    628 N.E.2d 1 (Mass. 1994) ....................................................................22

*Roe No. 1 v. Children's Hosp. Med. Ctr.*,
    16 N.E.3d 1044 (Mass. 2014) ..........................................................12, 14

*Ruivo v. Wells Fargo Bank, N.A*,
    766 F.3d 87 (1st Cir. 2014) ...................................................................................6

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987) .........................................................................................2, 3

*Saldivar v. Racine*,
    818 F.3d 14 (1st Cir. 2016) ...........................................................................11, 17

*San Juan Cable LLC v. Puerto Rico Tel. Co.*,
    612 F.3d 25 (1st Cir. 2010) ...................................................................................9

*Sanchez v. Pereira-Castillo*,
    590 F.3d 31 (1st Cir. 2009) ...................................................................................6

*Santos v. SANYO Mfg. Corp.*,
    2013 WL 1868268 (D. Mass. May 3, 2013) .......................................................23

*Slaven v. City of Salem*,
    438 N.E.2d 348 (Mass. 1982) .............................................................................13

*Springfield Library and Museum Ass'n, Inc. v. Knoedler Archivum, Inc.*,
    341 F. Supp. 2d 32 ..............................................................................................21

*Steinmetz v. Coyle & Caron, Inc.*,
    862 F.3d 128 (1st Cir. 2017) ...............................................................................22

*Swenson v. Yellow Transp., Inc.*,
    317 F. Supp. 2d 51 (D. Mass. 2004) .......................................................21, 22, 23

*Upshaw v. Andrade*,
    2012 WL 996783 (D. Mass. Mar. 2, 2012) ..........................................................9

*Vartelas v. Holder*,
    566 U.S. 257 (2012) ............................................................................................10

*Weaver v. Graham*,
    450 U.S. 24 (1981) ..............................................................................................10

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*,
    2015 WL 4467064 (D. Mass. July 20, 2015) .......................................................7

*Zak Law Offices, P.C. v. Reed*,
    2010 WL 2802068 (D. Mass. July 13, 2010) .......................................................23

*Zond, Inc. v. Fujitsu Semiconductor Ltd.*,
    990 F. Supp. 2d 50 (D. Mass. 2014) .....................................................................7

## Statutes

18 U.S.C. § 2255 ...................................................................................................................9

18 U.S.C. § 2258 ...........................................................................................................8, 9, 10

34 U.S.C. § 20341 .............................................................................................................9, 10

34 U.S.C. § 20341(a) ...........................................................................................................8

36 U.S.C. § 220521 ...............................................................................................................3

36 U.S.C. § 220522(a)(5) .....................................................................................................3

36 U.S.C. § 220524 ...............................................................................................................4

36 U.S.C. § 220525 ...............................................................................................................4

Ted Stevens Amateur Sports Act of 1978, Pub. L. 95-606 (1978) .................................2, 4

M.G.L. c. 93A § 2(a) ............................................................................................................22

M.G.L. c. 260 § 4C 1/2 ...........................................................................................18, 19, 25

Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act
    of 2017, Pub. L. 115-126 § 202 (2017) .........................................................................5

Pub. L. 115-126 § 101(a)(2) ................................................................................................8

Pub. L. 115-126 § 101(b) ....................................................................................................8

Pub. L. 115-126 § 102 .........................................................................................................9

## Other Legislative Materials

124 Cong. Rec. 19027–28 (1978) (statement of Sen. Ted Stevens) ...................................3

## Other Authorities

Restatement (Third) of Torts: Physical and Emotional Harm § 40 ............................... 12

Restatement (Third) of Torts: Physical and Emotional Harm § 41 ...............................12

Fed. R. Civ. P. 9(b) ......................................................................................................21, 23

Fed. R. Civ. P. 12(b)(6) .........................................................................................................6

## INTRODUCTION

This case stems from allegations of sexual abuse perpetrated by defendant Richard Carlson against Plaintiff Marcia Frederick, a former Olympic gymnast. Plaintiff alleges that Carlson, her former coach, abused her from 1978 through 1980. Carlson was then head coach at Grossfeld's American Gold Gym, an elite gymnastics training facility in Connecticut owned by defendants Muriel Grossfeld and George Ward.

As leader of the Olympic movement in the United States, the United States Olympic Committee ("USOC") has promoted broad structural and legislative reforms in the field of amateur sports to increase awareness, detecting, reporting and investigation of abuse, whether sexual, physical, or emotional. USOC applauds Plaintiff and other injured athletes for their courage and strength in coming forward in response to their abuse.

The First Amended Complaint's ("Complaint" or "FAC") effort to attribute legal liability to USOC for alleged injuries perpetrated decades ago by a third party over whom USOC had no control, however, is misplaced. Rather, the rules of law require dismissal of Plaintiff's claims against USOC—both on the merits and because they are time-barred.

First, the Complaint engages in copious use of impermissible group pleading. The allegations against USOC are largely conclusory statements about "defendants" collectively, and do not identify what USOC—as opposed to defendants Carlson, Grossfeld, Ward, and USA Gymnastics ("USAG")—allegedly did wrong. The claims against USOC fail on this basis alone.

The claims should be dismissed for other reasons as well. For example, the Complaint alleges violations of the reporting obligations in the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 ("Safe Sport Act"), but no private cause of action exists to enforce that provision. Moreover, the Safe Sport Act did not require reporting of Plaintiff's 2015 abuse complaint because it was received *before* the statute was enacted.

The Complaint's negligence claims against USOC likewise are flawed.  Absent a special relationship akin to those identified in Sections 40–41 of the Restatement (Third) of Torts: Physical and Emotional Harm—and none exists here—there can be no legal duty to protect persons against another's criminal acts.  The Complaint also fails to allege that Carlson's criminal conduct was foreseeable to USOC, as it must to establish the duty and causation elements of her negligence claims.  The negligence claims also are time barred.

The Chapter 93A claim fares no better.  Chapter 93A is intended to address unfair and deceptive trade practices and therefore requires a business or commercial relationship between the parties.  No such relationship existed between USOC and Plaintiff.  The Complaint also fails to allege the necessary causal connection between USOC's allegedly defective policies and Carlson's abuse.  And finally, the Chapter 93A claim is time-barred.

This Court should therefore dismiss all claims asserted against USOC.

