**UNITED STATES OF DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MARCIA FREDERICK, individually, and<br>on behalf of all others similarly situated, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 1:18-cv-11299-IT |
| UNITED STATES OLYMPIC COMMITTEE, USA<br>GYMNASTICS (formerly known as the United States<br>Gymnastics Federation), RICHARD CARLSON,<br>MURIEL GROSSFELD, GEORGE WARD, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) <br> ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT RICHARD CARLSON'S MOTION TO
DISMISS THE PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTS RELEVANT TO JURISDICTION AND CHOICE OF LAW ........................................ 2

ARGUMENT ............................................................................................................................ 3

    I.   THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CARLSON ....... 3

      A.  LEGAL STANDARD ................................................................................................ 3

      B.  THE MASSACHUSETTS LONG ARM STATUTE AUTHORIZES JURISDICTION
OVER CARLSON ................................................................................................................ 5

        C.  EXERCISE OF JURISDICTION OVER CARLSON COMPORTS WITH THE
REQUIREMENTS OF DUE PROCESS ............................................................................. 8

        1.  RELATEDNESS ................................................................................................. 9

        2.  PURPOSEFUL AVAILMENT ......................................................................... 10

        3.  REASONABLENESS ........................................................................................ 11

        D.  PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO WARRANT
JURISDICTIONAL DISCOVERY .................................................................................. 12

    II.  MASSACHUSETTS' STATUTE OF LIMITATIONS APPLIES ................................. 12

CONCLUSION ...................................................................................................................... 17

## INTRODUCTION

Plaintiff Marcia Frederick ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Richard Carlson's ("Carlson") Motion to Dismiss.

As set forth in the First Amended Class Action Complaint and Jury Demand (the "Complaint" or "FAC") (Dkt. 22), young, aspiring Olympians, including Plaintiff, entrusted Defendants[1] to create a positive and safe environment where they could train and compete free from the hazards of sexual misconduct and abuse. Instead, Plaintiff and many others were subject to years of sexual assault, molestation, and harassment at the hands of USOC and USAG certified trainers, including Defendant Carlson.

For purposes of his motion, Defendant Carlson accepts Plaintiff's allegations of sexual abuse as true. However, Defendant Carlson contends that Plaintiff's claims against him should be dismissed for lack of personal jurisdiction and untimeliness. Neither argument has merit. As for personal jurisdiction, Defendant Carlson engaged in an ongoing, persistent course of conduct directed at Plaintiff, a minor and Massachusetts resident, which reasonably could be expected to, and did in fact, cause her to suffer injury in this Commonwealth. Thus, the exercise of personal jurisdiction over Defendant Carlson is consistent with the Massachusetts Long Arm Statute, G. L. c. 223A, and comports with the requirements of the Due Process clause of the Fourteenth Amendment of the U.S. Constitution.

Plaintiff's claims are also timely under Mass. G. L. c. 260, § 4C, which applies based on Massachusetts' choice-of-law principles. Here, Massachusetts undoubtedly has the most substantial state interest in applying its statute of limitations, which is intended to, *inter alia*,

---

[1] "Defendants" collectively refers to USA Gymnastics ("USAG"), United States Olympic Committee ("USOC"), and Richard Carlson. Named defendants Muriel Grossfeld ("Grossfeld") and George Ward ("Ward") have been voluntarily dismissed from this action pursuant to a Notice of Voluntary Dismissal.

1

"enabl[e] [childhood victims of sexual abuse] to seek a remedy for severe injuries that they did not appreciate for long periods of time due to the abuse."  *See Sliney v. Previte*, 473 Mass. 283, 292 (2015). Given that the alleged misconduct occurred in multiple locations and Plaintiff is a Massachusetts resident who suffered injury in this Commonwealth, no other state has a greater interest in having its statute of limitations apply.

Therefore, for the reasons stated herein and in Plaintiff's Omnibus Opposition to USAG and USOC's Motions to Dismiss, Defendant Carlson's motion to dismiss should be denied.

