**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARCIA FREDERICK, individually, and on behalf of all others similarly situated,  )  )  ) | |
| Plaintiffs,  )  ) | |
| v.  )  ) | C.A. No. 1:18-cv-11299-IT |
| UNITED STATES OLYMPIC COMMITTEE,  ) USA GYMNASTICS (formerly known as the  ) United States Gymnastics Federation), RICHARD  ) CARLSON,  )  Defendants.  )  ) | |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY IN SUPPORT OF HER OPPOSITION TO DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S MOTION TO DISMISS**

In accordance with Fed.R.Civ. Pro. Rule 15(d), Plaintiff Marcia Frederick seeks leave to file Supplemental Authority in support of her Opposition to United States Olympic Committee's ("USOC")[1] Motion to Dismiss. Since the time of Plaintiff's filing of her opposition to USOC's Motion to Dismiss, a critically important, first of its kind Report of the Independent Investigation of USOC ("Report") was released.[2] *See*

---

[1] Plaintiff originally filed an Omnibus Opposition to USOC and USA Gymnastics ("USAG") Motions to Dismiss, however, as the Court is likely aware, USAG filed for bankruptcy on December 5, 2018, resulting in an automatic stay of the matter as it relates to USAG. Since that time Plaintiff Marcia Frederick has been appointed by the U.S. Trustee to serve on the 9-person Special Creditor's Committee representing the interests of abuse survivors in the USAG bankruptcy.

[2] "On February 2, 2018, a subcommittee of the Board of Directors ("Board") of the USOC engaged Ropes & Gray LLP ("Ropes & Gray") to conduct an independent investigation ("Independent Investigation") 'into the decades-long abuse by Larry Nassar to determine when individuals affiliated with USA Gymnastics or the USOC first became aware of any evidence of Nassar's abuse of athletes…not only 'who knew what when' and what was and was not done in response, but also the circumstances that contributed to and allowed for Nassar's abuse to continue for such an extended period of time, including systemic deficiencies, failures of oversight and contributing cultural conditions across Olympic sports." *See* https://www.nassarinvestigation.com/en at p. 12.

https://www.nassarinvestigation.com/en. The Report mandate was to ascertain who, what, when, where and how decades of sexual abuse was able to continue and to evaluate "systemic deficiencies, failures of oversight and contributing conditions across Olympic sports." The "mission of the Independent Investigators was to collect the facts and publicly issue a comprehensive report that addresses both the underlying facts and individual and institutional accountability." *See id* at p. 12.

While the Report analyzes how decades of failures allowed Larry Nassar ("Nassar") to victimize hundreds, if not thousands of young women, it is evident the inaction and concealment of USOC did not begin in the 1990s. Instead, it is clear from the Report that USOC engaged in a pattern and practice of putting the USOC institution, and its profits, over protecting athletes and failed to institute the necessary procedures to end Nassar's sexual abuse. The same inaction and concealment negatively impacted Plaintiff Frederick. Indeed, as alleged in her First Amended Complaint, these institutional failures have been ongoing since Plaintiff Frederick was a young, elite gymnast: her first coach from 1975-1978, the infamous Olympic Coach Don Peters, was banned from the sport for sexual misconduct with minor gymnasts. *See* First Amended Complaint, par. 87-88; *see also generally* par. 36, 44, 46, 60-63, 100, 121, 126, 129 and 136.

The findings in the Report go to the heart of many of the defenses raised in USOC's motion to dismiss, including the concealment finding and its impact on timeliness analysis, the inactions and failures of the USOC when required to act, as those relate to the duty and failures of the USOC to protect athletes, and the overall finding that the USOC's ultimate choice to protect the institution at the expense of the young athletes. *See id generally*. The 233-page Report sets forth a long history of "inaction and concealment" by USAG and

USOC. *Id*. at p. 9. It describes "an ecosystem that facilitated…criminal acts" and how "[t]he fact that so many different institutions and individuals failed the survivors *does not excuse any of them*, but instead reflects the collective failure to protect young athletes." *Id*. at p. 2-3 (emphasis added).

