UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCIA FREDERICK, individual, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OLYMPIC COMMITTEE, USA GYMNASTICS (formerly known as the United States Gymnastics Federation), RICHARD CARLSON, MURIEL GROSSFELD, GEORGE WARD,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 1:18-cv-11299-IT<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

September 20, 2022

TALWANI, D.J.

Marcia Frederick, a former Olympic gymnast, brought this action alleging, inter alia, that she was repeatedly molested, sexually abused, and assaulted by her gymnastics coach, Defendant Richard Carlson.

Pending before the court is Carlson's Motion to Dismiss [Doc. No. 48]. For the reasons that follow, Carlson's Motion to Dismiss [Doc. No. 48] is GRANTED based on lack of personal jurisdiction.

**I.    Procedural Background**

On June 20, 2018, Frederick filed this action against Defendants United States of America Gymnastics ("USAG"),[1] United States Olympic Committee ("USOC"),[2] Muriel

---

[1] The USAG is the National Governing Body for gymnastics in the United States.

[2] The USOC is the governing body for all American Olympic teams.

Grossfeld, George Ward, and Carlson. On September 28, 2018, Frederick filed her Amended Complaint [Doc. No. 22] against the same Defendants.

On November 16, 2018, Frederick voluntarily dismissed her claims against Grossfeld and Ward. First Notice of Voluntary Dismissal [Doc. No. 55]. From July 23, 2019, until August 15, 2022, the case was stayed in accordance with the order of the United States Bankruptcy Court for the Southern District of Indiana in case 18-09108-RLM-11. See Elec. Orders [Doc. No. 83], [Doc. No. 86]. On August 12, 2022, Frederick voluntarily dismissed her claims against Defendants USOC and USAG. Second Notice of Voluntary Dismissal [Doc. No. 85].

The Amended Complaint [Doc. No. 22] alleged two causes of action against Carlson: (i) negligence (Count Two) and (ii) negligent infliction of emotion distress (Count Four). Carlson responded with the pending Motion to Dismiss [Doc. No. 48] all claims against him for lack of personal jurisdiction, as barred by the statute of limitations, and for failure to state a claim.

**II.    Background**

    A.    *Allegations in the Complaint*

Frederick was an elite level gymnast who qualified for the 1980 Olympic Gymnastics Team and attended the U.S. Gymnastics Olympic Training Camp in Colorado. Am. Compl. ¶¶ 78, 101 [Doc. No. 22].

In or around 1975, when she was thirteen, Frederick joined Defendants Grossfeld and Ward's USAG and USOC sanctioned facility, the Grossfeld's American Gold Gym ("GAG" or "GAG Gym"), to further her gymnastics training. Id. at ¶¶ 79-82. The GAG facility provided housing, schooling, and training for minor athletes preparing for World Gymnastic Competitions such as the Olympics. Id. at ¶¶ 83, 85-86. Throughout her time at the GAG facility, Frederick lived in a single-occupancy room in the GAG dorm. Id. at ¶¶ 93-94. At the time that she joined

GAG, her legal residence was Massachusetts and she would travel between Massachusetts and Connecticut. Id. at ¶ 79.

In or around late 1978, Grossfeld hired Carlson, a USAG certified and trained coach, to be the new head coach of the GAG and Frederick. Id. at ¶ 89. Carlson was a "dorm parent" who lived on the first floor of Frederick's dorm. Id. at ¶ 93. He was charged with overseeing the minor gymnasts, including Frederick, within the housing facility, while at the gym, and while on excursions and USAG and USOC competitions outside of the gym. Id. at ¶ 95. Carlson was Fredrick's head coach for much of the time she lived in the GAG dorms. Id. at ¶ 93.

Carlson commenced grooming Frederick in late 1978, when she was 15 years old. Id. at ¶ 97. After the grooming began, from in or around late 1978 through 1980, Carlson physically and sexually abused her numerous times while Frederick was at the GAG properties in Milford, Connecticut, while she was traveling for competitions, and before and after competitive gymnastics meets. Id. at ¶ 98. Frederick believed she had to submit to Carlson's sexual demands to continue training for the 1980 Olympics based on what the supervising adults told her and the culture that USAG and USOC cultivated, both in and out of the gym. Id. at ¶ 100.

In 1982, Frederick, still coached by Carlson, participated in the American Classic gymnastics competition and won first place. Id. at ¶ 105. Frederick did not compete in another competition with Carlson as her coach. Id. She chose to forego the 1984 Olympics because she was afraid to and physically could not continue training with Carlson and at the GAG. Id.

In 2015, upon seeing an online photograph of Carlson at a gymnastic competition involving young girls, Frederick recalled memories that she had suppressed for many years. Id. at ¶ 140. Over the next several months, Fredrick realized she was emotionally and psychologically injured by her molestation. Id.

