UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARCIA FREDERICK, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:18-cv-11299-IT |
| | * | |
| RICHARD CARLSON, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 2, 2023

TALWANI, D.J.

Pending before the court is Plaintiff Marcia Frederick's Motion for Leave to File Second Amended Complaint ("Mot. for Leave") [Doc. No. 91]. For the reasons set forth below, Frederick's motion is DENIED.

## I. Procedural History and Background

In 2018, Frederick, a former Olympic gymnast, filed a Complaint [Doc. No. 1] and Amended Complaint [Doc. No. 22] against her former gymnastics coach, Defendant Richard Carlson, alleging, inter alia, that he had repeatedly molested, sexually abused, and assaulted her. Frederick asserted two causes of action against Carlson related to this alleged abuse: (i) negligence (Count Two) and (ii) negligent infliction of emotion distress (Count Four). Am. Compl. ¶¶ 99, 110, 161–70, 186–92 [Doc. No. 22].[1]

[1] The Amended Complaint [Doc. No. 22] also named others. Frederick voluntarily dismissed her claims against two of the Defendants in 2018 and, following a bankruptcy stay, dismissed her claims against two other Defendants in 2022. See Notice of Voluntary Dismissal with Prejudice [Doc. No. 55]; Notice of Bankruptcy and Automatic Stay [Doc. No. 69]; Notice of Voluntary Dismissal with Prejudice [Doc. No. 85].

Carlson filed a Motion to Dismiss [Doc. No. 48], which the court granted based on lack of personal jurisdiction, see Mem. & Order [Doc. No. 89].[2] With respect to general jurisdiction, the court found that Frederick's allegations of abuse did not show that Carlson had "substantial, continuous, or systematic business activities" in Massachusetts that would render him "at home" in the forum state where Carlson provided unrebutted testimony that his residence and business activities were not in Massachusetts. Mem. & Order 6 [Doc. No. 89].

As for specific jurisdiction, the court found neither the first prong—relatedness—nor the second prong—purposeful availment—of the analysis were met as to Carlson. Id. at 7–10.[3] Specifically, the court found that Frederick did not allege that Carlson's abuse giving rise to her claims occurred in Massachusetts or that Carlson purposefully availed himself of the privileges of conducting activities in Massachusetts where Frederick only alleged that Carlson traveled to Massachusetts on two occasions unrelated to Frederick's allegations. Id. at 9. The court also declined Frederick's invitation to find purposeful availment based on "the in-forum 'effects' theory," as the First Circuit has found this theory, which generally requires defendant's (i) intent to cause injury in the forum and (ii) knowledge that the injury would be felt there, was inaugurated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984) specifically for use in defamation claims, and has noted that courts that have read Calder more broadly have limited its analysis to intentional torts, which Frederick did not allege. Id. at 9 (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001)).

---

[2] Finding no personal jurisdiction exists, the court did not reach Carlson's arguments regarding the statute of limitations and failure to state a claim. Mem. & Order 13 n.6 [Doc. No. 89].

[3] Having found that Frederick did not allege sufficient facts to meet the relatedness or purposeful availment prong of the specific jurisdiction analysis, the court did not reach the third prong—reasonableness. Id. at 10 n.4.

The court further held that personal jurisdiction as to Carlson did not exist under subsections (c) and (d) of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3. Id. at 10–13. With respect to § 3(c), the court found Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972), inapplicable where the First Circuit has interpreted Murphy to hold that "an allegedly tortious act committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c), but has expressed 'profound reservations about extending the Murphy rationale' to contexts outside of fraudulent misrepresentation." Id. at 11 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 205 (1st Cir. 1994)). The court found personal jurisdiction under § 3(d) did not exist for two reasons: (1) "[s]ection 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts"; and (2) while Frederick may have experienced post-trauma related injuries upon return to Massachusetts, the alleged conduct giving rise to the emotional distress was the out-of-state abuse. Id. at 12 (quoting Doe # 1 v. JetBlue Airways Corp., 2021 WL 3375107, at *6 (D. Mass. Aug. 3, 2021)).

The court denied Frederick's request for jurisdictional discovery, reasoning that additional facts regarding Carlson's attendance at gymnastics events in Massachusetts or training of minors who resided in Massachusetts (neither of which were in dispute) or knowledge that his actions would likely cause Frederick emotional distress in Massachusetts would not alter the personal jurisdiction analysis where Frederick had alleged that Carlson committed non-intentional torts. Id. at 13–14. The court provided, however, that Frederick could seek leave to amend her complaint within twenty-one days of the order. Id. at 14, 14 n.7.

Frederick now seeks leave to file a second amended complaint, which Carlson opposes.

## II.     The Proposed Second Amended Complaint

Frederick seeks to assert the same two causes of action against Carlson in the proposed second amended complaint: (1) negligence and (2) negligent infliction of emotional distress. Proposed Second Am. Compl. ("Prop. Sec. Am. Compl.") ¶¶ 68-81 [Doc. No. 91-1]. The proposed second amended complaint adds the following allegations.