## BACKGROUND

### A.     USOC's Role Under the Ted Stevens Amateur Sports Act.

USOC is a private, federally-chartered non-profit organization that serves as the coordinating body for athletic activity in the United States directly relating to the Olympic, Paralympic, and Pan-American games.  USOC operates under the Ted Stevens Amateur Sports Act of 1978 ("ASA"), which "was enacted to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States."  *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987) (internal quotations and citation omitted).  Before the ASA, there was no official process for selecting athletes to represent the United States in the Olympics.  The ASA resolved this uncertainty by empowering USOC to designate a single organization for each sport to serve as that sport's "[N]ational [G]overning

2

[B]ody" ("NGB").  36 U.S.C. § 220521.  There are 47 NGBs of amateur sports, and USAG is

one.  FAC ¶ 42.

Congress specifically declined to give USOC control over the day-to-day affairs of NGBs

like USAG.  *See* 124 Cong. Rec. 19027–28 (1978) (statement of Sen. Ted Stevens) (explaining

that sports organizations would remain "autonomous in the governance of their sport").  Instead,

sports organizations must demonstrate *complete autonomy* to become an NGB:

> An amateur sports organization is eligible to be recognized, or to
> continue to be recognized, as a national governing body only if it
> . . . demonstrates that it is autonomous in the governance of its
> sport, in that it (A) independently decides and controls all matters
> central to such governance, (B) does not delegate decision-making
> and control of matters central to governance; and (C) is free from
> outside restraint.

36 U.S.C. § 220522(a)(5).  USOC's statutory role with respect to NGBs is therefore limited to

choosing which organization to designate as the NGB for each sport, ensuring that the NGBs

meet the ASA's eligibility criteria, and providing financial assistance to the NGBs and other

amateur sports organizations.  *See id.*; *S.F. Arts & Athletics, Inc.*, 483 U.S. at 544–45.  Consistent

with its limited statutory role, USOC does not oversee the day-to-day operations of this network

of NGBs, nor could it do so.[1]

In turn, each NGB exercises "monolithic control" over its respective sports.  *JES Props.,*

*Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224, 1230–31 (11th Cir. 2006); *Behagen v. Amateur*

*Basketball Ass'n of U.S.*, 884 F.2d 524, 528–29 (10th Cir. 1989) ("[T]he monolithic control

exerted by an [NGB] over its amateur sport is a direct result of the congressional intent expressed

---

[1] Collectively, the NGBs have millions of members and tens of thousands of staff or volunteers.
USAG alone includes "more than 174,000 athletes . . . [and more than] 25,000 professional,
instructor and club members."  FAC ¶ 17.  It sanctions "[a]pproximately 4,000 competitions and
events throughout the United States" each year.  *Id.*

in the Amateur Sports Act."). This means that an NGB exercises day-to-day control over staffing and staff supervision, training and medical care of athletes, and athletic competitions (besides the Olympics themselves). *See* 36 U.S.C. §§ 220524–220525 (describing NGB responsibilities). It is therefore the NGBs, not USOC, that directly interact with athletes and coaches.

For example, USAG "selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States." FAC ¶ 17. USAG also "directly certifies and trains coaches" and "sanctions gyms where gymnasts practice and compete." *Id.* ¶¶ 18, 22. Further, USAG organizes and manages the qualifying events to select the Olympic gymnasts. *See id.* ¶ 17. At these events, "[t]he safety of the minor participants" is "entrusted to" USAG. *E.g.*, *id.* ¶ 136. As the Complaint itself recognizes, "USAG was the primary entity owning, operating and controlling the activities and behavior of its certified, trained, and sanctioned professionals, members, and agents, including . . . [] Grossfeld, [] Ward, and the Grossfeld's American Gold Gym ("GAG") . . . and the certified head coach who committed the abuse" alleged in the Complaint. *Id.* ¶ 23.

USOC created the Safe Sport program years ago to help combat sexual abuse in amateur athletics. *See id.* ¶ 117. As part of that initiative, USOC provided the NGBs with a resource guide called the SafeSport Handbook to help them develop their own policies. *See id.* More recently, USOC established and funded the Center for SafeSport which launched in 2017.[2] The

---

[2] *See* United States Olympic Committee, *Safe Sport*,
https://www.teamusa.org/Home/Team%20USA%20Athlete%20Services/Safe%20Sport (last visited Oct. 17, 2018).

Safe Sport Act formalized the Center for SafeSport's status as a means to "safeguard[] amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports" and to develop policies and procedures for preventing abuse.  Safe Sport Act, Pub. L. 115-126 § 202 (2017).

**B.   Richard Carlson's Abuse of Plaintiff.**

In 1978, Plaintiff because the first American female gymnast to win a Gold medal at the World Gymnastics Championships.  FAC ¶ 78.  Plaintiff also qualified for the 1980 U.S. Women's Olympic Gymnastics Team.  *Id.*

Also in 1978, Carlson became the head coach at Grossfeld's American Gold Gym where Plaintiff then trained.  *See id.* ¶¶ 79, 89.  Carlson allegedly proceeded to abuse Plaintiff over a two-year period, from 1978 to 1980.  *See id.* ¶ 98.  Specifically, the Complaint alleges that Carlson physically and sexually abused her at the American Gold Gym dormitories and when she and Carlson were traveling for competitions.  *See id.*

None of the abuse, however, is alleged to have occurred at a USOC-sanctioned competition.  Nor does the Complaint allege an ownership or management relationship between American Gold Gym and USOC.

The Complaint does not allege that Plaintiff ever reported her abuse directly to USOC. Instead, Plaintiff allegedly reported Carlson's abuse in 1980 to Grossfeld and Ward, who "took no actions" in response.  *Id.* ¶¶ 102–03.  In 2015, Plaintiff allegedly filed a formal complaint with USAG.  *See id.* ¶ 155.

The Complaint alleges that it was only then, in 2015, that USOC and USAG allegedly had "reason to suspect" that Plaintiff had been abused.  *Id.* ¶¶ 70–71.  USAG allegedly never transferred Plaintiff's complaint to the Center for SafeSport, and neither USAG nor USOC

reported the complaint to law enforcement when the Safe Sport Act took effect in February 2018.
*See id.* ¶¶ 42, 72–73. Nor, as discussed below, were they required to do so.

## PROCEDURAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient fact[s]
. . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (internal quotations and citation omitted). A claim has facial plausibility only when the
pleaded "factual content allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Id.* While a court must accept all factual allegations as true,
it need not do so with respect to legal conclusions. *See Ruivo v. Wells Fargo Bank, N.A*, 766
F.3d 87, 90 (1st Cir. 2014).

## ARGUMENT

### I.    The Complaint Engages in Impermissible Group Pleading.

The Complaint asserts claims against three individuals (Carlson, Grossfeld, and Ward)
and two entities (USAG and USOC). But instead of specifying which alleged acts are attributed
to which defendant, the Complaint lumps all five together and consistently alleges that the
"defendants"—collectively—caused Plaintiff's harm. For example, the Complaint asserts that
"defendants" supervised and controlled Plaintiff, FAC ¶ 98, were responsible for Plaintiff's
safety and well-being, *id.* ¶ 107, "employed" Carlson, *id.* ¶ 109, managed and controlled Carlson,
*see id.* ¶ 114, and "knew, or should have known" that Carlson was abusing Plaintiff, *id.* ¶ 112.

This impermissible group pleading fails the basic requirement to state "*as to each
defendant* . . . a claim on which relief can be granted." *Sanchez v. Pereira-Castillo*, 590 F.3d 31,
48 (1st Cir. 2009); *see also BBJ, Inc. v. MillerCoors, LLC*, No. 12-11305, 2015 WL 247977, at
*2, *5 (D. Mass. Jan. 20, 2015) (disapproving of complaints "using the term 'defendants'
without specifying which defendant is at issue"). By failing to provide "notice as to who did

what to whom, when, where and why," *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (internal quotations and citation omitted), the Complaint fails to "state clearly which defendant or defendants committed each of the alleged wrongful acts," *Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005).  The claims against USOC should be dismissed on this basis alone.  *See id.* (affirming dismissal for impermissible group pleading).

This impermissible group pleading also renders the Complaint's allegations facially implausible.  *See Zond*, 990 F. Supp. 2d at 53.  The Complaint alleges no plausible connection between USOC and the three individual defendants.  It also alleges no facts concerning the relationship between USOC and USAG, other than citing the statutory provisions that establish USAG as an independent entity. The Complaint's allegations even contradict themselves at several points.  For example, Carlson was allegedly "an employee, representative, and or/agent of Defendants," FAC ¶ 108, but elsewhere is alleged to have been hired and employed exclusively by Grossfeld, *see id*. ¶ 93.  Similarly, "[d]efendants" are alleged to have controlled Carlson, *id*. ¶ 114, at the same time that USAG alone allegedly retained the power to control coaches, *id*. ¶ 46.  Likewise, Plaintiff was allegedly a "participant, member, and ward" under "Defendants' direct supervision and control," *id*. ¶ 98, at the same time that "Defendants Grossfeld, Ward, and [] Carlson had direct and complete custody and control" of Plaintiff, *id*. ¶ 90.  In light of these inconsistencies and deficiencies, the claims against USOC should be dismissed. *See Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-12047, 2015 WL 4467064, at *10 (D. Mass. July 20, 2015) (dismissing claim where plaintiff referred to defendants collectively even though the "specific factual allegations do not support a reasonable inference that all defendants were involved in the alleged conduct").

**II.     The Safe Sport Act Claim Should Be Dismissed.**

The Safe Sport Act requires covered individuals and entities to report suspected child abuse to law enforcement within 24 hours.  34 U.S.C. § 20341(a).  In 2015, before the Safe Sport Act was enacted, Plaintiff allegedly complained to USAG about Carlson's abuse during the 1980s.  FAC ¶ 155.  Predicated on those facts, the Complaint pleads a nationwide class claim against USAG and USOC based on the contention that the Safe Sport Act "obligated" them to transmit Plaintiff's 2015 complaint to law enforcement "within 24 hours" of the Safe Sport Act's enactment—meaning "by February 15, 2018."  *Id.* ¶ 72.  This claim should be dismissed for two independent reasons: there is no private cause of action to enforce the Safe Sport Act's reporting obligation, and, assuming USOC received Plaintiff's 2015 complaint, the Safe Sport Act did not require USOC to report it to law enforcement *post hoc*.

**A.     There Is No Private Cause Of Action To Enforce The Safe Sport Act.**

Any "private right[] of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Absent an expression of Congressional intent, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id.* at 286–87.

The Safe Sport Act amended 34 U.S.C. § 20341(a) to include NGBs and amateur sports organizations among those who are required to report suspected child abuse to law enforcement authorities within 24 hours.  *See* Pub. L. 115-126 § 101(a)(2).  Failure to comply with this requirement subjects the organization to a ***criminal*** "Penalty for Failure To Report."  Pub. L. 115-126 § 101(b) (amending 18 U.S.C. § 2258).

This criminal penalty is the only available sanction for non-compliance.  Congress did not authorize a civil cause of action to enforce Section 20341's reporting requirements.  *See King v. Keller*, 211 F. App'x 764, 765 (10th Cir. 2007) (affirming dismissal of claim for violation of

Section 20341's predecessor because plaintiff "did not have standing as a private citizen to enforce federal criminal statutes"); *Graham v. Rawley*, No. 14-6743, 2016 WL 7477756, at \*4 & n.3 (D.N.J. Dec. 29, 2016) ("Plaintiff cannot bring claims pursuant" to statutes including Section 20341's predecessor "because none of the statutes create a private cause of action").

Further, Congress's "explicit provision of [other] remedies within a statute"—in this case, a criminal sanction—"cuts sharply against the implication of a private right of action." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 68 (1st Cir. 2002) (no private right of action to enforce statute enforceable by agency); *see also Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 106 (D. Mass. 2006) ("[W]hen Congress has expressly provided a method of enforcing substantive rules, it may ordinarily be inferred that Congress correspondingly intended not to provide others.").