**FACTS RELEVANT TO JURISDICTION AND CHOICE OF LAW[2]**

Plaintiff alleges that from at least 1978 through 1982, while she was an active member of USAG and USOC, Defendant Carlson perpetrated multiple acts of sexual assault, battery, molestation, and harassment against her.  FAC, ¶¶ 86-87.  During this time period, Defendant Carlson was a USAG certified head coach and an agent, employee, and/or representative of USAG, USOC, Grossfeld and Ward, who was entrusted with coordinating training and providing for Plaintiff's individual care and well-being.  *Id*., at ¶¶ 81, 85, 97-98. Plaintiff was a minor and resident of Massachusetts, although she remained in a dormitory in Milford, Connecticut while training at Grossfeld's American Gold Gym ("GAG").  *Id.,* at ¶ 75.

Plaintiff further alleges that the repeated physical and emotional abuse that she endured occurred on GAG properties in Connecticut, at the Gymnastics Olympic Training Camp in Colorado, and while traveling for competitions and at gymnastics meets located throughout the United States.  *Id.* at ¶¶ 86-87, 90-91.  This physical and psychological trauma led to Plaintiff's premature retirement from competitive gymnastics before her Olympic dreams could be fulfilled, and caused her to suppress memories and emotions arising from years of abuse.  *Id.,* at ¶ 120.

---

[2] A detailed recitation of facts, applicable to all Defendants, is set forth in the Omnibus Opposition, incorporated herein by reference.

In or about 2015, Plaintiff saw an online photograph of Defendant Carlson at a gymnastic competition involving young girls. *Id.,* at ¶ 129. At that time, the memories she suppressed for many years came flooding back, and Plaintiff finally realized over the next months that she suffered and continued to suffer physical and emotional distress in connection with the incidents of sexual molestation and abuse. *Id.* Plaintiff subsequently filed a claim with the USAG related to Defendant Carlson's sexual abuse. *Id.,* at ¶¶ 59, 129.

Upon information and belief, Defendant Carlson attended gymnastics meets and other events in Massachusetts while acting as an agent, employee, and/or representative of USAG, USOC, Grossfeld, and Ward. Defendant Carlson also benefited from the payment of membership dues and training fees by Massachusetts residents, including Plaintiff. Defendant Carlson currently resides in New York.

## ARGUMENT

## I.   THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER CARLSON

### A.   Legal Standard

This Court may exercise personal jurisdiction over a non-resident defendant when (1) jurisdiction is authorized by the Massachusetts[3] long-arm statute, G. L. c. 223A, § 3; and (2) the exercise of jurisdiction under state law is consistent with the due process requirements mandated by the U.S. Constitution. *See*, *e.g.*, *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002), *citing Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 144 (1st Cir. 1995).

---

[3] Defendant Carlson does not contest that a federal court applies the law of the forum state – here, Massachusetts – to ascertain whether the defendant is subject to personal jurisdiction with respect to state law claims. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) ("In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.") (internal citations and quotations omitted).

3

Once a defendant challenges personal jurisdiction by motion pursuant to Rule 12(b)(2), the plaintiff's burden is to make a *prima facie* showing of facts that, if credited, support the exercise of personal jurisdiction.  *See Ealing Corp. v. Harrods, Ltd*., 790 F.2d 978, 979 (1st Cir. 1986) ("If the plaintiff makes a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met.").  Under the *prima facie* test, "a district court does not act as a factfinder; to the contrary, it ascertains only whether the facts duly proffered, fully credited, support the exercise of personal jurisdiction." *Alers-Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 84 (1st Cir. 1997).  The Court must take these facts "as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." *Daynard*, 290 F.3d at 51, *quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998); *see also Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008) (accord).

Because personal jurisdiction is a fact-intensive inquiry, the Court must separately analyze whether a defendant is subject to jurisdiction with respect to each individual claim. *See  Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999) ("Questions of specific jurisdiction are always tied to the particular claims asserted.") (citations omitted).  Thus, as to those claims where the Court finds personal jurisdiction exists, dismissal is improper.