The Report specifically found that USOC "did not embrace a child-first approach" "lead[ing] to stark failures in implementing effective measures to protect athletes from sexual and other forms of abuse. Nassar's ability to abuse athletes for nearly three decades is a manifestation of the broader failures at USAG and the USOC." *Id*. at p. 3-4. It found the USOC "…adopted general governance structures and specific policies concerning sexual abuse that had the effect of allowing abuse to occur and continue without effective intervention." *Id.*

Not only did the Report find that USOC failed to have protective measures in place to safeguard athletes and to supervise and monitor physicians and coaches, USOC affirmatively failed to address the issues of sexual assault. Indeed, "[t]he USOC, despite having been directly informed by NGBs of the threat of sexual misconduct in elite sports, failed to address the risk … failed to take effective action for many years, permitting NGBs to continue adhering to inadequate and harmful policies and practices." *Id*. at p. 5. Moreover, the USOC engaged in "affirmative efforts to protect and preserve their institutional interests…" while taking "no meaningful steps to protect athletes from the danger presented by Nassar. Rather, these organizations, each in their own way, maintained secrecy regarding the [his] allegations and focused on controlling the flow of information about his alleged misconduct." *Id*. at p. 6. This type of historic secrecy is entirely relevant to the analysis of USOC's claims regarding timeliness.

The Report goes on and "chronicles complaints to institutions and law enforcement that led to Title IX and law enforcement investigations – investigations that proved to be ineffective and allowed Nassar to slip from the grasp of direct, credible survivor reports of criminal sexual assault." *Id*. at p. 10-11. The Independent Investigators concluded that "[w]ithout strong, affirmative child-protective measures, there was little to stand between these brave and committed young girls and the predator in their midst." *Id*.

The final Part of the Report:

> analyzes the Olympic governance structure and the complex systemic factors that contributed to [perpetrator's] system of abuse and to his uninterrupted, decades-long run of criminal misconduct. This Part reviews the choices that the USOC and USAG made to adopt self-limiting governance structures, which led to a marked disconnect at both institutions between adopted policies and effective action. This disconnect in turn permitted the unchecked growth of policies, practices and cultural norms that were not reflective of a child-first approach and led to the absence of effective, on-the-ground protective measures. The effects of the USOC's self-limiting governance structure extended beyond USAG, and likewise permitted other NGBs to implement policies and practices that failed adequately to address the risk of athlete abuse, resulting in patterns of deficiencies in complaint processes across Olympic sports.

The Report is relevant to Plaintiff Frederick's opposition to USOC's motion to dismiss, including, but not limited to, USOC's timeliness arguments and arguments related to duty and breach. Had it been published before her opposition was due or before the complaint was filed, Plaintiff certainly would have included it in both the complaint and opposition. Plaintiff seeks to file the Report as Supplemental Authority in support of her opposition to USOC's motion. In the alternative, Plaintiff would request leave to amend to add these important allegations to her complaint.

Date:   December 21, 2018

        Respectfully submitted,

        Plaintiff Marcia Frederick,
        By her attorneys,


        /s/ Kimberly A. Dougherty
        Kimberly A. Dougherty (BBO No. 658014)
        Vance Andrus (to be admitted *pro hac vice*)
        Aimee Wagstaff (to be admitted *pro hac vice*)
        ANDRUS WAGSTAFF, PC
        19 Belmont Street
        South Easton, MA 02375
        (508) 230-2700
        kim.dougherty@andruswagstaff.com

        AND

        Lori E. Andrus (admitted *pro hac vice*)
        Jennie Lee Anderson (admitted *pro hac vice*)
        ANDRUS ANDERSON LLP
        155 Montgomery Street, Suite 900
        San Francisco, CA 94104
        (415) 986-1400
        lori@andrusanderson.com
        jennie@andrusanderson.com


## **LOCAL RULE 7.1 (A)(2) CERTIFICATION**

Pursuant to Local Rule 7.1 (A)(2), Plaintiff's counsel hereby certifies that she has conferred with opposing counsel for USOC in an attempt to narrow the issues of dispute prior to the filing of this motion. At the conclusion of the meet and confer, USOC indicated that it intends to oppose this motion.

        */s/ Kimberly A. Dougherty*
        Kimberly A. Dougherty

## CERTIFICATE OF SERVICE

I, Kimberly A. Dougherty, hereby certify that a true and correct copy of the above and foregoing has been served on all known counsel of record via ECF, for those counsel registered to receive filings via ECF, on December 21, 2018.

                                          */s/ Kimberly A. Dougherty*
                                          Kimberly A. Dougherty