B.    *Jurisdictional Facts in the Record*

Carlson is "a resident of the State of New York and ha[s] been so nearly [his] entire life." Aff. of Richard Carlson ¶ 1 [Doc. No. 49-1]. "From 1978 until mid-1982 [Carlson] resided at various locations in the State of Connecticut." Id. at ¶ 3. "In 1982 [Carlson] purchase[d] a home on Long Island, New York with [his] former wife and ha[s] continually resided in the State of New York since." Id. at ¶ 4. Carlson owns a plumbing business and "never" travels out of New York for business nor does any business with any person or business located in Massachusetts. Id. at ¶ 5. Carlson has never owned any real estate or ever resided in Massachusetts. Id. at ¶ 6. He has never had a Massachusetts driver's license, maintained bank or investment accounts, mailboxes, or telephone listings in Massachusetts. Id. at ¶ 7. Carlson does not "have any relatives or friends in Massachusetts" and "to the best of [his] recollection ha[s] only traveled to Massachusetts on two occasions[,] once in 2000 to attend Olympic Trials and once in 2015 to attend a Gymnastics meet held in Boston." Id. at ¶ 8.

Fredrick has proffered no contrary evidence regarding the jurisdictional facts.

**III.    Standard of Review**

A.    *Personal Jurisdiction*

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Inves., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). The requirements of both the Massachusetts long-arm statute and the Constitution must be satisfied to establish jurisdiction in Massachusetts over a defendant. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See id.

Where the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, the court applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995). To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir. 1993).

**IV.   Discussion**

   A.   *Due Process Requirements*

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

   1.   General Jurisdiction

"General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the defendant's contacts with the forum.'"

Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010) (quoting Phillips Exeter Acad., 196 F.3d at 288). "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). "These contacts must be 'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities.'" Id. (quoting Int'l Shoe Co., 326 U.S. at 318) (alteration in original). For purposes of the general jurisdiction analysis, we "consider all of a defendant's contacts with the forum state prior to the filing of the lawsuit." Cossaboon, 600 F.3d at 29 (quoting Harlow v. Children's Hosp., 432 F.3d 50, 65 (1st Cir.2005)).

Carlson contends that Frederick has not provided any specific facts regarding Carlson's substantial, continuous, and systematic business activities with Massachusetts such that Carlson is essentially "at home" in the forum. Mem. in Supp. 8 [Doc. No. 49]. Frederick contends that she has made the required prima facie showing that Carlson, as a USOC and USAG certified trainer, was charged with providing care and supervision to a minor Massachusetts resident, attended meets and competitions in Massachusetts and otherwise benefited from his relationship with USOC and USAG and Defendants' forum-based contacts. Opp'n 8 [Doc. No. 58].

Even accepting all of the allegations made by Frederick as true, general jurisdiction does not exist in Massachusetts as to Carlson. Frederick's allegations do not show "substantial, continuous, or systematic business activities" in Massachusetts. Carlson's unrebutted testimony as to his residence and business activities detailed above confirm that general jurisdiction over Carlson does not exist here.

Accordingly, the court finds that no general jurisdiction exists in Massachusetts as to Carlson.

### 2. Specific Jurisdiction

"Specific personal jurisdiction . . . may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Warren Env't, Inc. v. Source One Env't, Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (internal quotation marks omitted). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

"There is a natural blurring of the relatedness and purposeful availment inquiries in cases (like this one) in which the alleged contacts are less tangible than physical presence; in such circumstances, an inquiring court must determine the extent to which the defendant directed an out-of-state activity at the forum state in order to ascertain whether the activity can be termed a contact at all." Phillips Exeter Acad., 196 F.3d at 289.

Frederick contends that Carlson's abuse of her, at the time she was a minor and Massachusetts resident, constitutes Carlson directing wrongful conduct into Massachusetts and causing Frederick to suffer injury in the forum. Opp'n 4 [Doc. No. 58].[3] "Generally, in-forum

---

[3] Carlson disputes that Frederick was a resident of Massachusetts during the period that the alleged sexual assault took place. Reply 3 [Doc. No. 78]. Frederick's counsel contended at argument that Frederick was a resident of Massachusetts for some of the period when the alleged

7

effects of a defendant's extra-forum activities, without more, are inadequate to establish relatedness." Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 109 (D. Mass. 2013) (citing Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 36 (1st Cir. 1998) ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative"). Frederick herself concedes that while her "emotional distress, as well as her psychological injuries [] persist to this day," those injuries "result[ed] from [] Carlson's . . . mental and physical abuse." Opp'n 10 [Doc. No. 58] (emphasis added). Without allegations that the abuse occurred in Massachusetts—and Frederick has not alleged that it did—the court finds that Carlson is not subject to specific jurisdiction in the forum.