In 2018, Frederick filed a complaint with United States of America Gymnastics ("USAG") regarding Carlson's prior abuse of her. Id. at ¶ 49. The USAG complaint stated that Frederick currently lived in Massachusetts. Id. Under the normal USAG process, Carlson would have been provided with a copy of Frederick's complaint, and thus he was aware that Frederick was a Massachusetts resident. Id. at ¶ 50. Carlson prepared false statements denying Frederick's allegations of abuse and questioned Frederick's truthfulness in his written response submitted to USAG and to Frederick, through her attorney. Id. at ¶ 51.

Carlson also denied the abuse in interviews with USAG, which were shared with Frederick through her counsel. Id. at ¶ 53. Carlson was aware that Frederick's attorney was obligated to relay the information he provided in the course of the USAG investigation. Id. As a result of Carlson's denial of the allegations, USAG conducted a telephonic hearing in which Carlson and Frederick participated. Id. at ¶ 52.

During the telephonic hearing, Carlson's legal team questioned Frederick in an "inappropriate and abusive" manner. Id. at ¶ 54. Frederick was physically in Massachusetts during the telephonic hearing and the questioning caused Frederick intense emotional distress which left her "sobbing, vomiting, and experiencing a panic attack." Id.

## III. Standard for Leave to Amend

Fed. R. Civ. P. 15(a)(2), "permits amendments with leave of court, which the court 'should freely give . . . when justice so requires.'" Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 36 (1st Cir. 2022). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" Id. (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

When "a party seeks leave to amend before any discovery has occurred, a reviewing court assays futility with reference to the Rule 12(b)(6) pleading criteria." In re Curran, 855 F.3d 19, 28 (1st Cir. 2017). "An attempt to amend is regarded as futile if the proposed amended complaint fails to state a plausible claim for relief." Id. "Futility includes the failure of a proposed amended complaint to cure jurisdictional deficiencies." Adams v. Gissell, 2021 WL 8316261, at *5 (D. Mass. Dec. 8, 2021) (citing Diomed, Inc. v. Total Vein Sols., 578 F. Supp. 2d 214, 215 (D. Mass. 2008)).

## IV. Discussion

Frederick contends that her motion for leave to amend is timely, will not cause undue prejudice, and is not futile where the supplemental factual allegations will cure the jurisdictional deficiencies identified in the Memorandum and Order [Doc. No. 89]. Mot. for Leave 4–6 [Doc. No. 91]. Carlson does not dispute that Frederick's motion for leave to amend is timely or object on grounds of undue prejudice but argues that amendment is futile where Frederick has still failed to allege facts to show that this court has personal jurisdiction over him under the Due

Process Clause and the Massachusetts long-arm statute. Mem. in Opp'n ("Opp'n") 3 [Doc. No. 94].

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); see also Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001). The requirements of both the Massachusetts long-arm statute and the Constitution must be satisfied to establish jurisdiction in Massachusetts over a defendant. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

A. *Due Process Requirements*

The due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995) (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction based on a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). Frederick asserts that the court may exercise specific jurisdiction based on the causes of action alleged here. Mot. for Leave 10 [Doc. No. 91].[4]

Frederick contends that specific jurisdiction exists over Carlson where she alleges that during the USAG investigation, while Frederick was a Massachusetts resident, Carlson made false and harassing statements to USAG and to Frederick through her counsel. Id. at 7. Frederick

[4] Frederick does not argue that general jurisdiction exists over Carlson in Massachusetts based on the newly alleged facts.

further contends that specific jurisdiction exists where Carlson allegedly made false statements during the USAG telephonic hearing with Frederick while she was located in Massachusetts. Id. at 7, 10. Carlson contends that specific jurisdiction does not exist where the facts alleged in the proposed second amended complaint do not show that he purposefully availed himself to Massachusetts. Opp'n 4–6 [Doc. No. 94]. Specifically, Carlson argues that his response to the USAG complaint denying Frederick's accusations and appearing with counsel for the telephonic hearing, all while Carlson was located in New York, does not provide a basis to exercise personal jurisdiction over him in Massachusetts. Id. at 6.

"Specific personal jurisdiction . . . may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Warren Envtl., Inc. v. Source One Envtl., Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (internal quotation marks omitted)). "The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Id. (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

As Carlson's Opposition [Doc. No. 94] primarily argues that the supplemental facts alleged fail to show that the purposeful availment prong has been met and "all three of these elements must be present for specific jurisdiction to attach" the court will focus its inquiry there. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016). "The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should

expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (internal quotation marks and citation omitted). "This requirement ensures that a defendant will not be subjected to personal jurisdiction on the basis of 'random, fortuitous, or attenuated contacts' or 'the unilateral activity of another party or a third person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