Were there any doubt, Section 102 of the Safe Sport Act confirms the absence of a private right of action to enforce Section 20431(a). There, Congress amended 18 U.S.C. § 2255 to create a private right of action to enforce violations of 14 criminal sexual abuse and human trafficking statutes. *See* Pub. L. 115-126 § 102. Notably, Section 20341 (and the accompanying criminal penalty in Section 2258) are not among those 14 statutes. Congress's "employment of express private rights of action" to enforce some provisions but not others "reveals with conspicuous clarity that Congress knew how to provide for a private right of action when it deemed such a right appropriate." *San Juan Cable LLC v. Puerto Rico Tel. Co.*, 612 F.3d 25, 30 (1st Cir. 2010) (refusing to imply cause of action to enforce a Cable Act provision given "express private rights of action" to enforce other of the Act's provisions); *see also Upshaw v. Andrade*, No. 10-11517, 2012 WL 996783, at \*5 (D. Mass. Mar. 2, 2012) (omitting two sections from provision expressly authorizing private cause of action "exemplifies a Congressional intent

not to create a private cause of action for the class of individuals harmed by violations of" those

sections).

### B.      The Safe Sport Act Does Not Apply Retroactively.

Even if an individual could sue to enforce a violation of the Safe Sport Act's reporting

requirement, only instances of abuse learned *after* the Act took effect in February 2018 would be

actionable.  Here, the Complaint alleges that USOC learned of Plaintiff's report of abuse *before*

the Act took effect.  FAC ¶ 155.

The text of the Safe Sport Act does not purport to require "covered individuals" to report

child abuse to law enforcement within 24 hours of the bill's enactment if the covered individual

learned beforehand of an instance of abuse.  34 U.S.C. § 20341. The Act's legislative history

also contains no indication that Congress intended such a requirement.

Nor can the Safe Sport Act be read to apply retroactively.   Statutes are presumed to

apply only prospectively "unless Congress ha[s] unambiguously" made them retroactive.

*Vartelas v. Holder*, 566 U.S. 257, 266 (2012).  This anti-retroactivity presumption recognizes the

"unfairness of imposing new burdens on persons after the fact."  *Landgraf v. USI Film Prod.*,

511 U.S. 244, 270 (1994).  When a statute "is silent as to how (if at all) it applies to antecedent

conduct," then it should not be applied to "increase a party's liability for past conduct" or to

"impose new duties with respect to transactions already completed."  *Arevalo v. Ashcroft*, 344

F.3d 1, 10–11, 15 (1st Cir. 2003) (holding statute could not be applied retroactively).

The anti-retroactivity presumption applies with special force here because the Safe Sport

Act imposes criminal liability for violations of the new reporting requirement.  *See* 18 U.S.C.

§ 2258.  Retroactive application of these reporting obligations would violate the *ex post facto*

clause, which "flatly prohibits retroactive application of penal legislation."  *Landgraf*, 511 U.S.

at 266; *see also Weaver v. Graham*, 450 U.S. 24, 28 (1981) (*ex post facto* prohibition prohibits

Congress from enacting law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed").

USOC's obligation under the Act therefore arose in February 2018. Instances of potential abuse from that date forward were subject to the reporting requirement. Thus, even assuming USOC received Plaintiff's 2015 complaint to USAG, USOC was not required to report that information within 24 hours of the enactment of the Safe Sport Act. The Safe Sport Act claim therefore should be dismissed.

## III.    The Negligence Claims Against USOC Should be Dismissed.

The Complaint admits that USOC did not hire or employ Carlson. FAC ¶ 93 (alleging that Grossfeld did so). The Complaint also concedes that USOC did not have the power to appoint or control individual coaches, athletes, or clubs. *See id*. ¶ 46 (alleging that USAG does so). And according to the Complaint, USOC first received notice of Carlson's abuse of Plaintiff in 2015, decades after it occurred. *See id*. ¶ 155.

Despite these concessions, the Complaint seeks to hold USOC legally responsible for Carlson's unlawful sexual abuse under a variety of negligence theories. All such claims should be dismissed because the Complaint fails to adequately plead duty and causation.[3]

### A.    USOC Does Not Owe A Duty To Prevent Criminal Acts of Third Parties.

Whether a duty "exists is a question of law" that is "an appropriate subject of a motion to dismiss." *Leavitt v. Brockton Hosp., Inc*., 907 N.E.2d 213, 215–16 (Mass. 2009). Generally,

---

[3] Under Massachusetts law, the elements of a negligence claim are "(1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; (3) damage resulted; and (4) the defendant's breach caused that damage." *Saldivar v. Racine*, 818 F.3d 14, 20–21 (1st Cir. 2016).

"there is no duty to protect others from the criminal or wrongful activities of third persons" under Massachusetts law. *Jupin v. Kask*, 849 N.E.2d 829, 836 (Mass. 2006).

The Complaint unsuccessfully attempts to invoke the limited "special relationship" exception to this rule. FAC ¶ 172; *Medina v. Hochberg*, 987 N.E.2d 1206, 1210 n.10 (Mass. 2013). Massachusetts applies a two-part test to determine whether this exception applies. *See Doe v. Emerson College*, 153 F. Supp. 3d 506, 514–15 (D. Mass. 2015). First, courts examine whether the relationship is similar to those listed in Sections 40–41 of the Restatement (Third) of Torts: Physical and Emotional Harm ("Third Restatement"); *e.g.*, *Nguyen v. Massachusetts Inst. of Tech.*, 96 N.E.3d 128, 140 (Mass. 2018). Second, if such a relationship exists, courts then consider "whether a defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so." *Irwin v. Town of Ware*, 467 N.E.2d 1292, 1300 (Mass. 1984). Neither prong of the "special relationship" test is satisfied here.

### 1. USOC's Relationship With Plaintiff or Carlson Is Not Sufficient To Impose A Duty.

Massachusetts recognizes two types of relationships sufficient to create a special relationship: certain limited relationships between a plaintiff and a defendant, *see Nguyen*, 96 N.E.3d 128, 140 (citing Third Restatement § 40)), and a still narrower category of relationships between a defendant and a third party who has harmed the plaintiff, *see Roe No. 1 v. Children's Hosp. Med. Ctr.*, 16 N.E.3d 1044, 1048 (Mass. 2014) (citing Third Restatement § 41). Neither type of relationship exists here.

*First*, the "classic case" of a special relationship which gives rise to a duty by the defendant to protect the plaintiff "is the custodial relationship," *Nguyen*, 98 N.E.3d at 139, where "the custodian has a superior ability to protect the other." Third Restatement § 40(b)(7).