Here, Plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction as to her claims against Defendant Carlson.  By abusing Plaintiff, a minor and Massachusetts resident at all times, in multiple locations over the course of several years, Defendant Carlson directed his wrongful conduct into Massachusetts, causing Plaintiff to suffer injury in this Commonwealth.  As a certified trainer for USOC and USAG and custodian of a Massachusetts resident, Defendant Carlson also had sufficient forum-based contacts and derived a substantial benefit from his contact with this Commonwealth.  Consequently, it was reasonably foreseeable

that Defendant Carlson would be subjected to litigation in Massachusetts in connection with his wrongful conduct, and his motion to dismiss therefore should be denied.

**B.      The Massachusetts Long Arm Statute Authorizes Jurisdiction Over Carlson**

The Massachusetts Long Arm Statute, G. L. c. 223A, § 3, permits the exercise of *in personam* jurisdiction over a non-resident in certain enumerated circumstances, including where, as relevant here, the non-resident "caus[es] tortious injury by an act or omission in this commonwealth" or "caus[es] tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." *See* G. L. c. 223A, § 3(c), (d).

Narrowly construing the Complaint's allegations and ignoring the specific claims asserted against him, Defendant Carlson incorrectly asserts that no tortious conduct occurred in Massachusetts. Carlson Br. at 9. Plaintiff asserts a separate cause of action for negligent infliction of emotional distress, identifying specific, ongoing, tortious conduct perpetrated by Defendant Carlson, which caused her to experience physical harm and emotional distress while residing in this Commonwealth. In particular, Defendant Carlson's "grooming" of Plaintiff and continuous molestation and harassment constitute tortious conduct directed at Plaintiff in Massachusetts and causing separate emotional injury in Massachusetts, which is not limited to, or defined by, the situs of the actual physical acts of sexual assault. Under G. L. c. 223A, § 3(c), such tortious acts committed outside the borders of Massachusetts constitute "in-forum acts" where the conduct is purposefully directed at the Commonwealth and intended to cause injury here. *See Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) (holding that where a non-resident defendant makes fraudulent misrepresentations directed at Massachusetts residents and causing them injury there, "he has, for jurisdictional purposes, acted within that state" as required under G. L. c. 223A,

§3(c)); *see also Ticketmaster-New York v. Alioto*, 26 F.3d 201, 205 (1st Cir. 1994) (discussing *in dicta* that the court's interpretation of G. L. c. 223A, §3 (c) in *Murphy* would also apply in the defamation context, where out-of-state defamatory statements were directed at Massachusetts residents and caused injury within the Commonwealth).[4]

Moreover, courts have recognized that a claim for emotional distress is a separate tort for purposes of jurisdictional analysis.  For example, in *Adamchek v. Costco Wholesale Corp.*, Civil Action No. 08-10182-PBS, 2008 U.S. Dist. LEXIS 112440, at *2 (D. Mass. May 29, 2008), plaintiffs, Massachusetts residents, sued non-resident defendants for breach of contract and tortious conduct arising from defendants' failure to sell a home that plaintiffs owned in Florida. The court noted that defendants did not transact any business in Massachusetts, and all of the services performed and alleged breaches occurred in Florida.  *Id.,* at *4.  Nevertheless, the court found that defendants were subject to the court's jurisdiction in connection with claims for negligent infliction of emotional distress, intentional infliction of emotional distress, and loss of consortium, because those claims "concern[ed] wrongful conduct alleged to have been directed into Massachusetts and intended to cause injury here."  *Id.* at *20; *see*, *e.g.*, *Calder v. Jones*, 465 U.S. 783, 788-9 (1984) (holding that the exercise of jurisdiction over non-resident defendants was constitutionally permissible where defendants acted outside the state, but "the brunt of the harm, in terms both of respondent's emotional distress and injury to her professional reputation, was suffered in California."); *Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir. 1989) ("The knowledge that the major impact of the injury would be felt in the forum state constitutes a purposeful contact or

---

[4] *Cf. Kopf v. Chloride Power Elecs.*, 882 F. Supp. 1183 (N.H. Dist. Ct. 1995) (finding that, under New Hampshire's comparable provision of Massachusetts' Long Arm Statute, the court could exercise personal jurisdiction over non-resident employee of defendant who acted in North Carolina but "knew or should have known that his conduct would injure plaintiff in New Hampshire and that such contact with the forum was more than fortuitous.") (internal quotations omitted).

6

substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend his actions.").