Frederick further contends that Carlson intended, likely knew, or at the very least, should have known, that his alleged sexual assault of Frederick would have an adverse impact on her in Massachusetts such that Carlson has purposefully availed himself to the forum. Opp'n 4, 10 [Doc. No. 58]. "The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon, 600 F.3d at 32 (internal quotation marks and citation omitted). "This requirement ensures that a defendant will not be subjected to personal jurisdiction on the basis of 'random, fortuitous, or attenuated contacts' or 'the unilateral activity of another party or a third person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

---

assault took place. The court need not make a determination on Frederick's residence to resolve the jurisdictional dispute.

The court declines Frederick's invitation to find specific jurisdiction based on "the in-forum 'effects' theory inaugurated in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001). The Calder framework for purposeful availment generally requires defendant's (i) intent to cause injury in the forum and (ii) knowledge that the injury would be felt there. See Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998). However, as the First Circuit "previously noted, Calder's 'effects' test was specifically designed for use in a defamation case." Swiss Am. Bank, Ltd., 274 F.3d at 624. And those several circuits that have read Calder more broadly limit its analysis to intentional torts. See id. at 624 n.7 (collecting cases). Frederick has not alleged an intentional tort but a claim of negligence. And her claim that Carlson must have intended to cause injury in Massachusetts and knew that the injury would be felt here merely because Frederick's legal residence was in Massachusetts when he started grooming her in Connecticut is not sufficient for this court to find that Carlson purposefully availed himself of benefits in Massachusetts.

Frederick's argument that Carlson "attended meets and competitions in Massachusetts" also fails to meet the purposeful availment prong where Carlson has produced sworn testimony that he "only traveled to Massachusetts on two occasions[,] once in 2000 to attend Olympic Trials and once in 2015 to attend a Gymnastics meet held in Boston." Aff. of Richard Carlson ¶ 8 [Doc. No. 49-1]. Although Frederick may be correct that Carlson "benefitted from his relationship with USOC and USAF and Defendants' forum-based contacts," such benefit by Carlson does not meet the intentional and voluntary requirements of the purposeful availment prong. Opp'n 8 [Doc. No. 58].

9

Accordingly, the court finds that Carlson has not purposefully availed himself of the privileges of conducting activities in Massachusetts and that he is not subject to specific jurisdiction in the forum.[4]

### A.   *Massachusetts Long-Arm Statute*

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC, 825 F.3d at 34.

The Massachusetts long-arm statute provides in relevant part as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the persons (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; (e) having an interest in, using or possessing real property in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3. Frederick relies on subsections (c) and (d).

Carlson contends that § 3(c) is inapplicable where Frederick has not pleaded facts suggesting an act or omission by Carlson occurred in Massachusetts. Mem. in Supp. 9 [Doc. No. 49]. Frederick contends that the alleged sexual assault perpetrated by Carlson outside of Massachusetts constitutes tortious "in-forum acts" where the conduct is purposefully directed at Massachusetts and intended to cause injury in the forum. Opp'n 5 [Doc. No. 58].

---

[4] The court need not reach the reasonableness prong as it has found both the relatedness prong and the purposeful availment prong unmet. See Swiss Am. Bank, Ltd., 274 F.3d at 625 (finding the "jurisdictional analysis need proceed no further" where the relatedness prong was not met).

Section 3(c) "is intended to apply only when the act [or omission] causing the injury occurs within the Commonwealth." Hussain v. Rhode Island Hosp., 2019 WL 3546888, at *4 (D. Mass. June 12, 2019) (quoting Murphy v. Erwin-Wasey, Inc. 460 F.2d 661, 664 (1st Cir. 1972) (alterations in original). "To give [§ 3(c)] any broader meaning would render § 3(d) a nullity." Murphy, 460 F.2d at 664.

Frederick's reliance on Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201 (1st Cir. 1994) is misplaced. In Ticketmaster-New York, the First Circuit interpreted Murphy to hold that "an allegedly tortious act committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c)," but expressed "profound reservations about extending the Murphy rationale" to contexts outside of fraudulent misrepresentation. Ticketmaster-New York, Inc., 26 F.3d at 205. More importantly, Frederick has not alleged facts showing that Carlson intended to cause injury in Massachusetts, as was the case with the defendant in Murphy.