Relying again on Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972), and Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201 (1st Cir. 1994), Frederick contends that Carlson's response to the USAG complaint and examination of Frederick during those proceedings is an intentional and voluntary act directed at Frederick in Massachusetts. Mot. for Leave 12–14 [Doc. No. 91]. In Murphy, the court concluded that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state," and moreover, that "[t]he element of intent also persuades [the court] that there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation . . ." Murphy, 460 F.2d at 664. But here, to the extent that Carlson intended for his communications to induce action or intended to receive benefits from the communications, his communications were directed to USAG, an Indiana entity, not a Massachusetts entity. See Am. Compl. ¶ 14 [Doc. No. 22]. And while Carlson is alleged to have intended harm to Frederick by his responses to the USAG complaint, it cannot be said that he

sought to participate in Massachusetts at all where it was Frederick's unilateral decision to avail herself of USAG's forum from Massachusetts.[5]

Ticketmaster provides a somewhat more factually similar scenario, where the plaintiff alleged the out-of-state defendant defamed him in a telephone call with a reporter from a Massachusetts newspaper and intended to cause harm in Massachusetts. In that case, the First Circuit held that an out-of-state defendant "who merely answers a telephone call, but, having done so, knowingly directs his comments into the forum state" has "only made the most marginal of showings that [he] purposefully availed himself" to the forum. Ticketmaster-New York, Inc., 26 F.3d at 207, 209. Frederick's attempt to build on Ticketmaster's reasoning by noting that Carlson "did not merely answer one phone call" but engaged in numerous ways with the USAG investigation is unsuccessful where the USAG investigation was not itself a Massachusetts proceeding, and Carlson's tie to Massachusetts during the USAG investigation and telephonic conference was a result of Frederick's participation from Massachusetts. Mot. to Leave 13 [Doc. No. 91]. For the same reason, Frederick's allegation that "Carlson knew that if he lied in his submission and denied his misconduct, he would force [Frederick], a Massachusetts resident, to participate in a USAG hearing," is unpersuasive. Prop. Sec. Am. Compl. ¶ 52 [Doc. No. 91-1]. While Carlson retained a choice of how to respond to the USAG investigation (i.e., admit or deny the allegations), "he cannot fairly be equated with an individual who has achieved the same position through a series of personalized affirmative choices reaffirmed at every significant juncture." Ticketmaster-New York, Inc., 26 F.3d at 209. Independent of the USAG investigation,

---

[5] To the extent that Frederick experienced harm in Massachusetts because of Carlson's responses, Frederick cannot rely on Calder's "in-forum 'effects' theory" to meet the purposeful availment prong where Frederick does not allege intentional torts, as discussed in the Memorandum and Order [Doc. No. 89] and above.

nothing in the record before the court indicates that Carlson engaged in conduct either within or directed into Massachusetts that could support a finding that he purposefully availed himself to the forum.

Accordingly, the court finds that Carlson is not subject to specific jurisdiction in the forum where he has not purposefully availed himself of the privileges of conducting activities in Massachusetts.[6]

B. *Massachusetts Long-Arm Statute*

"The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC, 825 F.3d at 34.

The Massachusetts long-arm statute provides in relevant part as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth[] . . . ." Mass. Gen. Laws ch. 223A, § 3.

Relying, again, on Murphy and Ticketmaster, Frederick contends that § 3(c) is applicable where "Massachusetts precedent holds that in certain cases regarding misrepresentation or defamation, such 'tortious act[s] committed outside the borders of Massachusetts, purposefully directed at the state and intended to cause injury there, could constitute an in-forum act within the meaning of section 3(c).'" Mot. for Leave 8 [Doc. No. 91] (quoting Ticketmaster-New York, Inc., 26 F.3d at 205 (citing Murphy, 460 F.2d at 664)). As described above, however, Murphy is

---

[6] The court need not make a determination as to the first prong—relatedness—or the third prong—reasonableness—where it has found the purposeful availment prong unmet. See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018) ("Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction.").

distinguishable where Carlson's communications were directed to the USAG proceedings, and not to induce action in Massachusetts. And as the court noted in Memorandum and Order [Doc. No. 89] and above, the First Circuit has expressed "'profound reservations about extending the Murphy rationale' to contexts outside of fraudulent misrepresentation." Mem. & Order 11 [Doc. No. 89] (citing Ticketmaster-New York, Inc., 26 F.3d at 205). The court's reasoning in Murphy to find that personal jurisdiction exists under § 3(c) is not applicable here where Frederick does not bring a claim of fraudulent misrepresentation against Carlson in her second amended complaint but rather maintains two non-intentional tort claims.

Accordingly, even if the due process requirements were satisfied, the proposed amended complaint is futile where personal jurisdiction under § 3(c) of the Massachusetts long-arm statute does not exist as to Carlson.[7]

## V. Conclusion

The court finds that Frederick's motion for leave to amend is futile where the supplemental facts fail to cure the jurisdictional deficiencies identified in the Memorandum and Order [Doc. No. 89]. For the foregoing reasons, Frederick's Motion for Leave to File Second Amended Complaint [Doc. No. 91] is DENIED. This case is CLOSED.

IT IS SO ORDERED.

March 2, 2023

/s/ Indira Talwani
United States District Judge

---

[7] Finding no personal jurisdiction over Carson, the court does not reach Carlson's arguments regarding the statute of limitations or failure to state a claim.