Custodial arrangements that create special relationships "include day-care centers and the children for whom they care, hospitals and their patients, nursing homes with their residents, camps and their campers, parents and their dependent minor children, and, . . . the classic jailer-inmate relationship." *Id.* cmt. n; *see also Slaven v. City of Salem*, 438 N.E.2d 348, 349 (Mass. 1982) (duty owed to protect those in their custody only where the custodian has "deprive[d] the other of his normal opportunities for protection").

No such custodial relationship is alleged to have existed between Plaintiff and USOC. Only Carlson, Grossfeld, and Ward are alleged to have had "direct and complete custody and control" over Plaintiff when the abuse occurred.  FAC ¶ 90.  Further, the Complaint does not allege that any abuse occurred on USOC's premises or at any USOC-sanctioned events.  *See McCloskey v. Mueller*, 446 F.3d 262, 268–69 (1st Cir. 2006) (no special relationship between FBI and murdered individual when individual "was a random member of the public at large," not someone in FBI custody); *Emerson College*, 153 F. Supp. 3d at 515 (college owed no duty to protect students from off-campus harm).

The only specific connection alleged to exist between Plaintiff and USOC is that Plaintiff was "a participant and dues paying member of . . . USOC." *Id.* ¶ 91.  In fact, USOC has no individual "members,"[4] charges no "dues," and therefore has no "dues paying members."  Even if it did, mere membership in an organization is insufficient to establish a special relationship.  *See, e.g.*, *Doe v. Corp. of President of Church of Jesus Christ of Latter Day Saints*, No. 11-P-610, 2012 WL 1080445, at *2–3 (Mass. App. 2012) (membership insufficient to create special relationship between church and its members).

---

[4] The NGBs are the only members of USOC.

13

None of the other types of relationships identified in Third Restatement § 40 exist here. USOC therefore had no legal duty to protect Plaintiff from the criminal conduct of third parties, including Carlson.

*Second*, the alleged relationship between USOC and Carlson likewise did not give rise to a duty to protect Plaintiff from criminal conduct. For example, an employer may be liable where "the employment facilitates the employee's causing harm to third parties." Third Restatement § 41(b)(3). Other examples of defendant-tortfeasor special relationships include those between a parent and dependent children, a custodian and those in its custody, and a mental-health professional and its patients. *See* Third Restatement § 41.

None of these relationships exist here. The Complaint does not allege facts supporting an employer-employee relationship between USOC and Carlson. In fact, the Complaint acknowledges that Grossfeld hired and employed Carlson. FAC ¶ 93. Moreover, USAG—not USOC—allegedly "retains the power to appoint and control coaches, clubs, and athletes." *Id.* ¶ 46. None of the other relationships identified in Third Restatement § 41, nor any relationship in which USOC could have exercised comparable control over Carlson, are alleged to have existed here. Thus, no special relationship required USOC to protect Plaintiff from Carlson's abuse. *See Roe No. 1*, 16 N.E.3d at 1048–1050 (no special relationship between hospital and its former pediatric physician [employee] that required hospital to inform physician's future employers and patients of abuse complaints, even though physician later sexually abused minors); *Luoni v. Berube*, 729 N.E. 2d 1108, 1111–12 (Mass. 2000) (where homeowner did not control party guest, no special relationship sufficient to hold homeowner liable for harm the guest caused to another guest).

14

Plaintiff's conclusory allegations that USOC had a special relationship with Carlson, FAC ¶ 172, or that Carlson "was an employee, representative, and/or agent of Defendants acting under their control and supervision," *id.* ¶ 108, do not affect the analysis.  These are "'naked assertions' devoid of 'further factual enhancement'" that should be disregarded by this Court. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Doe 1 v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (rejecting as conclusory plaintiffs' "general statement that Wal-Mart exercised control over their day-to-day employment"); *Boy 1 v. Boy Scouts of America*, 832 F. Supp. 2d 1282, 1289 (W.D. Wash. 2011) ("The Court is not bound to accept Plaintiffs' conclusory assertion that BSA had a special relationship with scouts and other boys, including Plaintiffs.").  The factual allegations in the Complaint do not establish that USOC owed Plaintiff a duty, meaning the negligence claims against USOC should be dismissed.

### 2. Carlson's Criminal Conduct Was Not Foreseeable to USOC.

Even if USOC had the necessary type of relationship with Plaintiff or Carlson to support a special relationship, the fact that Carlson's criminal conduct was not reasonably foreseeable to USOC renders the "special relationship" exception inapplicable here.

Under Massachusetts law, reasonable foreseeability is "the most crucial factor" in determining whether a special relationship exists sufficient to impose a duty on USOC to protect Plaintiff from Carlson's abuse.  *Irwin*, 467 N.E.2d at 1304; *see Afarian v. Mass. Elec. Co.*, 866 N.E.2d 901, 906 (Mass. 2007) (noting that a "precondition" of duty is that "the risk of harm to another be recognizable or foreseeable to the actor").  Reasonable foreseeability requires "more than awareness of the ever-present possibility" that harm may occur.  *Kavanagh v. Trustees of Boston Univ.*, 795 N.E.2d 1170, 1178 (Mass. 2003).  Instead, a defendant must have "specific information about [a perpetrator] suggesting a propensity to engage in violent conduct."  *Id.*; *see*

*also Emerson College*, 153 F. Supp. 3d at 514–15 (thirty party's criminal conduct must be "reasonably foreseeable" to establish duty to prevent third party from harming another).

No such allegations exist here.  To the contrary, the Complaint unequivocally states that USOC did not even have "reason to suspect" that Carlson abused Plaintiff until 2015, when Plaintiff reported her abuse to USAG.  FAC ¶¶ 70–71.  Nor are there any other factual allegations that USOC—a Colorado-based organization—could have reasonably foreseen that Carlson—a coach employed by an independent Connecticut gym—posed a danger to Plaintiff.

Courts applying Massachusetts law have repeatedly held that a similar lack of knowledge of a perpetrator's potential danger demonstrates that harm was unforeseeable and no duty was owed.  For example, *Emerson College* held that a college could not be held liable when it was not reasonably foreseeable that students at an off-campus party would sexually assault another student.  153 F. Supp. 3d at 514–15.  Similarly, *Doe v. Corporation of President of Church of Jesus Christ of Latter Day Saints* held that a church was not liable for a former church member's sexual abuse of minors when the church lacked knowledge of the member's "prior criminal convictions for, or a history of, sexual abuse of children."  2012 WL 1080445, at *2.  Courts have reached similar results outside of the sexual abuse context.  *See, e.g.*, *Lev v. Beverly Enterprises-Massachusetts, Inc.*, 929 N.E.2d 303, 311–12 (Mass. 2010) (no special relationship between motorist and his employer creating duty to protect accident victim where harm was not reasonably foreseeable); *Kavanagh*, 795 N.E.2d at 1178 (no special relationship between university and its basketball player creating duty to protect opponent from player's assault when player "had never done so before" and "had no history suggestive of potential violence").  The same result applies here.