Defendant Carlson's reliance on *Crocker v. Hilton Intern. Barbados, Ltd.*, 976 F.2d 797 (1st Cir. 1992), is misplaced.  In *Crocker*, the only alleged tortious conduct at issue was a single physical attack perpetrated by a third party at the defendant's hotel property in Barbados.  *See Crocker*, 976 F.2d at 798.  There was no separate claim for negligent or intentional infliction of emotional distress against the defendant, and no separate tortious conduct was alleged to support such a claim.  In those circumstances, the plaintiff's emotional distress was categorized as "pain and suffering" arising from the Barbados assault, which was not sufficient to establish jurisdiction for out-of-state acts causing in-state tortious injury under G. L. c. 223A, § 3(d).  In contrast, Plaintiff has alleged an ongoing course of conduct, encompassing physical and mental acts purposefully directed at her while a minor and resident of this Commonwealth.  Her emotional distress is a separate, legally-sustainable claim, and not just an "effect" of a discrete tortious act occurring out-of-state.  Consequently, unlike the defendant in *Crocker*, Carlson's acts constitute tortious injury within the Commonwealth for purposes of Massachusetts' Long Arm Statute.

*Walsh v. National Seating Co.*, 411 F. Supp. 564 (D. Mass. 1976), is similarly inapposite. *Walsh* concerned claims for negligence arising from an accident allegedly caused by the improper design and construction of the driver's seat on a bus.  *See Walsh*, 411 F. Supp. at 567.  As in *Crocker*, the *Walsh* plaintiff's alleged emotional distress was merely a category of damages for injuries sustained in the bus accident.  *Id.* at 571.  There was no ongoing conduct, no separate claim for emotional distress, and no tortious conduct directed at plaintiff that could reasonably have caused such an injury.  *Id.*  Thus, because Plaintiff has alleged specific acts that were intended to

and did cause injury in this Commonwealth, G. L. c. 223A, § 3(c) supports the exercise of personal jurisdiction.

To the extent that Defendant Carlson's tortious conduct is determined to have occurred outside of Massachusetts, the exercise of personal jurisdiction is also proper under G. L. c. 223A, § 3(d). As previously explained, Plaintiff's emotional distress is a separate injury related to mental trauma and harassment inflicted by Defendant Carlson while she was a Massachusetts resident. *See*, *e.g.*, *Murphy*, 460 F.2d at 664; *Adamcheck*, 2008 U.S. Dist. LEXIS 112440 at *20. Moreover, Plaintiff has made the required *prima facie* showing that Defendant Carlson, as a USOC and USAG certified trainer, was charged with providing care and supervision to a minor Massachusetts resident, attended meets and competitions in Massachusetts and otherwise benefited from his relationship with USOC and USAG and Defendants' forum-based contacts.[5] Thus, Plaintiff has satisfied the requirements of the first prong of the Court's jurisdictional analysis.

## C.   Exercise of Jurisdiction Over Carlson Comports With The Requirements Of Due Process

The second part of the jurisdictional inquiry requires the Court to determine the exercise of jurisdiction under state law is consistent with the due process requirements mandated by the U.S. Constitution. *See Daynard*, 290 F.3d at 52. Specifically, the Court must find that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The First Circuit employs a three-part test to make this determination: (1) the claims must directly relate to the defendant's in-state activities; (2) the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state; and

---

[5] As set forth herein, in the event the Court finds such jurisdictional facts lacking, Plaintiff seeks jurisdictional discovery and leave to amend to plead additional facts supporting the exercise of personal jurisdiction over Defendant Carlson.

(3) the exercise of jurisdiction must be reasonable. *See United Elec., Radio & Mach. Workers v.*

*163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992); *see also Abiomed, Inc. v. Turnbull*,

379 F. Supp. 2d 90, 94 (D. Mass. 2005). Plaintiff meets these prerequisites.

### 1.      Relatedness

To satisfy the "relatedness" prong, "the claim underlying the litigation must directly arise

out of, or relate to, the defendant's forum-state activities." *Abiomed*, 379 F. Supp. 2d at

94. The disjunctive phrasing of this requirement – "arising out of, *or* related to" – "portends

added flexibility and signals a relaxation of the applicable standard." *See Ticketmaster-*

*New York*, 26 F.3d at 206 (emphasis in original). In cases involving tort claims, the

"relatedness" inquiry focuses on whether the defendant's in-forum conduct caused the

injury. *See Edozien v. XS Micro, LLC*, Docket No. MICV2013-05066-F, 2014 Mass.