Frederick's second argument—that her claim of negligent infliction of emotional distress is a separate tort for purposes of jurisdictional analysis—does not fare better. Opp'n 6 [Doc. No. 58] (citing Adamchek v. Costco Wholesale Corp., 2008 WL 7536878 (D. Mass. June 11, 2008)). But that case only underscores that jurisdictional analysis turns on whether the defendant is "alleged to have directed their wrongful conduct . . . into Massachusetts." Adamchek, 2008 WL 7536878, at *7. As discussed above, Frederick has not pleaded facts that Carlson's tortious conduct was directed into the forum or involved fraudulent conduct.[5]

---

[5] The other two cases Frederick cites—Calder v. Jones, 465 U.S. 793 (1984) and Hugel v. McNell, 886 F.2d 1 (1st Cir. 1989)—are inapposite where the cited passages are analyzing personal jurisdiction under the Due Process requirements, rather than section 3(c) of the Massachusetts long-arm statute. Moreover, as discussed above, the Calder framework was

11

Carlson also contends that subsection § 3(d) is inapplicable where Frederick has not experienced a tortious injury in Massachusetts but rather the effects of one (e.g., emotional distress). Frederick responds that the negligent infliction of emotional distress claim is the tortious injury in Massachusetts.

The appellants in Crocker v. Hilton Int'l Barbados, Ltd. similarly argued that although the sexual assault occurred outside of Massachusetts, the post-traumatic stress syndrome and the loss of consortium, constituted a tortious injury in Massachusetts pursuant to § 3(d). 976 F.2d 797, 798 (1st Cir. 1992). In rejecting the appellants' argument, the First Circuit found that while "post trauma and consortium-related injuries may have been experienced upon their return to Massachusetts . . . the plaintiffs sued for damages stemming from the out-of-state incident." Id. The First Circuit explained that "the injury to which Section 3(d) refers is the sexual assault itself, not the manifestations or effects of that injury as claimed by appellants . . . . These manifestations, however, are no different in relation to the legal issue of in personam jurisdiction than the pain and suffering of the plaintiffs in [] cases[] in which the accident took place elsewhere, but plaintiffs convalesced in Massachusetts and suffered most of the effects of the out-of-state injuries in Massachusetts." Crocker, 976 F.2d at 800. That Frederick alleges a separate claim for negligent infliction of emotional distress does not alter the analysis where the alleged conduct giving rise to the emotional distress is the out-of-state sexual assault.

Moreover, "[s]ection 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts." Doe # 1 v. JetBlue Airways Corp., 2021 WL 3375107, at *6 (D.

---

addressing the intentional tort of slander and is unhelpful here where Frederick alleges that Carlson committed non-intentional torts.

12

Mass. Aug. 3, 2021) (citing Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) and Krua v. Sirleaf, No. 18-cv-10574, 2019 WL 1936733, at *4 (D. Mass. May 1, 2019)). As discussed in detail above, the court finds that general jurisdiction does not exist as to Carlson in Massachusetts.

Accordingly, the court finds that personal jurisdiction under § 3(c) or § 3(d) of the Massachusetts long-arm statute does not exist as to Carlson. Carlson is not subject to personal jurisdiction in Massachusetts.[6]

B.   *Jurisdictional Discovery*

"[A] plaintiff who seeks jurisdictional discovery must make 'a colorable claim of jurisdiction' . . ." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 128 (1st Cir. 2022) (quoting Swiss Am. Bank, Ltd., 274 F.3d at 625. "The threshold is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." Id. "Even so, the district court possesses broad discretion to determine whether jurisdictional discovery is warranted." Id. (internal quotation marks omitted).

Frederick requests limited jurisdictional discovery to ascertain Carlson's relationship with Massachusetts. Specifically, Frederick contends that jurisdictional discovery would reveal additional facts relevant to show that Carlson had contact with the jurisdiction by attending meetings and/or competitions in Massachusetts, benefitted personally from training minors who resided in Massachusetts, and that Carlson had knowledge as to the likelihood that his conduct would cause Frederick emotional distress in Massachusetts. However, the fact that Carlson later attended meetings and competitions in Massachusetts or that he trained minors from

---

[6] Finding no personal jurisdiction exists, the court does not reach Carlson's arguments regarding the statute of limitations or failure to state a claim.

Massachusetts is not in dispute; rather, as stated above, the court has found that such actions by Frederick do not meet the purposeful availment prong of the due process analysis. Similarly, as stated above, whether Carlson knew or did not know that his actions would likely cause Frederick emotion distress in Massachusetts has no bearing on the personal jurisdictional analysis where Frederick has alleged that Carlson committed a non-intentional tort.

Accordingly, the court denies Frederick's request for limited jurisdictional discovery.

## V.     Conclusion

For the foregoing reasons, Carlson's <u>Motion to Dismiss</u> [Doc. No. 48] is GRANTED.[7]

IT IS SO ORDERED.

DATED: September 20, 2022                        /s/ Indira Talwani
                                                 United States District Judge

---

[7] At the hearing on the motion to dismiss, the court indicated that Frederick may seek leave to amend the complaint. Any such motion must be filed within twenty-one days of this order and include a certificate under Local Rule 7.1 and a proposed amended complaint. In the absence of such a filing, the court will enter an Order of Dismissal closing the case.