**B.      Plaintiff Has Not Alleged The Causation Element Of Her Negligence Claims.**

The fact that Carlson's abuse was not reasonably foreseeable to USOC also prevents Plaintiff from adequately pleading causation.

"[U]nder Massachusetts law, a determination whether negligent conduct is the proximate cause of an injury depends on whether the injury to the plaintiff was a foreseeable result of the defendant's negligent conduct." *Saldivar v. Racine*, 818 F.3d 14, 21 (1st Cir. 2016).  In *Saldivar*, the First Circuit affirmed the dismissal of negligence claims against a city arising out of a police officer's rape of the plaintiff when there were no allegations that the city knew or should have known that "the employee might harm someone in the same general manner in which the employee is alleged to have harmed the plaintiff." *Id.* at 21–22.  Here, as in *Saldivar*, there are no allegations that Carlson's abuse of Plaintiff was foreseeable to USOC.  *See supra* at 15–16. Plaintiff's negligence claims therefore should also be dismissed on causation grounds.  *See, e.g.*, *Leavitt*, 907 N.E.2d at 219 (affirming on causation grounds dismissal of negligence claim "because [plaintiff's injury] falls outside the scope of foreseeable risk arising from any negligent conduct"); *Doe v. Cultural Care, Inc.*, No. 10-11426, 2011 WL 4738558, at *6–7 (D. Mass. Oct. 7, 2011) (rejecting on causation grounds negligence claim against placement agency arising out of au pair's sexual abuse of minor where abuse was not reasonably foreseeable).

**C.      The Negligent Supervision and Retention Claim Does Not Apply To USOC, Which Did Not Employ Carlson.**

Plaintiff also asserts a claim against USOC for negligent supervision and retention of Carlson.  This claim fails because Carlson is not alleged to have been—and in fact was not— USOC's employee or agent.  *See, e.g.*, *Saldivar*, 818 F.3d at 21 (noting that, for negligent supervision claims, "Massachusetts courts have required that the *employer* have known, or at least should have known, that the *employee* might harm someone" (emphasis added)); *Jalbert v.*

*Grautski*, 554 F. Supp. 2d 57, 76 (D. Mass. 2008) ("[A]n element of such a [negligent

supervision] claim is that during the course of *employment*, the *employer* becomes aware or

should have been aware of problems with the *employee* that indicated his unfitness, and the

*employer* fails to take further action." (emphasis added)); *Petrell v. Shaw*, 902 N.E. 2d 401, 408–

09 (Mass. 2009) (church diocese not liable under negligent supervision and retention theory

when "it was the parish vestry, and not the diocese, that 'called' Rakoczy to become its rector,

and entered into an employment contract with him").  Disregarding conclusory allegations about

the nature of USOC's relationship with Carlson, as *Iqbal* requires this Court to do, *see* 556 U.S.

at 681, no factual allegations establish an agency or employment relationship between Carlson

and USOC.

> **D.    The Negligent Infliction of Emotional Distress Claim Fails Because Plaintiff
>         Has No Viable Negligence Theory.**

Plaintiff's final negligence claim against USOC is for negligent infliction of emotional

distress, but this claim is predicated upon the existence of a viable claim of negligence.  *See* FAC

¶¶ 186–92.  Because Plaintiff's other negligence claims fail, the Court should dismiss the

negligent infliction of emotional distress claim as well.  *See Doe v. Trustees of Boston College*,

892 F.3d 67, 95 (1st Cir. 2018) (negligent infliction of emotional distress claim cannot survive

without underlying negligence).

> **E.    Alternatively, The Negligence Claims Are Time-Barred.**

Although USOC would prefer to prevail on the negligence claims on their merits, it

would be irresponsible not also to direct the Court to the fact that those claims are also barred by

the statute of limitations.  Massachusetts law provides that an "action of tort alleging  . . . that the

defendant's conduct caused or contributed to the sexual abuse of a minor" must be filed within

"7 years of the time the victim discovered or reasonably should have discovered that an

emotional or psychological injury or condition was caused by such act." M.G.L. c. 260 § 4C 1/2. The Complaint was filed on June 20, 2018, making June 20, 2011 the latest date within the limitations period.

The Complaint's allegations make clear that Plaintiff knew or should have known before June 2011 that Carlson's abuse had caused her "emotional or psychological injury or condition." *Id.* Carlson abused Plaintiff from 1978 until 1980. FAC ¶ 98. Plaintiff reported the abuse to Ward and Grossfeld in 1980. *See id.* ¶¶ 102–03. By 1984, because of the abuse, Plaintiff allegedly was too "afraid" to continue training with Carlson. *Id.* ¶ 105. The "psychological trauma" of Carlson's abuse was allegedly responsible for cutting her gymnastics career short. *Id.* ¶ 131. These allegations confirm that Plaintiff knew of her injuries long before June 2011.

Recognizing this statute-of-limitations obstacle, the Complaint asserts that in 2015, Plaintiff "saw an online photograph of Perpetrator Carlson at a gymnastics competition involving young girls," and she "finally realized . . . that she was injured by her molestation." *Id.* ¶ 140. But these allegations cannot be squared with competing assertions that Plaintiff recognized she had suffered "psychological trauma" as early as the 1980s. *Id.* ¶ 131. They also cannot be reconciled with statements Plaintiff made in a January 2018 newspaper article in which she acknowledged telling her family and Grossfeld about Carlson's abuse in 1981 and recognizing, even at that time, that Carlson's actions were "something so wrong."[5]

---

[5] Scott Reid, Marcia Frederick, *First U.S. Gymnastics world champion, shares story of abuse*, OC Register (Jan. 13, 2018), https://www.ocregister.com/2018/01/13/marcia-frederick-first-u-s-gymnastics-world-champion-shares-story-of-abuse/ (last visited Oct. 17, 2018). This Court may take judicial notice of Plaintiff's admissions in this newspaper article. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1205 (N.D. Cal. 2014) (taking judicial notice of interview with founder and CEO of defendant LinkedIn).