Super. LEXIS 30 at *5-6 (2014), *quoting United States v. Swiss Am. Bank, Ltd.,* 274 F.3d

610, 632-33 (1st Cir. 2001).

Defendant Carlson's assertion that Plaintiff's claims and resulting injuries are not related

to conduct in this Commonwealth is based on the erroneous assumption that his misconduct

outside of Massachusetts does not constitute an "in-forum act." *See Murphy*, 460 F.2d at 664;

Carlson Br. at 10.   However, as set forth herein, Defendant Carlson's "grooming" efforts,

molestation, and harassment, among other things, aimed at Plaintiff, a Massachusetts resident,

causing her emotional and other harm in Massachusetts, is enough to establish "in-forum"

activities within the meaning of G. L. c. 223A, § 3(c), even if Defendant Carlson never set foot in

the Commonwealth. *See*, *e.g.*, *Murphy*, 460 F.2d at 664 (fraudulent misrepresentation directed at

Massachusetts resident treated as "in-state" activity); *Adamcheck*, 2008 U.S. Dist. LEXIS 112440

at *20 (holding that negligent infliction of emotional distress occurred in Massachusetts, although

assurances regarding sale of property came from real estate agents in Florida); *Digital Equipment*

*Corp. v. AltaVista Technology, Inc.*, 960 F.Supp. 456, 466-67 (D. Mass. 1997) (posting of defamatory material on the internet constitutes an in-forum act).  Moreover, there is no doubt that Plaintiff's claim for emotional distress, as well as her psychological injuries that persist to this day, directly result from Defendant Carlson's repeated and persistent mental and physical abuse of Plaintiff.  *See Edozien*, 2014 Mass. Super. LEXIS 30 at *6.  As a result, the relatedness prong is satisfied.

### 2.      Purposeful Availment

To establish purposeful availment, Plaintiff must show: "(1) that [she] felt the injurious effects of a defendant's tortious act in the forum, and (2) that the defendant's act was calculated to cause injury to the [P]laintiff there."  *See Farquharson v. Metz*, Civil Action No. 13-10200-GAO, 2013 U.S. Dist. LEXIS 106374, *4-5 (D. Mass. Jul. 30, 2013), *quoting Swiss Am. Bank, Ltd.,* 274 F.3d at 632-33.  The test focuses on "the voluntariness of the contact and the foreseeability of the present action."  *See Edozien*, 2014 Mass. Super. LEXIS 30 at *7, *citing Calder*, 465 U.S. at 789-90.  Here, Plaintiff more than adequately pleads that she felt the injurious effects of Defendant Carlson's tortious acts in this Commonwealth.  FAC ¶¶ ¶¶ 86-87, 90-91, and Count IV. Additionally, given the nature of Defendant Carlson's conduct, *i.e.*, his intentional harassment and mental manipulation of a minor over a period of several years, it can be inferred that Defendant Carlson intended harm to be felt in Massachusetts and/or that he likely knew, or should have known, that such conduct would have a devasting impact on Plaintiff in Massachusetts.  *See*, *e.g.*, *Abiomed*, 379 F. Supp. 2d at 95 (finding that intent to cause harm in the state could be inferred from unflattering internet postings directed at plaintiff in Massachusetts that would be seen by others in Massachusetts); *Edozien*, 2014 Mass. Super. LEXIS 30 at *7; *Adamcheck*, 2008 U.S. Dist. LEXIS 112440 at *21.  Consequently, just as in *Abiomed*, "the hailing of [Defendant Carlson] into a Massachusetts court to answer for his actions was foreseeable, if not inevitable."  *Abiomed*,

379 F. Supp. 2d at 95.  Thus, Defendant Carlson has purposely availed himself of the privilege of

conducting activities in Massachusetts and should be subject to jurisdiction here.