Whether Plaintiff suffered a new emotional or psychological injury in 2015 is legally immaterial because "one does not have to fully comprehend the full extent or nature of an injury in order for a cause of action to accrue." *Koe v. Mercer*, 876 N.E.2d 831, 837 (Mass. 2007).  In *Koe v. Mercer,* the plaintiff filed a lawsuit in 2002 alleging sexual abuse by a church pastor in the 1980s.  *See id.* at 836–40.  The court found that the plaintiff had actual notice of his injuries once his psychiatrist "suggested there was a connection between his symptoms and the abuse," even though the plaintiff "denie[d] understanding the connection" until later.  *Id.* at 837 (emphasis omitted).  The court also found that although the abuse began when the plaintiff was fourteen, the plaintiff should have drawn the connection between his abuse and his injuries in light of his acknowledgment that "he knew [the abuser]'s conduct was wrong" and "informed his parents."  *Id.* at 838.  Here too, the Complaint's allegations confirm that long before June 2011, Plaintiff knew or should have known of the connection between her "psychological trauma" and Carlson's abuse.  FAC ¶ 131.

Although the Complaint invokes equitable estoppel and fraudulent concealment theories in an effort to toll the limitations period, *see* FAC ¶¶ 138–49, these theories are unavailing.  For equitable estoppel to apply, Plaintiff must prove "that the *defendant*[] lulled the plaintiff into delay" and that Plaintiff delayed bringing suit in reliance on those actions.  *Kozikowski v. Toll Bros., Inc.*, 354 F.3d 16, 24 (1st Cir. 2003) (emphasis added) (applying Massachusetts law).  Here, the Complaint includes no allegation that USOC made statements or representations to Plaintiff, or took any other actions, that delayed her or her lawyers into in bringing otherwise timely claims.

The Complaint's fraudulent concealment allegations, *see* Compl. ¶¶ 141, 146, likewise fail to toll the limitations period.  Fraudulent concealment requires a showing that a defendant

"engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and where the plaintiff . . . failed to discover these facts within the normal limitations period despite [her] exercise of due diligence." *Springfield Library and Museum Ass'n, Inc. v. Knoedler Archivum, Inc.*, 341 F. Supp. 2d 32, 38 (D. Mass. 2004) (quotation omitted). Like all allegations of fraud, a fraudulent concealment tolling theory is subject to Rule 9(b)'s heightened pleading standards. *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189 (1st Cir. 2006). The Complaint makes no attempt to meet this standard. It lacks any particularized allegations specifying "the time, place, content or significance of the facts" that USOC allegedly fraudulently concealed from Plaintiff. *Id.* at 190 (rejecting fraudulent concealment tolling theory under similar circumstances); *see also Springfield Library*, 341 F. Supp. 2d at 39 (rejecting fraudulent concealment where plaintiff "produced insufficient facts or allegations . . . to indicate or even infer that Defendant acted fraudulently in concealing Plaintiff's causes of action"). And in light of the Complaint's assertion that USOC first learned of Carlson's abuse in 2015, *see* FAC ¶ 155, no such allegation could plausibly be made. There is no basis to toll the statute of limitations on a fraudulent concealment or any other theory.

IV.     **The Chapter 93A Claim Against USOC Should be Dismissed.**

The Complaint also accuses USOC and USAG of violating Chapter 93A by failing to implement policies that would have prevented Carlson's abuse of Plaintiff. *See id.* ¶¶ 194–97. This claim is defective on multiple grounds.

A.     **USOC Did Not Violate Chapter 93A.**

"[T]he boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." *Kahalas v. Schiller*, 164 F. Supp. 3d 241, 248 (D. Mass. 2016). For two reasons, the Complaint fails to allege a factual basis to conclude that USOC violated Chapter 93A.

*First*, Chapter 93A "is intended to protect against unfair and deceptive practices in trade, not unfair practices in general." *Swenson v. Yellow Transp., Inc.*, 317 F. Supp. 2d 51, 56 (D. Mass. 2004); *see also* M.G.L. c. 93A § 2(a) (prohibiting "unfair or deceptive acts or practices in the conduct of any *trade or commerce*" (emphasis added)).  For this reason, Chapter 93A is limited to "those acts or practices which are perpetrated in a *business context*."  *Swenson*, 317 F. Supp. 2d at 56; *see also Poznik v. Massachusetts Med. Prof'l Ins. Ass'n*, 628 N.E.2d 1, 4 (Mass. 1994) (Chapter 93A's purpose "is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace").

The Complaint here fails to allege the necessary "business, commercial, or transactional relationship" between USOC and Plaintiff.  *Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017) (affirming dismissal of Chapter 93A claim lacking any such relationship).  To be sure, the Complaint alleges that USOC benefits commercially from its oversight of Olympic competitions.  *See* FAC ¶¶ 24–31.  But there is no allegation that USOC and Plaintiff ever entered into a commercial relationship, much less that the challenged conduct occurred in the context of that commercial relationship.  Indeed, Plaintiff does not—and cannot—allege that any abuse occurred at an Olympic or other USOC-sponsored competition.  The Chapter 93A claim fails for this reason alone.  *See, e.g.*, *Swenson*, 317 F. Supp. 2d at 56–57 (dismissing Chapter 93A claim against taxi company when plaintiff was not a taxi customer); *L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*, 121 F. Supp. 2d 147, 152–53 (D. Mass. 2000) ("a plaintiff must allege some sort of transaction between the parties" for Chapter 93A to apply, to avoid "converting any tort claim against a business into a Chapter 93A claim").

*Second*, the Complaint fails to allege that USOC engaged in any "unfair or deceptive" conduct.  The Chapter 93A claim mainly accuses USOC of "*failing* to take all *reasonable* steps

to prevent harassment and abuse from occurring," "*failing* to *adequately* investigate, vet, and evaluate" individuals like Carlson, and "*refusing* to design, implement, and oversee policies regarding sexual harassment and abuse of children in a *reasonable* manner." FAC ¶ 194 (emphasis added). These are negligence theories, and they are incapable of supporting a Chapter 93A claim because Chapter 93A "requires, at the very least, more than a finding of mere negligence." *Darviris v. Petros*, 812 N.E.2d 1188, 1192 (Mass. 2004) (negligent delivery of medical care did not violate Chapter 93A); *see also Swenson*, 317 F. Supp. 2d at 55 (taxi company's policy of encouraging drivers to speed might be negligence, but did not violate Chapter 93A).