### 3.      Reasonableness

Plaintiff has also made a *prima facie* showing that the exercise of jurisdiction over

Defendant Carlson is reasonable.  *See Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995).  In

assessing reasonableness, courts must weigh the following "gestalt factors":

> (1) the defendant's burden of appearing; (2) the forum state's
> interest in adjudicating the dispute; (3) the plaintiff's interest in
> obtaining convenient and effective relief; (4) the judicial system's
> interest in obtaining the most effective resolution of the controversy;
> and (5) the common interests of all sovereigns in promoting
> substantive social policies.

*Id.*

Here, Defendant Carlson lives in New York, so there is no "special" or "unusual" burden

if he is made to appear in Massachusetts.  *See Edozien*, 2014 Mass. Super. LEXIS 30 at *8, *citing*

*Sawtelle*, 70 F.3d at 1395.  Furthermore, Massachusetts has a substantial interest in adjudicating

claims and ensuring compensation for victims of sexual abuse.  *See Doe v. Word of Life*

*Fellowship, Inc.*, Case No. 11-40077-TSH, 2012 U.S. Dist. LEXIS 84528, *6 (D. Mass. Jun. 19,

2012); *see also Sliney*, 473 Mass at 295, *citing* Remarks of Senator William N. Brownsberger,

2014 Senate J. 16.  Likewise, Plaintiff's interest in obtaining complete relief in this forum for the

sexual and emotional abuse she endured aligns with the interests of the judicial system and the

common interests of all sovereigns in promoting an important social policy.  On balance, the

interests of justice in providing a forum for Plaintiff to seek a remedy against all Defendants

outweigh the slight burden imposed on Defendant Carlson in these circumstances.  Thus, the

exercise of jurisdiction is eminently reasonable.

Having met the requirements of both the Massachusetts Long Arm Statute and the Due Process clause of the Fourteenth Amendment, Plaintiff has made a *prima facie* showing of *in personam* jurisdiction over Defendant Carlson.  Defendant Carlson's Rule 12(b)(2) motion should be dismissed so that this matter may proceed against all Defendants in this forum.

### D.       Plaintiff Has Alleged Sufficient Facts To Warrant Jurisdictional Discovery

The Court has discretion to permit jurisdictional discovery where "a plaintiff puts forth a colorable claim of personal jurisdiction and 'present[s] facts to the court which show why jurisdiction would be found if discovery is permitted." *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 361 (Mass. 2008), *quoting Swiss Am. Bank, Ltd.*, 274 F.3d at 626.

In the event that the Court finds any of Plaintiff's jurisdictional allegations lacking, Plaintiff respectfully requests limited jurisdictional discovery to ascertain Defendant Carlson's relationship with Massachusetts.  In particular, Plaintiff has alleged that as a USOC and USAG certified trainer, Defendant Carlson had contact with this jurisdiction by, among other things, attending meets and/or competitions in this Commonwealth and otherwise benefiting personally from training minors who resided in this Commonwealth.  Defendants and other witnesses would be able to substantiate these allegations.  As Plaintiff also has alleged that Defendant Carlson's acts constitute tortious conduct in this Commonwealth, Plaintiff seeks discovery related to Defendant Carlson's knowledge as to the likelihood that his conduct would cause Plaintiff to suffer emotional distress in Massachusetts.  Plaintiff is confident that such discovery would reveal additional facts relevant to this Court's jurisdictional analysis.

## II.    MASSACHUSETTS' STATUTE OF LIMITATIONS APPLIES

Defendant Carlson's attempt to evade liability by applying Connecticut's shorter statute of limitations misconstrues the Complaint's allegations and utterly ignores Massachusetts' substantial interest in allowing citizens victimized by sexual abuse to seek justice in its courts.

Carlson Br. at 12-14.  Because no state has a more significant relationship to the parties and the

repeated and ongoing occurrences of mental and physical abuse alleged herein, Massachusetts'

statute of limitations applies to Plaintiff's claims.

Federal courts sitting in diversity generally apply the law governing the application of the

statute of limitations of the forum state. *See Stanley v. CF-VH Assocs*., 956 F.Supp. 55, 57 (D.