The conclusory allegation that USOC "conceal[ed] allegations against sexual abusers" to "perpetuate the program financially" does not affect the analysis. FAC ¶¶ 195–96. This concealment theory sounds in fraud and "must satisfy the heightened pleading standards applicable to such claims under" Rule 9(b). *Zak Law Offices, P.C. v. Reed*, No. 10-10333, 2010 WL 2802068, at *4 (D. Mass. July 13, 2010) (dismissing fraud-based Chapter 93A claim). Yet the Complaint makes no effort to allege the "who said (or failed to say) what, when, and where" that USOC concealed from Plaintiff, as Rule 9(b) requires. *Amari v. Brown & Williamson Tobacco Corp.*, No. 99-11361, 2000 WL 33976544, at *2, *6 (D. Mass. Mar. 28, 2000) (dismissing Chapter 93A concealment claim under Rule 9(b)); *see also Santos v. SANYO Mfg. Corp.*, No. 12-11452, 2013 WL 1868268, at *6 (D. Mass. May 3, 2013) ("claim of fraud by omission is subject to the same Rule 9(b) pleading requirements as is a claim of affirmative deception" and dismissing Chapter 93A claim).

**B.     The Complaint Fails To Allege The Causation Element Of A Chapter 93A Claim.**

The Complaint also fails to allege that "the defendant's unfair or deceptive act caused an adverse consequence or loss," a separate element of a Chapter 93A claim. *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016). This causation element requires "both a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Id.*

Neither exists here. As explained above, Carlson's abuse was not foreseeable to USOC, which is not even alleged to have had reason to suspect Carlson's abuse until at least 2015. *See supra* at 15–16; FAC ¶¶ 70–71. In addition, the Complaint fails to allege a causal connection between USOC's allegedly defective policies and Plaintiff's alleged harm. For example, Plaintiff does not (and cannot) plausibly allege that improved policies would have prevented Carlson's abuse of Plaintiff. Carlson's crimes exposed him to decades of potential incarceration. Corporate policies or trainings are unlikely to deter criminal actors who are undeterred by the threat of criminal sanctions. *See, e.g.*, *Flores v. Cty. of L.A.*, 758 F.3d 1154, 1160 (9th Cir. 2014) (collecting cases). Moreover, because Carlson was not USOC's employee or agent, he would not have been subject to any improved policies and procedures in any event.

Courts have rejected attempts to transform similar allegations of sexual abuse into Chapter 93A claims. For example, in *Jane Doe 1 v. Backpage.com*, the First Circuit held that sex trafficking victims could not bring Chapter 93A claims against a company accused of operating a website that facilitated sex trafficking and of misleading law enforcement. 817 F.3d at 16, 24–25. As here, the plaintiffs' claims in that case—that better policies would have prevented sex trafficking—rested on a "causal chain . . . shot through with conjecture: it pyramids speculative inference upon speculative inference," including as to "the odds that the

24

[plaintiffs] would not have been victimized had [the website operator] been more forthright." *Id.*
at 25.  Likewise, the court in *Doe v. Cultural Care* rejected a Chapter 93A claim accusing a
company of concealing reported problems with au pairs and inadequately screening an au pair
who later committed sexual abuse.  2011 WL 4738558, at *6–7.  The court found an insufficient
causal connection between the allegedly deficient policies and the au pair's criminal conduct
given the company's lack of notice that the au pair might commit sexual abuse.  *See id.*
*Backpage.com* and *Cultural Care* dispose of the Complaint's Chapter 93A claim.

### C.    Alternatively, The Chapter 93A Claim Is Time-Barred.

The Chapter 93A claim is also untimely.  A Chapter 93A claim is subject to the four-year
limitations period set forth in Mass. Gen. L. c. 260 § 5A, even if the underlying conduct is
subject to a different statute of limitations.[6]  *See, e.g.*, *Passatempo v. McMenimen*, 960 N.E.2d
275, 296 (Mass. 2012) (Chapter 93A claim subject to § 5A, not general tort limitations period).
As with her negligence claims, a Chapter 93A claim accrues when Plaintiff "knew or should
have known" of the harm caused by alleged conduct.  *Mingde Hong v. Northland Ins. Co.*, 313 F.
Supp. 3d 364, 365 (D. Mass. 2018).  Given that Plaintiff cannot satisfy a seven-year limitations
period, *see supra* at 18–21, it follows that she cannot satisfy Chapter 93A's four-year limitations
period.  Thus, the Chapter 93A claim is untimely and should be dismissed.

### CONCLUSION

For the foregoing reasons, this Court should dismiss USOC as a defendant.

---

[6] The special statute of limitations applicable to certain sexual abuse claims in M.G.L. c. 260
§ 4C 1/2 applies only to an "action of tort," and Chapter 93A claims are not an "action of tort."
*See Ayash v. Dana-Farber Cancer Institute*, 822 N.E.2d 667, 688 (Mass. 2005) ("tort-like"
statutory claims are not "causes of action in tort").

Date:  October 19, 2018                    Respectfully submitted,


                                           /s/ *Michael Maya*_____
                                           Michael M. Maya (BBO #672847)
                                           Andrew Soukup (admitted *pro hac vice*)
                                           COVINGTON & BURLING LLP
                                           One CityCenter
                                           850 Tenth Street, NW
                                           Washington, DC 20001
                                           Tel: 202-662-6000
                                           mmaya@cov.com
                                           asoukup@cov.com

                                           Mitchell A. Kamin (admitted *pro hac vice*)
                                           Carolyn J. Kubota (admitted *pro hac vice*)
                                           COVINGTON & BURLING LLP
                                           1999 Avenue of the Stars
                                           Suite 3500
                                           Los Angeles, CA 90067-4643
                                           Tel: 424-332-4800
                                           mkamin@cov.com
                                           ckubota@cov.com

                                           *Counsel for United States Olympic Committee*


## CERTIFICATE OF SERVICE

        I hereby certify that on October 19, 2018 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(c).

                                           /s/ *Michael Maya*_____
                                           Michael Maya