Mass. 1997). Thus, Massachusetts choice of law rules determine whether Connecticut or

Massachusetts' statute of limitations should be applied.  Massachusetts employs a "functional"

approach guided by the Restatement (Second) of Conflict of Laws (1988), which balances several

considerations to ascertain which state has the "most significant relationship to the occurrence and

the parties." *See* Restatement (Second) of Conflict of Laws § 145; *see also Sexual Minorities*

*Uganda v. Lively*, 960 F.Supp. 2d 304, 331 (D. Mass. 2013).  With respect to conflicts involving

statutes of limitations, Massachusetts follows Restatement (Second) of Conflict of Laws § 142,

which provides that "under choice of law principles set forth in § 6,[6] the forum State generally will

apply its own statute of limitations to permit a claim unless: (a) maintenance of the claim would

serve no substantial interest of the forum; and (b) the claim would be barred under the statute of

limitations of a state having a more significant relationship to the parties and the  occurrence." *See*

*Word of Life Fellowship*, 2012 U.S. Dist. LEXIS 84528 at *6.

---

[6] Restatement (Second) of Conflict of Laws § 6 provides:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

As previously discussed, Plaintiff alleges that as a minor and resident of Massachusetts, she endured an ongoing, continuous course of physical and mental sexual abuse occurring over several years in multiple locations at the hands of Defendant Carlson. *See*, *e.g.*, FAC, ¶ 87 ("Perpetrator Carlson's physical and sexual abuse of Plaintiff commenced after the grooming of Ms. Frederick began, and occurred numerous times while Ms. Frederick was on the GAG Gym properties, while traveling for competitions and before and after competitive gymnastics meets from in or around 1978 through 1980."); FAC, ¶ 91 (alleging that Plaintiff traveled from Colorado to Connecticut to report where all the instances of abuse had occurred). Plaintiff further alleges that she filed her complaint with USAG in 2015 while residing in Massachusetts. FAC, ¶ 59. Additionally, as set forth herein, Plaintiff maintains that Defendant Carlson's sexual misconduct, directed at a minor resident of Massachusetts and intended to cause injury in this Commonwealth, constitutes an in-state act that resulted in emotional distress and other injuries in this Commonwealth.

Contrary to Defendant Carlson's assertion, even if some of the alleged misconduct occurred in Connecticut, Massachusetts' "functional approach" does not mandate that a foreign jurisdiction's statute of limitations should be applied. *See Sexual Minorities Uganda*, 960 F. Supp. 2d at 331 ("[E]ven when the injury (and, indeed, even the conduct that caused the injury) occurs in a foreign location, Massachusetts choice-of-laws doctrine does not automatically apply foreign law."), *citing Robdoux v. Muholland*, 642 F.3d 20, 28 (1st Cir. 2011) (finding that in a workers' compensation case arising from injury occurring in Rhode Island, Massachusetts had the greater interest in ensuring that the Massachusetts resident was compensated for workplace injury); *Lou v. Otis Elevator Co.*, 77 Mass. App. Ct. 571 (2010) (applying Massachusetts law to determine pre-

judgment interest where plaintiffs resided in Massachusetts, injury occurred in China, and Chinese law did not otherwise allow for such an award).

Furthermore, where, as in the instant case, Plaintiff sufficiently alleges that tortious conduct occurred in multiple jurisdictions, Massachusetts choice-of-law rules support application of the law where the plaintiff is domiciled. *See*, *e.g.*, *Ayyadurai v. Floor64, Inc.*, 270 F.Supp. 3d 343, 353 (D. Mass. 2017) (holding that in a case involving multistate defamation, court would apply the law of Massachusetts, where plaintiff was domiciled, pursuant to the Restatement (Second) of Conflict of Laws § 150); Restatement (Second) of Conflict of Laws § 153 (local law of plaintiff's domiciliary should be applied where right to privacy was violated by publication of communication in multiple states).

The application of Massachusetts' statute of limitations is especially warranted here given the substantial state interest at stake. In June 2014, the Massachusetts legislature amended G. L. c. 260, § 4C to extend the limitations period for sexual abuse of a minor from three years to thirty-five years. *See* 2014 Mass. Ch. 145. Recognizing the importance of this public policy, the amending act contained a retroactivity provision and an emergency preamble, which stated: "[w]hereas, the deferred operation of this act would tend to defeat its purpose, which is to increase forthwith the statute of limitations in civil child sexual abuse cases, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of public safety." *Id.* Based on the clear statutory language and legislative history, numerous courts have acknowledged that Massachusetts possesses a compelling interest in "enabling [childhood victims of sexual abuse] to seek a remedy for sever injuries that they did not appreciate for long periods of time due to the abuse." *See Sliney*, 473 Mass. at 292; *see also Word of Life Fellowship, Inc.*, 2012 U.S. Dist. LEXIS 84528 at *7 ("Massachusetts has a substantial interest in having victims of sexual abuse

15

compensated for their injuries."). Defendant Carlson has failed to articulate why Connecticut's interest in applying its statute of limitations outweighs the interests of Massachusetts. Indeed, given that Connecticut similarly amended its law in 2002, the interests of both forums in protecting children from sexual abuse are actually aligned. *Compare* 2002 Ct. P.A. 138, Section 2 (amending Conn. Gen. Stat. §52-577(d) to extend the statute of limitations for sexual abuse of a minor) and Section 3 (eliminating the statute of limitations for personal injury caused by sexual assault where the defendant is convicted criminally) *with* 2014 Mass. Ch. 145 (amending G. L. c. 260, § 4C).

The hotel-personal-injury cases relied upon by Defendant Carlson are distinguishable and do not dictate the result in the instant case. In *Nierman v. Hyatt Corp*., 441 Mass. 693, 695-96 (2004), plaintiff fell off a transport cart while staying at a hotel in Texas. She alleged only a negligence claim and no injury in Massachusetts. Thus, the court found that Massachusetts did not have any substantial interest that would be advanced relative to the interest of Texas in having its statute of limitations apply. *Id.* at 697-8. Similarly, in *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 238 F.Supp. 3d 229, 235 (D. Mass. 2017), the court held that Massachusetts did not have a substantial interest in applying its statute of limitations to a personal injury claim concerning a single incident that took place at a hotel in Pennsylvania. These cases stand in stark contrast to the factual circumstances presented here, where Plaintiff has alleged repeated and ongoing abuse in multiple locations spanning several years while a minor, including injury that occurred in Massachusetts. Furthermore, Massachusetts' substantial interest in protecting minors from sexual abuse is undeniable.

Therefore, based upon the choice of law principles set forth in Section 6 of the Restatement, including the relevant policy of Massachusetts, the needs of interstate systems, and the justified expectations of Plaintiff in seeking a remedy for her injuries, Massachusetts has the most

substantial interest, as well as the most significant relationship with the parties and the litigation,

as compared with any other state.[7]

## CONCLUSION

For the reasons set forth herein, and in the Omnibus Opposition, incorporated by reference,

Plaintiff respectfully requests that Defendant Carlson's Motion to Dismiss be denied.

Date: November 16, 2018

**Respectfully submitted,**

**Plaintiff, Marcia Frederick,**
**by her attorneys,**

/s/ Kimberly A. Dougherty_____
Kimberly A. Dougherty (BBO No. 658014)
Vance Andrus (to be admitted *pro hac vice*)
Aimee Wagstaff (to be admitted *pro hac vice*)
ANDRUS WAGSTAFF, PC
19 Belmont Street
South Easton, MA 02375
(508) 230-2700
kim.dougherty@andruswagstaff.com

AND

Lori E. Andrus (to be admitted *pro hac vice*)
Jennie Lee Anderson (to be admitted *pro hac vice*)
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA 94104
(415) 986-1400
lori@andrusanderson.com
jennie@andrusanderson.com

---

[7] Defendant Carlson's remaining arguments, including the timeliness of Plaintiff's claims, are addressed in the Omnibus Opposition, incorporated by reference.

17

**CERTIFICATE OF SERVICE**

I, Kimberly A. Dougherty, hereby certify that a true and correct copy of the above and foregoing has been served on all known counsel of record via ECF, for those counsel registered to receive filings via ECF, on November 16, 2018.

*/s/ Kimberly A. Dougherty*
Kimberly A. Dougherty
